**JENNER & BLOCK LLP**
Andrew J. Thomas (SBN 159533)
AJThomas@jenner.com
Todd C. Toral (SBN 197706)
TToral@jenner.com
Lauren M. Greene (SBN 271397)
LGreene@jenner.com
Rachael A. Goldman (SBN 335138)
RGoldman@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone:  +1 213 239 5100
Facsimile:   +1 213 239 5199

Attorneys for Defendant
NBCUNIVERSAL MEDIA, LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELOREAN MOTOR COMPANY, a Texas corporation,<br><br>                    Plaintiff,<br><br>vs.<br><br>NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company, and DOES 1 through 50, inclusive,<br><br>                    Defendants. | Case No.: 8:22-cv-02189-DOC-DFM<br><br>Honorable David O. Carter<br>Magistrate Judge Douglas F. McCormick<br><br>**DEFENDANT NBCUNIVERSAL MEDIA, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:          February 12, 2024<br>Time:          10:00 am<br>Courtroom:   6B |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................. 1

II.    STATEMENT OF UNDISPUTED FACTS ............................. 2

    A.     NBCU's *Back to the Future* Film Franchise.......................... 2

    B.     The 1989 Agreement Between Universal and John Z. DeLorean ........ 3

    C.     Plaintiff DeLorean Motor Company (Texas)......................... 4

        1.     The Original DeLorean Motor Company's Bankruptcy ............. 4

        2.     Plaintiff DMCT's Acquisition of DeLorean Inventory .............. 5

    D.     NBCU's Royalty Payments to DMCT under the 1989 Agreement....... 5

    E.     DMCT's Prior Litigation with the Estate of John Z. DeLorean ........... 7

    F.     Procedural History in this Action.................................... 9

III.   LEGAL STANDARD ......................................................... 9

IV.    ARGUMENT.................................................................. 10

    A.     DMCT Cannot Prevail on its Breach of Contract Claim. ................ 10

        1.     DMCT Lacks Standing Under the 1989 Agreement. ............... 11

            a.     There Is No Evidence That DMCT Has Any
                Rights Under the 1989 Agreement. ................................. 11

            b.     No Court Has Ever Adjudicated Whether DMCT
                Is a Successor to the 1989 Agreement. ........................... 11

            c.     DMCT Has Admitted, Repeatedly, that it Has No
                Rights Under the 1989 Agreement.................................. 13

        2.     DMCT's Breach of Contract Claim is Cabined by the Four-Year
            Statute of Limitations Period. ..................................... 14

        3.     There Is No Evidence that NBCU Breached the 1989
            Agreement.......................................................... 15

        4.     There is No Evidence that DMCT Was Damaged by Any
            Alleged Breach. ................................................... 17

    B.     DMCT's Claim For Accounting Fails as a Matter of Law. ................ 18

    C.     DMCT's Trademark and Trade Dress Infringement Claims Fail........ 19

        1.     DMCT'S Infringement Claim is Incompatible with its Claim
            that it is the Successor to the 1989 Agreement....................... 19

        2.     DMCT Cannot Establish Trademark Infringement. .................. 20

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

a.    DMCT Does Not Have a Protectable Trademark Because NBCU Is the Senior (and Only) User of the Time Machine Car. ...................................................... 20

b.    There Is No Evidence of Consumer Confusion. ............. 23

V.    CONCLUSION ................................................................................ 25

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Alta Devices, Inc. v. LG Elecs., Inc.*,
  343 F. Supp. 3d 868 (N.D. Cal. 2018) .................................................................. 14

*AMF Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ........................................................................ 23, 24, 25

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) ................................................................................................ 10

*Audigier Brand Mgmt. v. Perez*,
  2012 WL 5470888 (C.D. Cal. Nov. 5, 2012) ............................................... 19, 20

*BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*,
  615 F. Supp. 3d 982 (D. Ariz. 2022) ................................................................... 24

*Branding v. By Lee Tillett, Inc.*,
  940 F. Supp. 2d 1178 (C.D. Cal. 2013) .............................................................. 25

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
  174 F.3d 1036 (9th Cir. 1999) ........................................................................ 21, 22

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ................................................................................................ 10

*Cohn v. Petsmart, Inc.*,
  281 F.3d 837 (9th Cir. 2002) ................................................................................ 24

*Committee of the Russian Fed'n on Precious Metals & Gems v. United
  States*,
  987 F. Supp. 1181 (N.D. Cal. 1997) ...................................................................... 9

*Conan Properties, Inc. v. Conans Pizza*,
  752 F.2d 145 (5th Cir. 1985) ................................................................................ 21

*DC Comics, Inc. v. Powers*,
  465 F. Supp. 843 (S.D.N.Y. 1978) ...................................................................... 21

*DC Comics v. Kryptonite Corp.*,
  336 F. Supp. 2d 324 (S.D.N.Y. 2004) ................................................................ 21

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

*Dreamwerks Prod. Group. Inc. v. SKG Studio,*
    142 F.3d 1127 (9th Cir. 1998) ...................................................................20

*Emerald Bay Community Ass'n v. Golden Eagle Ins. Corp.,*
    130 Cal. App. 4th 1078 (2005) .................................................................11

*Energy 2001 v. Pac. Ins. Co.,*
    2010 WL 5393978 (E.D. Cal. Dec. 21, 2010) ........................................11

*Fox v. iVillage,*
    2005 WL 3157413 (N.D. Cal. Nov. 23, 2005) ........................................20

*Gilliam v. Levine,*
    562 F. Supp. 3d 614 (C.D. Cal. 2021) .....................................................18

*Gordon v. Drape Creative, Inc.,*
    909 F.3d 257 (9th Cir. 2018) ..............................................................20, 23

*In re Gottheiner,*
    703 F.2d 1136 (9th Cir. 1983) ..................................................................13

*Gustafson v. SunTrust Mortg., Inc.,*
    2017 WL 3575282 (C.D. Cal. July 10, 2017) .....................................16, 17

*Hamilton v. State Farm Fire & Cas. Co.,*
    270 F.3d 778 (9th Cir. 2001) ....................................................................14

*Hickcox-Huffman v. US Airways, Inc.,*
    855 F.3d 1057 (9th Cir. 2017) ..................................................................10

*Internet Specialties W., Inc. v. Milon-DiGiorgio Enters.,*
    559 F.3d 985 (9th Cir. 2009) ....................................................................19

*Janis v. California State Lottery Comm'n,*
    68 Cal. App. 4th 824 (1998) .....................................................................18

*Lucasfilm Ltd. LLC v. Ren Ventures Ltd.,*
    2018 WL 2392963 (N.D. Cal. Apr. 24, 2018) ........................................21

*McGlinchy v. Shell Chem. Co.,*
    845 F.2d 802 (9th Cir. 1988) ....................................................................18

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

*MDY Indus., LLC v. Blizzard Entm't,*
     629 F.3d 928 (9th Cir. 2010) .................................................................. 19

*Moroccanoil, Inc. v. Zotos Int'l, Inc.,*
     230 F. Supp. 3d 1161 (C.D. Cal. 2017) ................................................. 24

*Multi Time Mach., Inc. v. Amazon.com, Inc.,*
     804 F.3d 930 (9th Cir. 2015) ...........................................................23, 24

*Nguyen v. JP Morgan Chase Bank,*
     2012 WL 13019941 (C.D. Cal. Apr. 16, 2012) ...................................... 18

*Nordhorn v. Ladish Co.,*
     9 F.3d 1402 (9th Cir. 1993) .................................................................. 13

*Perez-Encinas v. AmerUs Life Ins. Co.,*
     468 F. Supp. 2d 1127 (N.D. Cal. 2006) ................................................. 14

*Rearden LLC v. Rearden Com., Inc.,*
     683 F.3d 1190 (9th Cir. 2012) .............................................................. 23

*Rio v. Oberfeld,*
     2013 WL 12129942 (C.D. Cal. July 18, 2013) ..................................... 19

*San Francisco Baykeeper v. West Bay Sanitary Dist.,*
     791 F. Supp. 2d 719 (N.D. Cal. 2011) ................................................... 18

*San Francisco Unified Sch. Dist. v. W.R. Grace & Co.,*
     37 Cal. App. 4th 1318 (1995) ................................................................ 15

*Segal v. Geisha NYC, LLC,*
     517 F.3d 501 (7th Cir. 2008) ................................................................ 20

*Sengoku Works Ltd. v. RMC Int'l, Ltd.,*
     96 F.3d 1217 (9th Cir.), *as modified,* 97 F.3d 1460 (9th Cir. 1996) ................ 21

*Shaw v. Hahn,*
     56 F.3d 1128 (9th Cir. 1995) ................................................................ 12

*Stevenson v. Holland,*
     504 F. Supp. 3d 1107 (E.D. Cal. 2020) ................................................. 17

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

*Unicon Fin. Servs., Inc. v. InterCept,*
2006 WL 8431500 (C.D. Cal. Jan. 17, 2006) ....................................................16

*Universal City Studios, Inc. v. J.A.R. Sales, Inc.,*
1982 WL 1279 (C.D. Cal. Oct. 20, 1982) ........................................................21

*Viacom Int'l v. IJR Cap. Invs., L.L.C.,*
891 F.3d 178 (5th Cir. 2018) .................................................................21

*Warner Bros. v. Gay Toys, Inc.,*
658 F.2d 76 (2d Cir. 1981) ...........................................................21, 22

*Weinberg v. Whatcom County,*
241 F.3d 746 (9th Cir. 2000) .............................................................18

*Wolf v. Travolta,*
167 F. Supp. 3d 1077 (C.D. Cal. 2016) ...............................................14, 15

*Zweig v. Hearst Corp.,*
521 F.2d 1129 (9th Cir. 1975) ...........................................................10

**Statutes**

Cal. Code Civ. Proc. § 337 ...................................................................14

Cal. Code Civ. Proc. § 425.16 ................................................................9

Lanham Act, 15 U.S.C. § 1051 et seq. ........................................*passim*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

Following the enormous popular and commercial success of the 1985 motion picture *Back to the Future*—which famously featured a modified DeLorean automobile as a fictional, flying time machine (the "Time Machine Car")—Universal Pictures, a division of NBCUniversal Media, LLC ("NBCU"), entered into a royalty agreement with John Z. DeLorean, who founded the original DeLorean Motor Company ("Original DMC") in the 1970s (the "1989 Agreement").  Under the agreement, Universal agreed to pay Mr. DeLorean a royalty on net revenues received from the sale of *Back to the Future* merchandise and commercial tie-ups that featured the Time Machine Car as a key component.

In 2017, Plaintiff DeLorean Motor Company (Texas) ("DMCT")—a company that sold old DeLorean cars and car parts but otherwise had no connection with Mr. DeLorean or Original DMC—contacted NBCU and demanded to be paid royalties under the 1989 Agreement.  DMCT claimed to be the "successor" to Mr. DeLorean by virtue of a convoluted lineage of inventory purchases dating back to the 1980s and a 2015 settlement agreement that ended a lawsuit with the DeLorean Estate. Based on DMCT's representations, and to avoid the cost and disruption of litigation, NBCU agreed (subject to a reservation of rights) to treat DMCT as the successor and began reporting to DMCT in June 2017.

Almost immediately thereafter, also in June 2017, DMCT asserted that NBCU was withholding monies and failing to properly account to it in violation of the 1989 Agreement.  More than five years later, DMCT filed this lawsuit against NBCU for breach of contract, accounting, and trademark and trade dress infringement.  Yet after substantial written discovery in this case, it is now clear that DMCT's allegations of non-payment and infringement are predicated entirely on baseless speculation and guesswork that cannot survive summary judgment.

*First*, DMCT's breach of contract claim fails because it cannot establish: (i) a valid and enforceable agreement between it and NBCU; (ii) that NBCU breached

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

such an agreement; or (iii) that DMCT was damaged by any alleged breach. *Second*, DMCT's accounting claim fails because it is not a standalone cause of action and the underlying breach of contract claim on which it is based fails. *Third*, DMCT's Lanham Act claim fails because: (i) it is based solely on NBCU's alleged failure to pay contractual royalties; (ii) to the extent NBCU has no contractual obligations to DMCT, then NBCU is the senior (and indeed only) user of the actual mark at issue— *i.e.*, the appearance of the fictional Time Machine Car prominent in all three *Back to the Future* films – and therefore cannot be liable under the Lanham Act; and (iii) DMCT cannot establish any likelihood of confusion.

## II.   STATEMENT OF UNDISPUTED FACTS

### A.   NBCU's *Back to the Future* Film Franchise

NBCU released its first *Back to the Future* film in 1985. SUF[1] 1. The film, which featured a heavily modified DeLorean automobile as a time machine, was the highest grossing film in 1985, earning approximately $384.6 million in box office revenue. SUF 2. NBCU also released two sequels: *Back to the Future II* in 1989 ($332.5 million in box office revenue) and *Back to the Future III* in 1990 ($245.1 million in box office revenue) (collectively, the "BTTF Films"). SUF 3. The BTTF Films follow the adventures of a high school student, Marty McFly, and an eccentric scientist, Dr. Emmett "Doc" Brown, as they use the Time Machine Car to travel to different time periods in a fictional town. SUF 4.

The Time Machine Car is not simply a DeLorean DMC-12 car but rather includes many substantial modifications that are not found in any actual DeLorean DMC-12, as well as a personalized license plate that reads "OUTATIME." *See* SUF 5 (Thomas Decl. ¶ 4). Unlike a DeLorean DMC-12, the rear exterior of the Time Machine Car holds two thrusters, a complex system of wires and tubes, and exterior lights. *Id*. The interior of the car is similarly modified: the Time Machine Car

---

[1] All references to NBCU's Statement of Uncontroverted Facts and Conclusions of Law are cited as "SUF _." All "Ex. _" references with numerals are to exhibits in NBCU's Compendium of Exhibits.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

includes gadgets, tubes, and displays that are not found inside an ordinary DeLorean DMC-12 car.  *Id*.   Notably, the Time Machine Car's interior contains a "flux capacitor"—an invention of Doc Brown's that allows the fictional vehicle to time travel when the car reaches 88 miles an hour.  *Id*.  The flux capacitor is powered by an onboard nuclear reactor that runs on plutonium—another feature not found in a DeLorean DMC-12 car.  *Id*.

Due to the overwhelming success of the BTTF Films, NBCU created, among other things, an animated television series and novelizations based on the films. NBCU has continuously distributed the BTTF Films through home video and other media (including VHS, DVD, Blu-ray, premium cable, and streaming platforms). SUF 6.   Since the release of the first BTTF Film in 1985, NBCU also has continuously used the Time Machine Car in advertising and selling a wide variety of merchandise, including apparel, art, books, games, media, novelties, collectibles, prop replicas, and toys.  SUF 7.   As DMCT itself once explained to the Trademark Office, the DeLorean automobile "remains culturally relevant in large part due to" its inclusion in the "iconic *Back to the Future* films.  Ex. 70.

**B.    The 1989 Agreement Between Universal and John Z. DeLorean**

In March 1989, John Z. DeLorean, on the one hand, and Amblin Entertainment, Inc. and Universal Pictures, a division of Universal City Studios, Inc.[2] ("Universal"), on the other hand, entered into an agreement pursuant to which Mr. DeLorean granted Universal certain rights in and to the name and appearance of the DeLorean automobile (the "DeLorean Marks") for use in "merchandising and commercial tie-ups" in connection with the BTTF Films (the "1989 Agreement"). SUF 10.   Mr. DeLorean represented and warranted in the 1989 Agreement (and DMCT has conceded elsewhere) that he was "the sole owner of the rights in the Material granted or agreed to be granted to [Universal]" and that he had "the

---

[2]  Universal City Studios, Inc. is the predecessor-in-interest to Universal City Studios LLC, which is a wholly-owned subsidiary of NBCU.  McQuown Decl. ¶ 5.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

unrestricted right and power to grant the rights in the [DeLorean Marks]."  SUF 11.

In exchange for these rights, Universal agreed to pay Mr. DeLorean five percent (5%) of its net receipts from the sale of merchandise and commercial tie-ups in connection with the BTTF Films.  SUF 12.  The 1989 Agreement provided that Universal owed monies only for instances in which the DeLorean was a "key component" of the merchandise or commercial tie-up– *i.e.*, "one or more elements of [the DeLorean automobile, the name 'DeLorean,' or the DMC logo] is primary or central to an item of merchandising or to a commercial tie-up."  SUF 13.

The Agreement also stated that "[a]s [DeLorean] is aware, [Universal] used, is using and will use suitably modified DeLorean automobiles as a 'prop' (i.e., as a 'time machine' belonging to the character 'Doc Brown') in the Pictures and in advertising and other forms of exploitation relating thereto. [DeLorean] acknowledges that [Universal] did not and does not need [DeLorean's] consent to such uses of DeLorean automobiles."  SUF 14.  After the parties executed the 1989 Agreement, NBCU began making royalty payments to Mr. DeLorean.  SUF 15.

### C.  Plaintiff DeLorean Motor Company (Texas)

#### 1.  The Original DeLorean Motor Company's Bankruptcy

Founded by Mr. DeLorean in 1975, Original DMC produced only one car: the DeLorean DMC-12.  ECF 10, DMCT First Amended Complaint ("FAC") ¶¶ 6-7. The DeLorean automobile featured gull-wing doors, stainless steel plates, and a unique shape.  *Id*.  Original DMC declared bankruptcy in 1982, and thereafter a liquidation company called Consolidated International acquired Original DMC's "remaining US inventory of cars, the entire parts inventory and [] engineering drawings and records."  SUF 16-17.  No trademark registrations or trademark rights were assigned as part of this acquisition.  SUF 18.  According to DMCT, Marvin Katz, through his company Kapac, acquired the entire inventory from Consolidated International and later transferred the inventory to another company that he owned, Ayn, Inc.  SUF 19.  In December 1996, Ayn offered a detailed list of inventory for

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

sale, but the listed assets did not include any trademark registrations or trademark rights.  SUF 21-22.

### 2.     Plaintiff DMCT's Acquisition of DeLorean Inventory

Following Original DMC's bankruptcy, Stephen Wynne—who operated an auto service facility that specialized in English and French cars and had no relationship to Mr. DeLorean or Original DMC—began servicing and restoring DeLorean automobiles.  SUF 26-27.  In 1985, Mr. Wynne partnered with a DeLorean automobile owner and created a Southern California company called DeLorean One.  SUF 28.  In or around 1995, Mr. Wynne created DMCT in Houston and continued to service and restore DeLorean automobiles.  SUF 29.  In 1997, DMCT purchased from either Kapac or Ayn, Inc.[3] various assets of Original DMC, including "parts, tools, stock, molds, drawings, and equipment."  SUF 31.

DMCT continued to operate as a restoration, service, and parts supplier.  SUF 32.  Beginning in 2009, DMCT registered various trademarks with the United States Patent and Trademark Office ("USPTO"), including various stylized versions of the words "DeLorean," "DMC," and "DeLorean Motor Company" (the "DMCT Marks").  SUF 34.  For most of these trademarks, DMCT indicated that its first use in commerce was in 1995 or 1996; for others it asserted the first use in commerce occurred in 2009.  SUF 36-37.  DMCT registered most of its trademarks in two International Classes: 12 (automobiles) and 25 (clothing).  SUF 35.

### D.     NBCU's Royalty Payments to DMCT under the 1989 Agreement

In January 2017, DMCT first reached out to NBCU to inquire about royalties under the 1989 Agreement.  SUF 42.  In its early correspondence, DMCT provided NBCU with, among other documents, a copy of the Settlement Agreement, and noted that "a summary of the court decision with the JZD estate establishes the fact that all rights of all trademark and merchandising images and likeness and logos pass

---

[3] Mr. Wynne, DMCT's CEO, has submitted inconsistent sworn statements regarding DMCT's acquisition of the DeLorean inventory.  *Compare* Ex. 53 (DMC purchased inventory from Ayn, Inc.) *with* Ex. 45 (DMCT purchased inventory from Kapac).

from the John Z. DeLorean estate to the DeLorean Motor Company." SUF 43.

Relying on DMCT's representations, but subject to a reservation of rights, NBCU agreed to treat DMCT as the successor to the 1989 Agreement and sent DMCT its first accounting statement and payment in June 2017. SUF 44. At various points, NBCU requested Plaintiff substantiate its contention that it had been assigned rights under the 1989 Agreement, but Plaintiff never did so. SUF 45.

In June 2017, DMCT challenged NBCU's accounting practices by sending NBCU a list of around 20 purported additional licensees and alleging that NBCU failed to report royalties to DMCT from revenue it received from these entities. SUF 48. DMCT provided no additional details, however, including whether each entity was in fact a licensee of NBCU, and if so, any details about or images of the products covered by the alleged license agreements or the dates when those products were sold. SUF 49. NBCUniversal evaluated DMCT's list and determined that many of those entities did not have a license with NBCU, but it revised its reporting to incorporate royalties from the remaining entities and issued a supplemental accounting statement to DMCT in August 2017. SUF 50-51.

DMCT, however, continued to challenge NBCU's accounting practices. In September 2017, DMCT sent NBCU another list of approximately 35 purported licensees, again with no additional details (SUF 53-54) and on December 1, 2017, DMCT wrote to NBCU stating that the parties were at an "impasse" and demanding that NBCU "provide a full and accurate" accounting by the end of the month or else DMCT would have to "escalate the matter." SUF 55. Despite DMCT's threat of litigation, and often unreasonable demands for a complete accounting in 20 to 30 days (SUF 57, 73), NBCU continued to report and pay royalties to DMCT. SUF 58-66.

From June 2017 through August 2021, NBCU provided DMCT with the following accounting statements and over $300,000 in royalty payments:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

| Accounting Statement Transmission Date | Amount | Accounting Period |
|---|---|---|
| June 2017 | $144,249 | 04/01/94 – 12/31/16 |
| August 2017 | $27,364 | 04/01/94 – 12/31/16 |
| March 2020[4] | $29,482 | 01/01/17 – 09/30/18 |
| April 2020 | $49,264 | 10/01/18 – 12/31/19 |
| November 2020 | $20,587 | 01/01/20 – 06/30/20 |
| August 2021 | $33,325 | 07/01/20 – 12/31/20 |

*See* SUF 46-47, 51-52, 58-66.

On October 14, 2021, DMCT's counsel sent a letter to NBCU demanding a complete accounting of NBCU's books and records pertaining to the 1989 Agreement and requesting that all materials be provided within 30 days. SUF 73. NBCU's counsel responded by asking for additional information about the identities of any licensees that DMCT contended had been omitted from NBCU's accounting, the type of merchandise involved, and the dates such merchandise was sold. SUF 74. Several months later, on February 14, 2022, DMCT sent NBCU a document entitled "*Back To The Future Almanac: Official Collector's Guide*" (the "Almanac"), which purportedly covered the time period from 1985 through 2015 and included approximately 300 images of outdated BTTF products and promotional materials but did not provide any of the sales or licensing information that NBCU had requested. SUF 75, 77-78, 80. Plaintiff also included a list of miscellaneous items, which included descriptions such as "BTTF Song Book" and "BTTF Cap," but similarly did not include any sales or licensing information. SUF 79-80.

### E.     DMCT's Prior Litigation with the Estate of John Z. DeLorean

Following DMCT's registration and use of the DMCT Marks, in 2014 Sally DeLorean, as administratrix of the Estate of John Z. DeLorean ("DeLorean Estate"),

---

[4] NBCU evaluated the list of entities in DMCT's September 2017 correspondence. To the extent NBCU had licensed any rights under the 1989 Agreement to these entities, NBCU included royalties from those entities in its subsequent reporting to DMCT. SUF 59.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

filed suit against DMCT in the District of New Jersey, alleging that DMCT's use of the DMCT Marks unlawfully infringed on the DeLorean Estate's rights in Mr. DeLorean's identity, the DeLorean Marks, and the DeLorean automobiles' trade dress. SUF 81. In September 2015, the parties executed a settlement agreement wherein the DeLorean Estate acknowledged DMCT's ownership of the DMCT Marks based on DMCT's trademark registrations and agreed not to file any further litigation against DMCT (the "Settlement Agreement"). SUF 82-83. The Settlement Agreement did not, however, refer to the 1989 Agreement at all, nor did it purport to assign or transfer any rights under the 1989 Agreement to DMCT. SUF 84-85. NBCU was not a party to the litigation or the Settlement Agreement. SUF 81-82.

In February 2018, after NBCU had made a few royalty payments to DMCT, an attorney for the DeLorean Estate contacted NBCU and claimed that the Estate, not DMCT, was entitled to receive royalties under the 1989 Agreement. SUF 86. NBCU suspended its payment of royalties to DMCT and requested that the DeLorean Estate and DMCT determine who was entitled to payment from NBCU before NBCU resumed its reporting. SUF 87.

In April 2018, the DeLorean Estate sued DMCT again, seeking a declaratory judgment that the Settlement Agreement did not transfer any rights under the 1989 Agreement to DMCT and that DMCT had to pay the monies it had received from NBCU to the DeLorean Estate. SUF 88. In its briefs, DMCT argued, among other things, that Mr. DeLorean did not have any intellectual property rights when he executed the 1989 Agreement, "making the Universal Pictures contract invalid." SUF 92; *see also* Ex. 55 at pp. 1-2.[5] The District Court concluded that the Settlement Agreement barred the DeLorean Estate from suing DMCT, narrowly holding that

---

[5] Paradoxically, DMCT asserted that the Settlement Agreement "does not transfer or purport to transfer any rights" to DMCT (SUF 89), yet also claimed that DMCT was the "unquestionable" "successor" under the 1989 Agreement—a claim it supported only by pointing to trademark registrations filed in 2008, 2012, and 2015 that were expressly based on alleged trademark uses beginning in 1995 and 1996. SUF 91.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

the 1989 Agreement fell within the scope of claims the parties were not permitted to litigate under the Settlement Agreement.  SUF 93-94.

Notably, the Court did not determine whether DMCT had acquired any rights as the successor-in-interest under the 1989 Agreement.  SUF 95-96.  The DeLorean Estate appealed to the United States Court of Appeals for the Third Circuit.  SUF 97.  In its appellate briefs, DMCT again argued that the 1989 Agreement was "void and unenforceable."  SUF 98.  In December 2019, the Third Circuit upheld the District Court's ruling but was careful to avoid adjudicating whether DMCT was in fact the successor-in-interest under the 1989 Agreement.  SUF 100-101.

### F.      Procedural History in this Action

On October 26, 2022, DMCT filed its Complaint in the Orange County Superior Court, alleging claims for breach of contract, trademark and trade dress infringement, and an accounting.  SUF 102-103.  On December 5, 2022, NBCU removed the case to this Court.  ECF No. 1.  Based on the Complaint's references to activity protected by the First Amendment, such as the inclusion of the Time Machine Car in the BTTF Films and another movie, counsel for both parties met and conferred on December 21, 2022, regarding a contemplated motion for judgment on the pleadings and an anti-SLAPP motion under California Code of Civil Procedure section 425.16.  Thomas Decl. ¶ 19.  The next day, DMCT filed its First Amended Complaint in an apparent attempt to address NBCU's concerns.  SUF 104.  The parties then entered into a stipulation on February 16, 2023, agreeing that DMCT's Lanham Act claim was not based, in whole or in part, on the appearance of a DeLorean car in the BTTF films, in the film *Ready Player One*, or in any works protected by the First Amendment, as well as the advertising of such works.  SUF 105-106.  NBCU answered the FAC on February 20, 2023.  ECF No. 18.

## III.   LEGAL STANDARD

The purpose of summary judgment is to "avoid unnecessary trials when there is no dispute as to the facts before the court."  *Committee of the Russian Fed'n on*

*Precious Metals & Gems v. United States*, 987 F. Supp. 1181, 1183 (N.D. Cal. 1997); *accord Zweig v. Hearst Corp.*, 521 F.2d 1129, 1135–36 (9th Cir. 1975).  Where the party seeking summary judgment makes a prima facie showing that the nonmoving party lacks evidence to support a claim, or an essential element thereof, the nonmoving party must go beyond the pleadings and identify facts that establish a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  However, "[t]o survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations." *Cafasso, U.S. ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011).  Under this framework, NBCU's Motion should be granted.

## IV.    ARGUMENT

### A.    DMCT Cannot Prevail on its Breach of Contract Claim.

To establish a breach of contract the plaintiff must establish: (1) a legally enforceable contract between the parties; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach of that contract; and (4) damage to the plaintiff caused by the defendant's breach.  *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 n.33 (9th Cir. 2017).  NBCU is entitled to summary judgment on DMCT's breach of contract claim because DMCT cannot establish essential elements of that claim.

First, DMCT does not have standing to assert a breach of the 1989 Agreement because it is not a successor or assignee under the Agreement.  Second, DMCT has failed to present any admissible evidence to show that NBCU breached the 1989 Agreement or that DMCT was damaged by any supposed breach during the applicable four-year limitations period prior to the filing of the Complaint.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

### 1.   DMCT Lacks Standing Under the 1989 Agreement.

Under California law, generally "only a party to the contract may sue for breach of the agreement's terms." *Emerald Bay Community Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1092 (2005) (non-party to agreement could not sue for party's "failure to honor its contractual obligations"); *Energy 2001 v. Pac. Ins. Co.*, 2010 WL 5393978, at *1 (E.D. Cal. Dec. 21, 2010) ("A person or entity that is not a party to a contract 'has no standing to enforce the contract.'") (*quoting Gantman v. United Pacific Insurance Co.,* 232 Cal. App.3d 1560, 1566 (6th Dist. 1991)). As set forth below, DMCT's breach of contract claim fails because DMCT is not a party, assignee, or successor to the 1989 Agreement.

### a.   There Is No Evidence That DMCT Has Any Rights Under the 1989 Agreement.

While the 1989 Agreement provides that it shall "bind and inure" to Mr. DeLorean's "heirs, legal representatives, successors and assigns," DMCT is not a successor under the 1989 Agreement. SUF 10. It is undisputed that there is no assignment agreement or other document between DMCT and Mr. DeLorean that purports to assign DMCT any rights under the 1989 Agreement. SUF 120-22. Instead, in response to NBCU's discovery request asking for all documents reflecting that DMCT "executed any assignment or other Document that states that DMC Texas is or was the successor-in-interest to JZD under the 1989 Agreement," DMCT produced only various briefs and orders from its litigation with the DeLorean Estate, articles regarding the Original DMC, documents from Mr. DeLorean's bankruptcy, documents reflecting the previous sales of Original DMC's inventory, and lists of its DMCT Marks. SUF 121-122. It is indisputable that none of these miscellaneous documents assigns any rights under the 1989 Agreement to DMCT.

### b.   No Court Has Ever Adjudicated Whether DMCT Is a Successor to the 1989 Agreement.

DMCT's claim that (i) the Settlement Agreement and/or (ii) the Estate litigation establishes DMCT's status as a successor under the 1989 Agreement is

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

contradicted by the undisputed evidence.  *First*, the Settlement Agreement between DMCT and the DeLorean Estate does not even refer to the 1989 Agreement, let alone address whether the DeLorean Estate conveyed any rights to DMCT such that DMCT is a successor under the Agreement.  SUF 84-85.  Indeed, DMCT concedes that the Settlement Agreement did not "transfer or purport to transfer any rights" from the DeLorean Estate to DMCT.  SUF 89.  Rather, in the Settlement Agreement, the DeLorean Estate merely agreed not to sue DMCT for any use of the DMCT Marks.  SUF 83.  Thus, the Settlement Agreement does not grant DMCT standing to enforce the 1989 Agreement.

*Second*, neither the District Court nor the Third Circuit in the Estate litigation adjudicated the parties' rights under the 1989 Agreement or held that DMCT was the successor-in-interest.  Rather, the District Court held only that the Settlement Agreement barred the DeLorean Estate from suing DMCT based on the 1989 Agreement.  SUF 93-94.  Similarly, the Third Circuit held that the District Court properly dismissed the DeLorean Estate's claims given the terms of the Settlement Agreement.  Indeed, the Third Circuit expressly stated that it was ***not*** "determin[ing] whether the Estate assigned its rights under the Universal Agreement to DMC Texas."  SUF 101 (emphasis added).

*Third*, even assuming that the prior litigation between the DeLorean Estate and DMCT is relevant (which it is not), the District Court's and Third Circuit's interpretations of the Settlement Agreement do not bind NBCU—a nonparty to the litigation—or impose upon it an obligation to make royalty payments to DMCT.  As courts have recognized, "[t]he doctrine of issue preclusion, of course, cannot be applied against a litigant who was not a party to or in privity with a party to the prior proceeding."  *Shaw v. Hahn*, 56 F.3d 1128, 1131 (9th Cir. 1995).

It is undisputed that NBCU was not a party to DMCT's litigation with the DeLorean Estate.  SUF 81, 88.  And DMCT has not shown (nor can it) that NBCU was otherwise a party to the Settlement Agreement.  SUF 82.  Nor is NBCU in

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

privity with either DMCT or the DeLorean Estate.  Privity exists "when two parties are so closely aligned in interest that one is the virtual representative of the other." *Nordhorn v. Ladish Co.,* 9 F.3d 1402, 1405 (9th Cir. 1993); *accord In re Gottheiner,* 703 F.2d 1136, 1140 (9th Cir. 1983) (requiring a "sufficient commonality of interest" such that "there is 'substantial identity' between parties").  Therefore, even if the District Court or Third Circuit *had* declared that DMCT was a successor to the 1989 Agreement (which they did not), NBCU would not be bound by that decision.

### c.   DMCT Has Admitted, Repeatedly, that it Has No Rights Under the 1989 Agreement.

During its litigation with the DeLorean Estate, DMCT repeatedly challenged the validity of the 1989 Agreement, arguing that "it was clear to everyone" that the 1989 Agreement was "invalid."  *See* SUF 92; SUF 98 (arguing "the Universal Agreement is void and unenforceable")); Ex. 54 at pp. 1-2 (arguing that its "right and ability to pursue Universal [] is not dependent on [the 1989 Agreement].)"

According to DMCT's pleadings in the Estate litigation, when Mr. DeLorean executed the 1989 Agreement with Universal, he was not the "sole owner" of the rights being granted.  Ex. 54 at p. 10; SUF 92.  DMCT argued that the Original DMC sold all of its assets to DMCT's predecessor in 1982, prior to the execution of the 1989 Agreement.  Ex. 54 at pp. 10-11; SUF 92.  As a result, "it was clear to everyone that [John Z. DeLorean] had no right to the intellectual property" when he entered into the 1989 Agreement, "making the Universal Pictures contract invalid."  SUF 92; Ex. 54 at pp 11-12.  Of course, DMCT's position in the DeLorean Estate litigation is entirely inconsistent with its current attempts to enforce the 1989 Agreement and collect royalty receipts thereunder.  *See* SUF 43, 55.

DMCT's position is also inconsistent with the *only* agreement that DMCT actually has with Mr. DeLorean—a 2004 agreement pertaining to copyrights in the old DeLorean owners' manuals—wherein DMCT expressly acknowledged that "in August 1987, Mr. DeLorean ***acquired all rights to the DeLorean Motor Company***

*intellectual property, names, corporate identification, copyrights, etc.*" SUF 33-34 (emphasis added).  Based on its prior, successful representations to federal courts that the 1989 Agreement was void, or that DMCT was not a contractual assignee, DMCT should be barred from taking the opposite position here in support of its breach of contract claim seeking alleged unpaid royalties under that same 1989 Agreement.  *See Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001) (judicial estoppel "precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position").

In any event, regardless of whether the 1989 Agreement is enforceable or void, DMCT cannot establish that it acquired any rights under the agreement, and therefore it has no standing to enforce the agreement.  This alone entitles NBCU to judgment on DMCT's breach of contract claim as a matter of law.

### 2. DMCT's Breach of Contract Claim is Cabined by the Four-Year Statute of Limitations Period.

Even assuming DMCT has standing to enforce the 1989 Agreement, DMCT's breach of contract claim is subject to a four-year statute of limitations period.  *See* Cal. Code Civ. Proc. § 337.  Ordinarily, the cause of action accrues, and the statute of limitations begins to run, at the time of the breach "regardless of whether any damage is apparent or whether the injured party is aware of his right to sue." *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006). Under limited circumstances, however, the accrual of the cause of action is delayed until "when the plaintiff discovers or could have discovered, through the exercise of reasonable diligence, all of the facts essential to his cause of action."  *Id*.; *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 885 (N.D. Cal. 2018).  To determine whether to delay accrual, courts "look to whether the plaintiffs had reason *to at least suspect* that a type of wrongdoing had injured them."  *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1102 (C.D. Cal. 2016) (original emphasis, internal quotation

omitted).  Notably, when "a suspicion exists, the plaintiff must go find the facts; he or she cannot wait for the facts to find him or her."  *San Francisco Unified Sch. Dist. v. W.R. Grace & Co.*, 37 Cal. App. 4th 1318, 1327 (1995).

Here, any cause of action for breach of contract began accruing at least as of June 2017, when DMCT began to challenge NBCU's accounting practices under the 1989 Agreement.  Specifically, on June 16, 2017, DMCT's president Roger Dartt sent NBCU an email asserting that NBCU was not properly accounting to DMCT under the 1989 Agreement—the exact basis for its breach of contract claim in this litigation.  SUF 48.  In September 2017, DMCT again challenged NBCU's accounting practices.  SUF 53.  Then, on December 1, 2017, DMCT wrote to NBCU stating that the parties were at an "impasse" and demanding that NBCU "provide a full and accurate" accounting by the end of the month or else DMCT would have to "escalate the matter," an unmistakable threat of litigation.  SUF 55.

These communications and threats of litigation establish, at minimum, that DMCT had a "suspicion of [NBCU's alleged] wrongdoing" triggering the statute of limitations as early as June 2017, and certainly no later than December 2017.  *Wolf*, 167 F. Supp. 3d at 1102.  Despite being on notice of its claims as of June/December 2017, DMCT waited until October 26, 2022 – ***five years later*** – to file the instant action.  Accordingly, DMCT's breach of contract claim is time-barred with respect to any alleged breach that occurred before October 26, 2018, four years before the filing of the Complaint.  In other words, to the extent DMCT can maintain its claim for breach of contract, that claim is limited to the time period after October 26, 2018.

### 3.    There Is No Evidence that NBCU Breached the 1989 Agreement.

Under the 1989 Agreement, NBCU agreed to pay Mr. DeLorean "5% of its Net Receipts for merchandising and commercial tie-ups" in which the licensed DeLorean Marks are a "key component."  SUF 12-13.  DMCT claims that NBCU breached this provision by "fail[ing] to fully pay DMC the amount it is owed" under

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

the 1989 Agreement.  ECF No. 10 (FAC ¶ 27).  Even assuming DMCT had standing to enforce the 1989 Agreement, DMCT has no evidence that NBCU breached the Agreement during the relevant time period between October 2018 and October 2022.

Courts routinely grant summary judgment where the plaintiff fails to provide evidence of the defendant's breach of an agreement.  *See, e.g.*, *Gustafson v. SunTrust Mortg., Inc.*, 2017 WL 3575282, at *3 (C.D. Cal. July 10, 2017), *aff'd*, 752 F. App'x 495 (9th Cir. 2019) (defendant entitled to summary judgment where "Plaintiff had not come forward with any evidence of breach"); *Unicon Fin. Servs., Inc. v. InterCept*, 2006 WL 8431500, at *13 (C.D. Cal. Jan. 17, 2006), *aff'd sub nom. Unicon Fin. Servs., Inc. v. InterCept, Inc.*, 256 F. App'x 27 (9th Cir. 2007) (granting summary judgment on breach of contract claim where evidence was "not significantly probative of the fact that royalties were owed" under the agreement but instead gave "rise to an exceedingly weak inference" of a breach).

Here, DMCT offers no evidence that NBCU breached the 1989 Agreement.  In response to NBCU's interrogatory asking DMCT to identify each instance of an alleged breach, DMCT responded merely that "discovery is ongoing," but did not cite any facts or evidence and never amended or supplemented its response despite representing that it would.  SUF 110.  And in response to NBCU's document request to produce all evidence showing NBCU's alleged breach, DMCT produced only (i) 2017 emails to NBCU in which DMCT identified approximately 55 entities that it *claimed* (with no evidentiary support) should have been included in NBCU's reporting for that year, and (ii) correspondence from 2020 and 2021 in which DMCT's counsel complained generally about NBCU's reporting but again failed to provide any concrete evidence of breach.  *See* SUF 123-137.

With respect to the 2017 correspondence, NBCU determined that the majority of the entities identified by DMCT did not have a license with NBCU and that

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

DMCT therefore was not entitled to additional royalties.[6]  The 2020 and 2021 correspondence likewise do not establish any breach because they do not identify a single specific licensee that DMCT believed was not being accounted for properly. In short, DMCT's speculation about possible undisclosed licensees does not constitute actual evidence of a breach by NBCU.  *See Cafasso*, 637 F.3d at 1061 (defeating summary judgment requires "non-speculative evidence.")

Similarly, in response to DMCT's requests for admission that NBCU licensed to 27 additional entities without accounting for them to DMCT, NBCU reviewed its records and confirmed that NBCU ***did not*** license any merchandise or commercial tie-ups which included the Time Machine Car to any of these entities from January 1, 2017 through at least October 2023.[7]  SUF 140.  DMCT never supplemented its discovery responses despite its "continuing obligation" to do so "in a timely manner."  *Stevenson v. Holland*, 504 F. Supp. 3d 1107, 1122 (E.D. Cal. 2020).  SUF 110, 112, 114, 116.  Thus because DMCT has not "come forward with any evidence of breach"—indeed, the available evidence shows that NBCU has *not* committed any breach of the 1989 Agreement—NBCU is entitled to summary judgment on this claim. *Gustafson*, 2017 WL 3575282 at *3.

### 4.     There is No Evidence that DMCT Was Damaged by Any Alleged Breach.

DMCT also has failed to present any evidence that it was damaged by any supposed breach of the 1989 Agreement.  When a defendant's summary judgment

---

[6] To the extent NBCU owed any royalties relating to the remaining licensees, NBCU incorporated relevant royalties from those licensees in subsequent statements and made the appropriate payments to DMCT.  SUF 59.  But in any event, a claim that NBCU failed to properly account to DMC for licenses in 2017 would be time-barred under the applicable four-year statute of limitations.

[7] To the extent DMCT argues that the Almanac constitutes evidence of NBCU's breach, the Almanac falls outside the limitations period because it was published in 2015.  SUF 76.  It is also hearsay.  In any event, DMCT has not presented any evidence that NBCU licensed any of the products in the Almanac, let alone products prominently featuring the DeLorean that were sold on or after October 26, 2018.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

motion challenges the plaintiff's ability to prove damages, plaintiff must adduce evidence from which "a jury could fairly estimate damages." *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988); *accord Weinberg v. Whatcom County*, 241 F.3d 746, 751 (9th Cir. 2000) (granting summary judgment where plaintiff "failed to offer competent evidence of damages"). To meet this bar, "plaintiffs must provide evidence such that the jury is not left to speculation or guesswork in determining the amount of damages to award." *Weinberg*, 241 F.3d at 751.

DMCT falls far short of the bar. In its Initial Disclosures, DMCT noted generally the categories of damages it was claiming but did not provide any estimate or identify any documents or other evidence that would support a damages claim. SUF 108. And, again, DMCT never supplemented its Initial Disclosures despite its "ongoing duty" to do so. *San Francisco Baykeeper v. West Bay Sanitary Dist.*, 791 F. Supp. 2d 719, 733 (N.D. Cal. 2011). DMCT also did not produce any evidence in discovery that would substantiate any amount of royalties that NBCU allegedly failed to pay it after October 26, 2018. SUF 108; *see also* SUF 123-137. Nor has DMCT disclosed any expert as required under the Federal Rules or produced any evidence to support its damages claims. SUF 108; Thomas Decl. ¶ 22-23.[8] Because DMCT cannot provide any admissible evidence of any breach by NBCU or any resulting damages, NBCU is entitled to summary judgment on this claim.

**B.    DMCT's Claim For Accounting Fails as a Matter of Law.**

"Courts in California generally classify an accounting as a remedy and not a cause of action." *Nguyen v. JP Morgan Chase Bank*, 2012 WL 13019941, at *4 (C.D. Cal. Apr. 16, 2012). Because DMCT cannot establish a claim for breach of contract, it cannot establish a claim for accounting. *See Gilliam v. Levine*, 562 F. Supp. 3d 614, 626 (C.D. Cal. 2021) (granting summary judgment on derivative claim for accounting where underlying claims failed); *see also Janis v. California State*

---

[8] On the contrary, as demonstrated by NBCU's accounting statements, payments and declarations, the evidence shows NBCU has properly accounted to DMCT for any use of the DeLorean Marks under the 1989 Agreement. SUF 46-47, 51-52, 58-66.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

*Lottery Comm'n*, 68 Cal. App. 4th 824, 833-34 (1998) (holding that cause of action for an accounting must fail where underlying claims fail because "[a] right to an accounting is derivative; it must be based on other claims").  Summary judgment is therefore appropriate on this claim.

### C. DMCT's Trademark and Trade Dress Infringement Claims Fail.

DMCT cannot establish its claim for trademark and trade dress infringement. If DMCT is a successor to the 1989 Agreement, as it contends in the FAC, then DMCT cannot maintain an infringement claim against its licensee based solely on the failure to pay royalties.  If DMCT is not a successor to the 1989 Agreement, then it cannot assert an infringement claim against NBCU because (i) NBCU is a senior user of the Time Machine Car mark, and (ii) DMCT has no evidence of meaningful confusion, or a likelihood of confusion, as to the source of NBCU's or DMCT's products and services during the time period on or after October 26, 2018.[9]

#### 1. DMCT'S Infringement Claim is Incompatible with its Claim that it is the Successor to the 1989 Agreement.

As alleged in the FAC, DMCT's trademark and trade dress claim against NBCU is premised solely on NBCU's alleged failure to pay royalties under the 1989 Agreement.  FAC ¶¶ 37-38.  Under this framework, DMCT cannot establish a viable trademark infringement claim against NBCU:  where there is a contract between the parties involving the licensing of a trademark, "it is the contract and not the Lanham Act which determines the rights of the parties."  *Rio v. Oberfeld*, 2013 WL 12129942, at *5 (C.D. Cal. July 18, 2013).

When the owner of intellectual property licenses that property, it "ordinarily waives the right to sue licensees" for infringement and "may sue only for breach of contract."  *See MDY Indus., LLC v. Blizzard Entm't,* 629 F.3d 928, 939 (9th Cir. 2010); *see also Audigier Brand Mgmt. v. Perez*, 2012 WL 5470888, at *7 (C.D. Cal.

---

[9] The relevant statute of limitations period for a trademark case is four years.  *See Internet Specialties W., Inc. v. Milon-DiGiorgio Enters.*, 559 F.3d 985, 990 n.2 (9th Cir. 2009).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

Nov. 5, 2012) (citing *Segal v. Geisha NYC, LLC,* 517 F.3d 501, 506 (7th Cir. 2008)); *Fox v. iVillage*, 2005 WL 3157413, at *2 (N.D. Cal. Nov. 23, 2005).

It is only where a trademark licensee exceeds the scope of the license that a licensor may bring an infringement claim.  *See Audigier*, 2012 WL 5470888 at *7; *see also Segal,* 517 F.3d at 506 (no violation of the Lanham Act "if the alleged infringer uses the mark as authorized.").  DMCT has not provided any evidence to establish that NBCU *exceeded the scope* of its rights under the 1989 Agreement.  Indeed, when asked, DMCT could not identify a single instance where NBCU exceeded the scope of the license.  SUF 111-114.

## 2. DMCT Cannot Establish Trademark Infringement.

Even if DMCT had pled more in its Lanham Act claim that a failure to pay alleged contractual royalties, DMCT still cannot establish a claim for trademark infringement.  To establish infringement, a plaintiff must prove: (1) that they have "a valid, protectable trademark" and (2) the "defendant's use of the mark is likely to cause confusion."  *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018).   On summary judgment, the plaintiff must set forth evidence that a "'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the goods or services bearing one of the marks."  *See Dreamwerks Prod. Group. Inc. v. SKG Studio,* 142 F.3d 1127, 1129 (9th Cir. 1998).

### a. DMCT Does Not Have a Protectable Trademark Because NBCU Is the Senior (and Only) User of the Time Machine Car.

In the event this Court determines that DMCT is not a successor to the 1989 Agreement and does not have any right to receive contractual royalty payments from NBCU, then DMCT's trademark claims fail for a separate and additional reason: NBCU is the senior user—indeed, the only user—of the Time Machine Car from the BTTF Films.  DMCT does not allege—nor is there any evidence—that NBCU has ever used the word marks DELOREAN or DMC, their stylized logos, or any image of the DeLorean car on any goods or services *other than* those depicting the Time

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

Machine Car from the *Back to the Future* Films.  "It is axiomatic in trademark law that the standard test of ownership of a mark is priority of use."  *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir.), *as modified,* 97 F.3d 1460 (9th Cir. 1996); *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999) ("The first to use a mark is deemed the 'senior' user.").  Here, the undisputed evidence shows that NBCU has valid and enforceable trademark rights in its Time Machine Car that well precede DMCT's trademarks and DMCT's use of the DMCT Marks in commerce in 1995 and 1996.

It is well established that elements from entertainment properties such as feature films, television programs, and comic books may be protected under the Lanham Act.  *See, e.g.*, *Warner Bros. v. Gay Toys, Inc.,* 658 F.2d 76, 78 (2d Cir. 1981).[10]  Indeed, when an element plays a "central role" in a franchise, "trademark protection is ordinarily granted."  *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 187 (5th Cir. 2018).  In *Viacom*, the Fifth Circuit determined that The Krusty Krab restaurant from the animated television series *SpongeBob SquarePants* was entitled to trademark protection because it "appears in over 80% of episodes, plays a prominent role in the SpongeBob films and musical, and is featured online, in video games, and on licensed merchandise."  *Id.* at 188.

Numerous courts have reached the same result.[11]  The Second Circuit analyzed an analogous situation in *Warner Bros. v. Gay Toys*.  The court determined

---

[10] As the Central District has previously held, "[i]t is common practice in the entertainment industry to exploit commercially the popularity of well-known motion picture and television personalities and characters in connection with a wide range of merchandise, and the public has come to expect such exploitation." *Universal City Studios, Inc. v. J.A.R. Sales, Inc.,* 1982 WL 1279, at *5 (C.D. Cal. Oct. 20, 1982).

[11] *See, e.g.*, *Conan Properties, Inc. v. Conans Pizza*, 752 F.2d 145, 147 (5th Cir. 1985) (trademark protection for the fictional character Conan from *Conan The Barbarian*); *DC Comics v. Kryptonite Corp.,* 336 F. Supp. 2d 324, 332-33 (S.D.N.Y. 2004) (fictional element "Kryptonite" from Superman comics protected under trademark law); *DC Comics, Inc. v. Powers*, 465 F. Supp. 843 (S.D.N.Y. 1978) (upholding common law trademark rights in the fictional "Daily Planet" newspaper); *Lucasfilm Ltd. LLC v. Ren Ventures Ltd.*, 2018 WL 2392963, at *4 (N.D. Cal. Apr.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

that Warner Brothers owned the trademark rights in its "General Lee" automobile, a modified 1969 Dodge Charger with a distinctive bright orange paint job and Confederate Flag emblem that was featured prominently in the popular television show *The Dukes of Hazzard*.  *See* 658 F.2d at 78 (stating "it was clear" that General Lee "falls within the ambit" of the Lanham Act.).

The same is true here.  NBCU has common law trademark rights in its Time Machine Car because it plays a "***critical role***" in the BTTF franchise and the "*entire franchise,*" and is "predicated on the use of" the Time Machine Car.  Ex. 70 at pp. 4-5 (emphasis added) (arguing, among other things, in a separate trademark application, that the entire BTTF franchise was "predicated on" the use of the Time Machine Car, and that the DeLorean automobile itself "remains culturally relevant" in large part due to NBCU's *Back to the Future* films); SUF 41.  Much like the "General Lee" in *The Dukes of Hazzard*, NBCU's Time Machine Car is not simply a DeLorean DMC-12 car.  Instead, as set forth in detail in Section II.A, *supra*, it is heavily modified version of a DeLorean DMC-12 that includes additional items like external thrusters and a "flux capacitor" powered by an onboard nuclear reactor. Thomas Decl. ¶ 4; *compare* Ex. 70 at p. 13 *with id*. at Exs. C, D.

Moreover, as DMCT concedes, NBCU has consistently exploited its trademark rights in the Time Machine Car.  SUF 41.  Since the original BTTF Film's release in 1985, NBCU has sold a wide variety of products featuring the Time Machine Car.  SUF 7, 46-47, 51-52, 58-66.  As such, NBCU has established trademark rights to the Time Machine Car that pre-date DMCT's earliest stated first use in commerce in any relevant class of 1995—a decade after NBCU's first use in commerce.  SUF 36-38.  *See Brookfield*, 174 F.3d at 1047 (it is "a fundamental tenet of trademark law" that "ownership of [a trademark] is governed by priority of use.").

24, 2018) (recognizing Lucasfilm's common law trademark rights in a fictional card game "Sabaac" from the Star Wars universe).

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

Therefore, DMCT cannot assert a claim of infringement against NBCU for NBCU's use of its own Time Machine Car.

### b.      There Is No Evidence of Consumer Confusion.

In analyzing trademark infringement claims, courts in this Circuit consider the following *Sleekcraft* factors to determine whether a defendant's use of a mark is likely to cause confusion: "(1) the strength of the mark; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of expansion of the product lines." *Gordon*, 909 F.3d at 264 n.6 (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).

Courts focus particularly on whether "a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012).  A plaintiff must "show more than simply a possibility of such confusion."  *Id.*  Here, DMCT has provided no evidence that NBCU's use of its Time Machine Car has ever caused any marketplace confusion or is likely to cause actual confusion as to the source of NBCU's products.

In discovery, DMCT could not identify a single instance where NBCU's use of the Time Machine Car violated the Lanham Act.  SUF 112-115.  Indeed, DMCT was asked to describe every instance where a person expressed confusion about whether a product or service depicting the Time Machine Car was affiliated with DMCT, and its only response was that on "nearly a daily basis" its "staff or one of its customers receives a comment from a member of the public concerning the 'Time Machine Car' – such as, 'Where is the Flux Capacitor on this thing?' or 'Where is the Mr. Fusion?' or 'What happens when you hit 88 MPH in this car?'"  SUF 116.

These unsupported, anecdotal examples of obvious jokes are woefully insufficient to establish actual confusion. *See, e.g.*, *Multi Time Mach., Inc. v.*

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

*Amazon.com, Inc.*, 804 F.3d 930, 940 (9th Cir. 2015) (company president's testimony describing supposed confusion was "too speculative to show actual confusion"); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 (9th Cir. 2002) (upholding summary judgment and discounting "several dozen inquiries over the years about whether the parties were related" because they were "too ambiguous").

In addition, while actual confusion may be shown through survey evidence, *Moroccanoil, Inc. v. Zotos Int'l, Inc.*, 230 F. Supp. 3d 1161, 1174 (C.D. Cal. 2017), DMCT has not produced any such evidence and its deadline for disclosing expert witnesses has passed.  Thomas Decl. ¶ 22.  NBCU has been using the Time Machine Car in commerce for over 30 years and DMCT failed to provide any evidence showing actual confusion.  Indeed, the "lack of evidence of actual confusion, especially when the marks have coexisted for a significant period of time, can serve as evidence that future confusion is unlikely."  *BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, 615 F. Supp. 3d 982, 1019 (D. Ariz. 2022).

DMCT similarly has failed to provide any evidence as to the remaining *Sleekcraft* factors.  For example, DMCT has not adduced any evidence regarding the supposed strength of its marks beyond NBCU's use of its own Time Machine Car in the BTTF Films.  Indeed, in DMCT's correspondence with the USPTO in 2022, DMCT argued that its trademarks had become distinctive due to ***NBCU's*** use of a modified DeLorean DMC-12 car in the BTTF Films.  SUF 41.  Of course, it is NBCU's Time Machine Car and not DMCT's DeLorean DMC-12 that became distinctive through the BTTF Film franchise.

Additionally, the *Sleekcraft* factor relating to the type of goods and degree of consumer care weighs heavily in NBCU's favor because DMCT and NBCU's consumers are not likely to confuse NBCU's Time Machine Car with DMCT's DeLorean DMC-12.  "Confusion is less likely where buyers exercise care and precision in their purchases, such as for expensive or sophisticated items."  *Multi Time*, 804 F.3d at 937.  Here, NBCU's merchandise offerings relate to the popular

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

BTTF Film franchise, whereas DMCT's goods relate to its very expensive physical cars. DMCT has not submitted any evidence that either BTTF fans or DeLorean car enthusiasts are confused as to the source of either party's products.

DMCT likewise fails to set forth any evidence that NBCU created its Time Machine Car mark with an intent to deceive the public as to the source of NBCU's products. NBCU is merely exploiting its highly successful BTTF Film franchise through the use of this mark. SUF 6-7. As such, this factor does not favor DMCT. *See Boldface Licensing + Branding v. By Lee Tillett, Inc.*, 940 F. Supp. 2d 1178, 1195 (C.D. Cal. 2013) ("intent factor generally carries minimal weight" except for where there is an "intent to deceive" the public).

In sum, DMCT cannot establish that the *Sleekcraft* factors favor a finding of likelihood of confusion: NBCU (not DMCT) exploits the BTTF Films and Time Machine Car; and DMCT (not NBCU) sells DeLorean cars and car parts. No reasonable consumer could think otherwise.

## V.   CONCLUSION

For the foregoing reasons, NBCU respectfully requests the Court grant its Motion for Summary Judgment in its entirety.

Dated: January 12, 2024                    Jenner & Block LLP

By: _____
Andrew J. Thomas
Lauren Greene
Rachael Goldman

Attorneys for Defendant
NBCUniversal Media LLC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**