**JENNER & BLOCK LLP**
Andrew J. Thomas (SBN 159533)
AJThomas@jenner.com
Todd C. Toral (SBN 197706)
TToral@jenner.com
Lauren M. Greene (SBN 271397)
LGreene@jenner.com
Rachael A. Goldman (SBN 335138)
RGoldman@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone:  +1 213 239 5100
Facsimile:   +1 213 239 5199

Attorneys for Defendant
NBCUNIVERSAL MEDIA LLC

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELOREAN MOTOR COMPANY, a Texas corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NBCUNIVERSAL MEDIA LLC, a Delaware limited liability company, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 8:22-cv-02189-DOC-DFM<br>Honorable David O. Carter<br><br>**NBCUNIVERSAL MEDIA, LLC'S STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT** |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

Pursuant to Federal Rule of Civil Procedure 56, Defendant NBCUniversal Media, LLC ("NBCU") submits the following statement of material facts about which there is no genuine dispute in support of its motion for summary judgment:

### UNCONTROVERTED FACTS

| SUF #/ Undisputed Fact | Evidence |
|---|---|
| **NBCU's *Back to the Future* Film Franchise and the 1989 Agreement** ||
| #1. NBCU released the film *Back to the Future* in 1985. | Monteiro Decl. ¶ 5; Ex.[1] 70 (DMCT Response to Office Action) at p. 4; Ex. 73 (BTTF DVDs) |
| #2. *Back to the Future* was the highest grossing film of 1985, earning approximately $384.6 million at the box office. | Ex. 70 (DMCT Response to Office Action) at p. 4; FAC ¶ 9; Thomas Decl. ¶ 3; Ex. 38. |
| #3. NBCU released two sequels to the 1985 film: *Back to the Future II* in 1989 and *Back to the Future III* 1990, which earned approximately $332.5 million and $245.1 million in box office revenue, respectively. | Monteiro Decl. ¶ 5; Ex. 73 (BTTF DVDs); Thomas Decl. ¶ 3; Ex. 38. |
| #4. All three *Back to the Future* ("BTTF") films feature a heavily modified DeLorean car as a time machine (the "Time Machine Car"), which is used by a high school student, Marty McFly, and an eccentric scientist, Dr. Emmett "Doc" Brown, to travel to different time periods in a fictional town. | Thomas Decl. ¶¶ 2, 4; Ex. 70 (DMCT Response to Office Action) at p. 5; Ex. 73 (BTTF DVDs) |

---

[1] All "Ex." references with numerals are to NBCU's Compendium of Exhibits, filed concurrently herewith.

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| SUF #/ Undisputed Fact | Evidence |
|---|---|
| #5. The Time Machine Car includes many modifications that are not found in an actual DeLorean DMC-12 car, including external thrusters, lights, a "flux capacitor" that enables time travel, which is powered by a nuclear reactor that runs on plutonium, and a license plate that reads "OUTATIME." | Thomas Decl. ¶¶ 2, 4; Ex. 70 (DMCT Response to Office Action) at Ex. C; Ex. 73 (BTTF DVDs) |
| #6. Following the release of the BTTF films, NBCU created, among other things, an animated television series and novelizations and also continuously distributed the BTTF Films through home video and other media (including VHS, DVD, Blu-ray, premium cable, and streaming platforms). | Monteiro Decl. ¶¶ 6-7 |
| #7. Since the release of the first film in 1985, NBCU has continuously used the Time Machine Car in advertising and offering for sale merchandise, including apparel, art, books, games, media, novelties, collectibles, prop replicas, and toys. | Monteiro Decl. ¶ 7; Ex. 14 (Licensee List); Ex. 21 (BTTF Almanac); Exs. 8-13 (accounting statements) |
| #8.  Since NBCU released the BTTF Films, NBCU has continuously monitored the market for infringing uses of its BTTF Film franchise and all elements incorporated therein. | Monteiro Decl. ¶ 8 |
| #9. When a potentially infringing use of the franchise comes to its attention, NBCU issues cease and desist notices or otherwise enforces its rights in the franchise and its elements. | Monteiro Decl. ¶ 8 |

Case No. 8:22-cv-02189-DOC-DFM

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| SUF #/ Undisputed Fact | Evidence |
|---|---|
| #10. In March 1989, John Z. DeLorean, on the one hand, and Amblin Entertainment, Inc. and Universal Pictures, a division of Universal City Studios, Inc. ("Universal"), on the other hand, entered into an agreement pursuant to which Mr. DeLorean granted Universal certain rights in and to the name and appearance of the DeLorean automobile (the "DeLorean Marks") for use in "merchandising and commercial tie-ups" in connection with the BTTF Films (the "1989 Agreement"). | McQuown Decl. ¶ 5; Ex. 1 (1989 Agreement); ECF No. 10-1 |
| #11. In the 1989 Agreement, Mr. DeLorean represented and warranted that he was "the sole owner of the rights in the Material granted or agreed to be granted to [Universal and Amblin]" and that he had "the unrestricted right and power to grant the rights in the Material herein specified." | Ex. 1 (1989 Agreement) at § 4; ECF No. 10-1 |
| #12. In the 1989 Agreement, Universal agreed to pay Mr. DeLorean five percent (5%) of its net receipts from the sale of merchandise and commercial tie-ups in connection with the BTTF Films. | Ex. 1 (1989 Agreement) at § 3; ECF No. 10-1 |
| #13. Under the 1989 Agreement, Universal owed revenue only for instances in which the DeLorean was a "key component" of the item – *i.e.*, "one or more elements of [the DeLorean automobile, the name 'DeLorean,' or the DMC logo] is primary or central to an item of merchandising or to a commercial tie-up." | Ex. 1 (1989 Agreement) at § 3; ECF No. 10-1 |

3

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| SUF #/ Undisputed Fact | Evidence |
|---|---|
| #14. The 1989 Agreement also stated that "[a]s [John Z. DeLorean] is aware, [Universal and Amblin] used, is using and will use suitably modified DeLorean automobiles as a 'prop' (i.e., as a "time machine" belonging to the character 'Doc Brown') in the Pictures and in advertising and other forms of exploitation relating thereto. [John Z. DeLorean] acknowledges that [Universal and Amblin] did not and do[] not need [John Z. DeLorean's] consent to such uses of DeLorean automobiles." | Ex. 1 (1989 Agreement) at "Preliminary Statements"; ECF No. 10-1 |
| #15. After the parties executed the 1989 Agreement, NBCU began accounting to Mr. DeLorean. | McQuown Decl. ¶ 6 |
| **Original DeLorean Motor Company and DeLorean Motor Company (Texas)** | |
| #16. Original DMC declared bankruptcy in 1982. | Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 4 |
| #17. A company called Consolidated International acquired Original DMC's "remaining US inventory of cars, the entire parts inventory and [] engineering drawings and records" from the bankruptcy estate. | Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 5; Ex. 47 (Bill of Sale); Ex. 48 (Bankruptcy Application) |
| #18. The sales agreement between Consolidated International and Old DMC did not include a transfer of trademark registrations or trademark rights. | Ex. 47 (Bill of Sale) |
| #19. According to DMCT, Marvin Katz, through his company Kapac Company, acquired the entire inventory from Consolidated International. | Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 5 |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| SUF #/ Undisputed Fact | Evidence |
|---|---|
| #20. According to DMCT Marvin Katz then transferred the inventory to Ayn, Inc., another company he owned. | Ex. 53 (Certification of Stephen Wynne) at ¶ 5 |
| #21. The inventory offered for sale by Ayn, Inc. included "the total parts inventory, two White parts carousels, pallet racking, a Crown electric fork lift with charger, electronic scale, crating equipment including saws, air compressor, nail guns and packaging materials on hand, engineering drawings for the parts, engineering manuals, advertising literature and memorabilia[,]" as well as "molds and fixtures for the body shells" and "information as to the exact location of the left fender and other parts, steel sampling dies." | Ex. 39 (Ayn Flyer) |
| #22. The list of assets offered for sale by Ayn, Inc. did not include any trademark registrations or trademark rights. | Ex. 39 (Ayn Flyer) |
| #23. In or around April 1997, Ayn, Inc. sold to Dr. James R. Smith specified assets and "[Ayn's] entire Delorean auto parts business." | Ex. 49 (Contract of Sale) at § 1 |
| #24. The specified assets as set forth in the attached Property Schedule were: "Delorean Parts Inventory[;] White Parts Carousel[;] Crown Electric Forklift[;] Dewalt Radial Power Saw[;] 10" Table Saw[;] Infra Red Heaters[;] Conveyors[;] Packaging Supplies[;] Packing Equip.[;] Engineering Manuals[;] Pallet Racking[;] Computer, Monitor, Printer[;] Body Molds-Fiberglas[; and] Drilling Jigs[.]" | Ex. 49 (Contract of Sale) at DMC_004510 |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| SUF #/ Undisputed Fact | Evidence |
|---|---|
| #25. The list of assets offered for sale by Ayn, Inc. did not include any trademark registrations or trademark rights. | Ex. 49 (Contract of Sale) at DMC_004510 |
| #26. Following the bankruptcy of Original DMC, Stephen Wynne began servicing and restoring DeLorean automobiles. | Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 7 |
| #27. Stephen Wynne did not have a connection to John Z. DeLorean or Original DMC. | Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 7 |
| #28. In 1985, Mr. Wynne partnered with a DeLorean automobile owner and created a Southern California company called DeLorean One. | Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 7 |
| #29. Around 1995, after the dissolution of the DeLorean One partnership, Mr. Wynne formed the current Plaintiff entity (DeLorean Motor Company Texas or "DMCT") in Houston and continued to engage in servicing and restoring DeLorean automobiles. | Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 8 |
| #30. Mr. Wynne has served as DMCT's Chief Executive Officer since the company's inception in 1995. | Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 8 |
| #31. In 1997, DMCT purchased from either Kapac or Ayn, Inc.  various assets of Original DMC, including "parts, tools, stock, molds, drawings, and equipment." | Ex. 53 (Certification of Stephen Wynne) at ¶ 6; Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 9 |
| #32. DMCT continued to operate as a restoration, service, and parts supplier. | Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 12 |
| #33. In 2004, DMCT and John Z. DeLorean entered into an agreement pertaining to copyrights in the Original DMC owners' manuals. | Ex. 46 (2004 Agreement) at DMC_003401 |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| SUF #/ Undisputed Fact | Evidence |
|---|---|
| #34. In the 2004 copyright agreement, DMCT agreed that "in August 1987, John Z. DeLorean acquired all rights to the DeLorean Motor Company intellectual property, names, corporate identification, copyrights, etc." | Ex. 46 (2004 Agreement) at DMC_003401 |
| #35. Beginning in 2009, DMCT registered various trademarks with the United States Patent and Trademark Office, including various stylized versions of the words "DeLorean," "DMC," and "DeLorean Motor Company." | Exs. 60-68 (Trademark Registrations for Reg Nos. 3,715,283; 3,914,710; 4,304,360; 4,895,663; 4,935,970; 5,371,356; 5,376,560; 5,382,005; 6,904,834) |
| #36. Registration Nos. 3,715,283, 4,304,360, 4,895,663, and 4,935,970, issued in 2009, 2013, and 2016 for the DeLorean stylized and DMC stylized marks, listed a first use in commerce date in the year 1995. | Exs. 60, 62, 63, 64 (Trademark Registrations for Reg Nos. 3,715,283, 4,304,360, 4,895,663, and 4,935,970) |
| #37. Registration No. 3,9147,10, issued in 2011 for the DeLorean stylized mark, listed a first use in commerce date in the year 2009. | Ex. 61 (Trademark Registration for Reg No. 3,914,710) |
| #38. Registration Nos. 5,371,356, 5,376,560, and 5,382,005, issued in 2018 for the DeLorean Motor Company, DMC stylized, and DeLorean stylized marks, listed a first use in commerce date in the year 2012. | Exs. 65-67 (Trademark Registrations for Reg Nos. 5,371,356, 5,376,560, and 5,382,005) |
| #39. In September 2021, DMCT applied for a "DeLorean Car Design" Mark. | Ex. 68 (Trademark Registration for 6,904,834) |
| #40. On January 25, 2022, the United States Patent and Trademark Office issued a non-final Office Action denying the application on the basis that the design was not sufficiently distinctive. | Ex. 69 (January 25, 2022 Office Action) at p. 2 |

Case No. 8:22-cv-02189-DOC-DFM

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| SUF #/ Undisputed Fact | Evidence |
|---|---|
| #41. DMCT filed a response in July 2022, arguing that the proposed trademark had acquired distinctiveness, citing evidence of BTTF's enduring popularity and "iconic" status and NBCU's widespread merchandising of the Time Machine Car. | Ex. 70 (DMCT July 25, 2022 Response to Office Action) at p. 5 |
| **NBCU's Royalty Payments to DMCT under the 1989 Agreement** | |
| #42. In January 2017, DMCT first reached out to NBCU to inquire about royalties under the 1989 Agreement. | Ex. 40 (1/31/17 Email from M. Dresner) at DMC_000131 |
| #43. In mid-February 2017, DMCT provided NBCU with, among other documents, a copy of a 2015 Settlement Agreement between DMCT and the Estate of John DeLorean and noted that "a summary of the court decision with the JZD estate establishes the fact that all rights of all trademark and merchandising images and likeness and logos pass from the John Z. DeLorean estate to the DeLorean Motor Company." | Ex. 41 (2/16/17 Email from R. Dartt) at DMC_001103 |
| #44. Relying on DMCT's representations, but subject to a reservation of rights, NBCU agreed to treat DMCT as the successor to the 1989 Agreement and sent DMCT its first accounting statement and payment in June 2017. | Ex. 16 (3/18/20 Letter from A. Thomas) at DMC_003243; Ex. 15 (2/12/20 Email from A. Thomas) at DMC_003342; Ex. 42 (3/2/17 Email from R. Dartt); Ex. 8 (4/94 to 12/16 NBCU Accounting Statement) |
| #45. At various points, NBCU requested Plaintiff substantiate its contention that it had been assigned rights under the 1989 Agreement, but Plaintiff did not do so. | Ex. 5 (1/26/18 Letter from A. Hagen); Ex. 44 (2/12/20 A. Thomas Email to C. Lambright) at 003756-57 |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| SUF #/ Undisputed Fact | Evidence |
|---|---|
| #46. In June 2017, NBCU sent DMCT an accounting statement that covered the period April 1, 1994 to December 31, 2016, in the amount of approximately $144,249. | Ex. 8 (4/94 to 12/16 NBCU Accounting Statement); Ex. 9 (4/94 to 12/16 NBCU Accounting Statement v.2) |
| #47. NBCU issued DMCT a check in the amount of $144,249, which DMCT deposited. | Sohn Decl. ¶ 6 |
| #48. On June 16, 2017, DMCT sent NBCU a list of approximately 20 purported additional licensees and alleged that NBCU failed to report royalties to DMCT from revenue it received from these entities. | Ex. 2 (6/16/17 Email from R. Dartt) |
| #49. In its June 16, 2017 correspondence, DMCT did not identify any information about these entities, including whether they were actually licensees of NBCU, what the alleged infringing items looked like, or when and where the items were sold. | Ex. 2 (6/16/17 Email from R. Dartt) |
| #50. NBCU reviewed DMCT's list and determined that 10 of the entities did not have a license with NBCU. | Sohn Decl. ¶ 8 |
| #51. In August 2017, NBCU revised its reporting to incorporate royalties relating to the remaining 10 entities and sent DMCT a supplemental accounting statement that covered the period December 31, 2016 to December 31, 2016, in the amount of approximately $27,363. | Ex. 9 (4/94 to 12/16 NBCU Accounting Statement v.2); Sohn Decl. ¶ 8 |
| #52. NBCU issued DMCT a check in the amount of $27,363, which DMCT deposited. | Sohn Decl. ¶ 8 |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| SUF #/ Undisputed Fact | Evidence |
|---|---|
| #53. On September 25, 2017, DMCT again sent NBCU a list of approximately 35 purported additional licensees and alleged that NBCU failed to report royalties to DMCT from revenue it received from these entities. | Ex. 3 (9/25/17 Email from R. Dartt); Sohn Decl. ¶ 9 |
| #54. In its September 25, 2017 correspondence, DMCT did not identify any information about these entities including whether they were actually licensees of NBCU, what the alleged infringing items looked like, or when and where the items were sold. | Ex. 3 (9/25/17 Email from R. Dartt) |
| #55. On December 1, 2017, DMCT wrote to NBCU stating that the parties were at an "impasse" and demanding that NBCU "provide a full and accurate" accounting by the end of the month or else DMCT would have to "escalate the matter." | Ex. 4 (12/1/17 Email from R. Dartt) |
| #56. On January 28, 2020, counsel for DMCT, Casey Lambright, sent a letter to Adam Hagen, in-house counsel for NBCU. | Ex. 44 (February 2020 Correspondence between A. Thomas and C. Lambright) at DMC_003344–45 |
| #57. In the January 28, 2020 letter, Mr. Lambright stated that, "within twenty (20) days of the date of this letter, NBCU must provide copies of all licensing agreements concerning DMC's marks or images of the vehicle and a complete accounting related thereto." | Ex. 44 (February 2020 Correspondence between A. Thomas and C. Lambright) at DMC_003345 |
| #58. In March 2020, NBCU sent DMCT an accounting statement that covered the period January 1, 2017 to September 30, 2018, in the amount of approximately $29,482. | Ex. 16 (3/18/20 Letter from A. Thomas) at DMC_003245; Ex. 10 (1/17 to 9/18 NBCU Accounting Statement) |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| SUF #/ Undisputed Fact | Evidence |
|---|---|
| #59. The accounting statement NBCU sent in March 2020 included any entities that DMCT identified in September 2017 that were actually licensees of NBCU. | McQuown Decl. ¶ 10 |
| #60. NBCU issued DMCT a check in the amount of $29,482, which DMCT deposited. | McQuown Decl. ¶ 10 |
| #61. In April 2020, NBCU sent DMCT an accounting statement that covered the period October 1, 2018 to December 31, 2019, in the amount of approximately $49,264. | Ex. 11 (10/18 to 12/19 NBCU Accounting Statement) |
| #62. NBCU issued DMCT a check in the amount of $49,264, which DMCT deposited. | McQuown Decl. ¶ 11 |
| #63. In November 2020, NBCU sent DMCT an accounting statement that covered the period January 1, 2020 to June 30, 2020, in the amount of approximately $20,587. | Ex. 12 (1/20 to 6/20 NBCU Accounting Statement) |
| #64. NBCU issued DMCT a check in the amount of $20,587, which DMCT deposited. | McQuown Decl. ¶ 13 |
| #65. In August 2021, NBCU sent DMCT an accounting statement that covered the period July 1, 2020 to December 31, 2020, in the amount of approximately $33,325. | Ex. 13 (7/20 to 12/20 NBCU Accounting Statement |
| #66. NBCU issued DMCT a check in the amount of $33,325, which DMCT deposited. | McQuown Decl. ¶ 14 |
| #67. On August 6, 2021, Casey Lambright, counsel for DMCT, emailed Andrew J. Thomas, counsel for NBCU, requesting "word on the missing items [he had] repeatedly requested." | Ex. 18 (Emails between Lambright and Thomas) at 8/6/21 Correspondence from C. Lambright |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| SUF #/ Undisputed Fact | Evidence |
|---|---|
| #68. In his August 6, 2021, Mr. Lambright did not identify the "missing" items he referenced. | Ex. 18 (Emails between Lambright and Thomas) at 8/6/21 Correspondence from C. Lambright |
| #69. On August 13, 2021, Mr. Thomas emailed Mr. Lambright: "I am [] happy to look into anything you believe is missing. Can you be more specific about the missing items you refer to below?" | Ex. 18 (Emails between Lambright and Thomas) at 8/13/21 Email from A. Thomas |
| #70. On August 13, 2021, Mr. Lambright emailed Mr. Thomas: "Did you ever figure out the missing documents and hole in the time line and when we will receive those?" | Ex. 18 (Emails between Lambright and Thomas) at 8/13/21 Email from C. Lambright |
| #71. On September 7, 2021, Mr. Thomas emailed Mr. Lambright: "Can you please let me know more specifically what missing documents you are referring to in your email below?  As for the time line, I believe Universal has now accounted to you for all relevant time periods of BTTF merchandising activity covered by the 1989 Agreement." | Ex. 18 (Emails between Lambright and Thomas) at 9/7/21 Email from A. Thomas |
| #72. Mr. Lambright did not respond to Mr. Thomas's September 7, 2021 email. | Thomas Decl. ¶ 14 |
| #73. On October 14, 2021, DMCT's counsel, Roger Behle, sent a letter to NBCU's counsel demanding an accounting of NBCU's books and records pertaining to the 1989 Agreement and requesting that all materials be provided within 30 days. | Ex. 19 (10/14/21 Letter from R. Behle) |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| SUF #/ Undisputed Fact | Evidence |
|---|---|
| #74. NBCU's counsel responded by asking for additional information about the identities of any licensees that DMCT contended had been omitted from NBCU's accounting, the type of merchandise involved, and the dates such merchandise was sold. | Thomas Decl. ¶ 15 |
| #75. On February 14, 2022, DMCT sent NBCU a document entitled "*Back To The Future Almanac: Official Collector's Guide.*" | Ex. 20 (2/14/22 Email from R. Chase); Ex. 21 (BTTF Almanac) |
| #76. The "*Back To The Future Almanac: Official Collector's Guide*" was published in 2015. | Ex. 21 (BTTF Almanac) |
| #77. The "*Back To The Future Almanac: Official Collector's Guide*" purportedly covers BTTF merchandise and memorabilia created during the period between 1985 and 2015. | Ex. 21 (BTTF Almanac) |
| #78. "*Back To The Future Almanac: Official Collector's Guide*" included several hundred images of BTTF products and promotional materials from the period 1985-2015 but did not provide sales or licensing information. | Ex. 21 (BTTF Almanac) |
| #79. In conjunction with sending the Almanac, DMCT included a list of merchandise and memorabilia items, which included descriptions such as "BTTF Song Book" and "BTTF Cap." | Ex. 22 (BTTF Almanac Merchandise List) |

Case No. 8:22-cv-02189-DOC-DFM

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| SUF #/ Undisputed Fact | Evidence |
|---|---|
| #80. In its February 14, 2022 communication, DMCT did not identify the identities of any NBCU licensees who sold the products, the dates on which any of the identified products were sold, what the products looked like, or whether they had been previously accounted for by NBCU to DMCT. | Ex. 20 (2/14/22 Email from R. Chase); Ex. 21 (BTTF Almanac Merchandise List). |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") | |
|---|---|
| #81. In 2014, Sally DeLorean, as the administratrix for the DeLorean Estate, filed suit against DMCT in the District of New Jersey alleging that DMCT's use of the DMCT Marks unlawfully infringed the DeLorean Estate's rights in Mr. DeLorean's identity, the DeLorean Marks, and the DeLorean automobiles' trade dress. | Ex. 50 (2014 DNJ Complaint) |
| #82. On September 23, 2015, DMCT and the DeLorean Estate executed a settlement agreement (the "Settlement Agreement"). | Ex. 43 (Rule 11 Settlement Agreement) |
| #83. In the Settlement Agreement, the DeLorean Estate acknowledged DMCT's trademark rights based on its registrations and covenanted not to file any further litigation against DMCT. | Ex. 43 (Rule 11 Settlement Agreement) |
| #84. The Settlement Agreement did not refer to the 1989 Agreement. | Ex. 43 (Rule 11 Settlement Agreement) |
| #85. The Settlement Agreement did not state that any rights under the 1989 Agreement were transferred or assigned to either DMCT or the DeLorean Estate. | Ex. 43 (Rule 11 Settlement Agreement) |
| #86. In February 2018, a representative of the DeLorean Estate contacted NBCU and claimed that the Estate, not DMCT, was entitled to receive royalties under the 1989 Agreement. | Ex. 6 (2/13/18 Letter from R. Scott Thompson, counsel for DeLorean Estate); McQuown Decl. ¶ 9. |
| #87. NBCU suspended its payment of royalties to DMCT under the 1989 Agreement and requested that the DeLorean Estate and DMCT determine who was entitled to payment from NBCU before NBCU resumed its reporting. | Ex. 7 (4/18/18 Letter from A. Hagen); Ex. 73 (1/8/19 Email from N. Ross of NBCU) |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") | |
|---|---|
| #88. In April 2018, the DeLorean Estate filed a complaint against DMCT seeking a declaratory judgment that the Settlement Agreement did not transfer any rights to the 1989 Agreement to DMCT and that DMCT had to pay the monies it had received from NBCU to the DeLorean Estate. | Ex. 51 (2018 DNJ Complaint) |
| #89. In its Motion to Dismiss filed May 23, 2018, DMCT asserted that the 2015 Settlement Agreement "does not transfer or purport to transfer any rights." | Ex. 52 (2018 DNJ DMCT Motion to Dismiss) at p. 5, n.10 |
| #90. In its Motion to Dismiss filed May 23, 2018, DCMT also claimed that it was the "unquestionable" "successor" under the 1989 Agreement. | Ex. 52 (2018 DNJ DMCT Motion to Dismiss) at p. 8 |
| #91. DMCT supported its claim in its Motion to Dismiss filed May 23, 2018 that it was the successor under the 1989 Agreement by pointing to 2008 and 2009 trademark registrations that were expressly based on alleged trademark uses starting in the mid-1990s. | Ex. 52 (2018 DNJ DMCT Motion to Dismiss) at p. 8 |
| #92. In its Reply filed July 30, 2018, DMCT asserted that because John Z. DeLorean had no intellectual property rights at the time the Agreement was executed, "the Universal Pictures contract [was] invalid." | Ex. 54 (2018 DNJ DMCT Reply ISO MTD) at pp. 11-12 |
| #93. The District Court concluded that the Settlement Agreement barred the DeLorean Estate from suing DMCT. | Ex. 56 (2018 DNJ Opinion) |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") | |
|---|---|
| #94. The District Court held that the 1989 Agreement fell within the scope of claims the parties were not permitted to litigate under the Settlement Agreement. | Ex. 56 (2018 DNJ Opinion) at p. 7 |
| #95. The District Court did not purport to decide the issue of whether DMCT was in fact a successor-in-interest to the 1989 Agreement. | Ex. 56 (2018 DNJ Opinion) at p. 9 |
| #96. The District Court stated in its order: "Even if Plaintiff is correct that Defendant was not 'assigned' the Universal Agreement and Plaintiff retained some rights in same, . . . the Court agrees with Defendant that Plaintiffs attempt to enforce the Universal Agreement would violate the Settlement Agreement . . . because the subject matter of the Universal Agreement is covered and barred by the Settlement Agreement." | Ex. 56 (2018 DNJ Opinion) at p. 9, n.2 |
| #97. The DeLorean Estate appealed the District Court's ruling to the United States Court of Appeals for the Third Circuit. | Ex. 58 (Third Circuit Opinion) at p. 2 |
| #98. In its appellate brief, DMCT argued that the 1989 Agreement was "void and unenforceable[.]" | Ex. 57 (2019 DMCT Appellee Brief) at pp. 15, 25 |
| #99. In its appellate brief, DMCT also asserted that it was *not* DMCT's position that the Settlement Agreement transferred or assigned any contract rights under the 1989 Agreement. | Ex. 57 (2019 DMCT Appellee Brief) at p. 22 |
| #100. The Third Circuit concluded that "the Settlement Agreement barred the Estate from suing DMC Texas for the conduct it engaged in here." | Ex. 58 (Third Circuit Opinion) at p. 7 |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") | |
|---|---|
| #101. The Third Circuit did not adjudicate whether DMCT was a successor-in-interest to the 1989 Agreement. | Ex. 58 (Third Circuit Opinion) |
| Procedural History in this Action | |
| #102. On October 26, 2022, DMCT filed its Complaint in the Orange County Superior Court. | Ex. 75 (DMCT OCSC Complaint) |
| #103. The Complaint alleged claims for breach of contract, trademark and trade dress infringement, and an accounting. | Ex. 75 (DMCT OCSC Complaint) ¶ 21, pp. 8-11 |
| #104. On December 22, 2022, DMCT filed its First Amended Complaint ("FAC"). | Ex. 76 (DMCT First Amended Complaint, ECF No. 10, 10-1) |
| #105. On February 16, 2023, the parties entered into a stipulation regarding the scope of Plaintiff's Lanham Act claim. | Ex. 77 (Joint Stipulation Clarifying Scope of Lanham Act Claim, ECF No. 17) |
| #106. In their February 16, 2023 Stipulation, the parties stipulated that DMCT's Lanham Act claim was not based, in whole or in part, on the appearance of a DeLorean car in the BTTF films, in the film *Ready Player One*, or in any works protected by the First Amendment, as well as the advertising of such works. | Ex. 77 (Joint Stipulation Clarifying Scope of Lanham Act Claim, ECF No. 17) at p. 2 |
| #107. On March 17, 2023, DMCT served its Initial Disclosures. | Ex. 24 (DMCT Initial Disclosures) |
| #108. In its Initial Disclosures, under the "Damages" section, DMCT stated: "Plaintiff claims compensatory damages, incidental and consequential damages, and disgorgement of profits Defendant obtained through the infringement of Plaintiff's trademarks and trade dress. DMCT did not amend or supplement its Initial Disclosures. | Ex. 24 (DMCT Initial Disclosures) |

STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") | |
|---|---|
| #109. NBCU's Interrogatory No. 10 asked DMCT to identify each instance in which it contended that NBCU committed a breach of the 1989 Agreement. | Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 10 |
| #110. On June 28, 2023, DMCT objected to Interrogatory No. 10 that the Interrogatory was "premature given that the Propounding Party has not yet produced Documents evidencing contracts or licenses entered into by NBCU concerning products or services covered by the 1989 Agreement, or full accounting records, and thus, other than the specific facts alleged in the operative complaint (which are incorporated herein by reference), and absent such Documents and information, the Responding Party is unable to identify each and every instance in which NBCU breached the 1989 Agreement." DMCT did not amend or supplement its response. | Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 10 |
| #111. NBCU's Interrogatory No. 11 asked DMCT to "[i]dentify each and every instance in which you contend that NBCU used any of the DeLorean Marks in a manner that exceeded the scope of the 1989 Agreement." | Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 11 |

Case No. 8:22-cv-02189-DOC-DFM

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") | |
|---|---|
| #112. DMCT objected to Interrogatory No. 11 that the Interrogatory was "premature given that the Propounding Party has not yet produced Documents evidencing business transactions, contracts or licenses entered into by NBCU concerning the DeLorean Marks, or full accounting records, and thus, other than the specific facts alleged in the operative complaint (which are incorporated herein by reference), and absent such Documents and information, the Responding Party is unable to identify each and every instance in which NBCU used the DeLorean Marks in a manner exceeding the scope of the 1989 Agreement."  DMCT did not amend or supplement its response. | Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 11 |
| #113. NBCU's Interrogatory No. 12 asked DMCT to "[i]dentify each and every instance in which you contend that NBCU used any of the DeLorean Marks in a manner that constituted a violation of the Lanham Act." | Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 12 |

Case No. 8:22-cv-02189-DOC-DFM

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") ||
|---|---|
| #114. DMCT objected to Interrogatory No. 12 that the Interrogatory was "premature given that the Propounding Party has not yet produced Documents evidencing business transactions, contracts or licenses entered into by NBCU concerning the DeLorean Marks, or full accounting records, and thus, other than the specific facts alleged in the operative complaint (which are incorporated herein by reference), and absent such Documents and information, the Responding Party is unable to identify each and every instance in which NBCU used the DeLorean Marks in a manner that constituted(es) a violation of the Lanham Act."  DMCT did not amend or supplement its response. | Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 12 |
| #115. NBCU's Interrogatory No. 18 asked DMCT to "[i]dentify and describe in detail each and every instance in which any Person has, by word or action, suggested a belief or questioned whether any product or service depicting the Time Machine Car is or was affiliated with, sponsored by, or endorsed by You." | Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 18 |

Case No. 8:22-cv-02189-DOC-DFM

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") | |
|---|---|
| #116. DMCT responded to Interrogatory No. 18 that "on nearly a daily basis, the Responding Party, its staff or one of its customers receives a comment from a member of the public concerning the 'Time Machine Car' – such as, 'Where is the Flux Capacitor on this thing?' or 'Where is the Mr. Fusion?' or 'What happens when you hit 88 MPH in this car?' and many, many others." DMCT did not amend or supplement its response. | Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 18 |
| #117. On July 21, 2023, NBCU served DMCT with its Second Set of Requests for Production. | Ex. 28 (DMCT Amended Responses to NBCU RFPs) |
| #118. NBCU's Request for Production No. 51 asked for "[a]ll Documents that comprise, refer to, relate to, or otherwise reflect that NBCU was a party to any agreement, including any litigation settlement agreement, entered into between You and the DeLorean Estate, as You indicated exist by responding 'deny' to NBCU's RFA No. 8." | Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 51 |
| #119. DMCT responded to Request for Production No. 51 that "Responding Party will produce all non-privileged documents within its possession, custody or control that are responsive to this request, bearing the Bates Number DMC_004462-004558." | Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 51 |
| #120. The documents encompassed by DMC_004462-004558 do not include any agreement between DMCT and the DeLorean Estate to which NBCU is a party. | Ex. 29 (Composite of Documents Cited in Response to RFP No. 51) |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") | |
|---|---|
| #121. NBCU's Request for Production No. 52 asked for "[a]ll Documents that comprise, refer to, relate to, or otherwise reflect that You have executed any assignment or other Document that states that DMC Texas is or was the successor-in-interest to JZD under the 1989 Agreement[.]" | Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 52 |
| #122. After amending its responses, DMCT responded to NBCU's Request for Production No. 52 on November 3, 2023 that "Responding Party will produce all non-privileged documents within its possession, custody or control that are responsive to this request, bearing the Bates Number DMC_004462-DMC_004558; DMC_003978-DMC_003995." | Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 52 |
| #123. The documents encompassed by DMC_004462-DMC_004558 and DMC_003978-DMC_003995 do not include any documents which state that DMCT is an assignee or successor-in-interest to John Z. DeLorean under the 1989 Agreement. | Ex. 30 (Composite of Documents Cited in Response to RFP No. 52) |
| #124. NBCU's Request for Production No. 56 asked for "Documents sufficient to identify each and every item You are aware of that was not accounted for in the statement You received from NBCU for the period December 31, 2016 to December 31, 2016, as You indicated exist by responding 'deny' to NBCU's RFA No. 15." | Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 56 |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") | |
|---|---|
| #125. After amending its responses, DMCT responded to NBCU's Request for Production No. 56 on November 3, 2023 that "Responding Party will produce all non-privileged documents within its possession, custody or control that are responsive to this request, bearing the Bates Number DMC_003800-DMC_003827[2]; DMC_003772-DMC_003799; DMC_003735-DMC_003736; DMC_002329-DMC_002330; DMC_003770-DMC_003771; DMC_000303-DMC_000305; DMC_004060-DMC_004062." | Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 56 |
| #126. The documents encompassed by DMC_003800-DMC_003827; DMC_003772-DMC_003799; DMC_003735-DMC_003736; DMC_002329-DMC_002330; DMC_003770-DMC_003771; DMC_000303-DMC_000305; and DMC_004060-DMC_004062 consist of email correspondence between DMCT president Roger Dartt and NBCU in 2017. | Ex. 31 (Composite of Documents Cited in Response to RFP No. 56) |

[2] DMC_003800-DMC_003827 is incorrectly titled. It is also listed in DMCT's privilege log as attorney-client communications. The documents produced as DMC_003800-DMC_003827 instead include Bates Nos. DMC_003828-DMC_003855.

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") | |
|---|---|
| #127. NBCU's Request for Production No. 58 asked for "Documents sufficient to identify each and every item You are aware of that was not accounted for in the statement You received from NBCU for the period January 1, 2017 to September 30, 2018, as You indicated exist by responding 'deny' to NBCU's RFA No. 18." | Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 58 |
| #128. After amending its responses, DMCT responded to NBCU's Request for Production No. 58 on November 3, 2023 that "Responding Party will produce all non-privileged documents within its possession, custody or control that are responsive to this request, bearing the Bates Number DMC_001505-DMC_001506; DMC_000285-DMC_000285; DMC_004028-DMC_004034; DMC_004292-DMC_004299; DMC_004005-DMC_004013; DMC_002326-DMC_002328." | Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 58 |
| #129. The documents encompassed by DMC_001505-DMC_001506; DMC_000285-DMC_000285; DMC_004028-DMC_004034; DMC_004292-DMC_004299; DMC_004005-DMC_004013; and DMC_002326-DMC_002328 consist of email correspondence between DMC's president Roger Dartt and NBCU in 2017 and 2018. | Ex. 32 (Composite of Documents Cited in Response to RFP No. 58) |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") | |
|---|---|
| #130. NBCU's Request for Production No. 60 asked for "Documents sufficient to identify each and every item You are aware of that was not accounted for in the statement You received from NBCU for the period October 1, 2018 to December 31, 2019, as You indicated exist by responding 'deny' to NBCU's RFA No. 21." | Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 60 |
| #131. After amending its responses, DMCT responded to NBCU's Request for Production No. 60 on November 3, 2023 that "Responding Party will produce all non-privileged documents within its possession, custody or control that are responsive to this request, bearing the Bates Number DMC_004234-DMC_004242; DMC_003671-DMC_003679; DMC_003574-DMC_003583." | Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 60 |
| #132. The documents encompassed by DMC_004234-DMC_004242; DMC_003671-DMC_003679; and DMC_003574-DMC_003583 consist of email correspondence between DMC's president Roger Dartt and NBCU between 2017 and early 2019. | Ex. 33 (Composite of Documents Cited in Response to RFP No. 60) |
| #133. NBCU's Request for Production No. 62 asked for "Documents sufficient to identify each and every item You are aware of that was not accounted for in the statement You received from NBCU for the period January 1, 2020 to June 30, 2020, as You indicated exist by responding 'deny' to NBCU's RFA No. 24." | Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 62 |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") | |
|---|---|
| #134. After amending its responses, DMCT responded to NBCU's Request for Production No. 62 on November 3, 2023 that "Responding Party will produce all non-privileged documents within its possession, custody or control that are responsive to this request, bearing the Bates Number DMC_004378-DMC_004381." | Ex. 28 (DMCT Amended Responses to RFPs) at No. 62 |
| #135. DMC_004378-DMC_004381 comprise correspondence between counsel for DMCT, Casey Lambright, and counsel for NBCU, Andrew J. Thomas. | Ex. 34 (Composite of Documents Cited in Response to RFP No. 62) |
| #136. NBCU's Request for Production No. 64 asked for "Documents sufficient to identify each and every item You are aware of that was not accounted for in the statement You received from NBCU for the period July 1, 2020 to December 31, 2020, as You indicated exist by responding 'deny' to NBCU's RFA No. 27." | Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 64 |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") | |
|---|---|
| #137. After amending its responses, DMCT responded to NBCU's Request for Production No. 64 on November 3, 2023 that "Responding Party will produce all non-privileged documents within its possession, custody or control that are responsive to this request, bearing the Bates Number DMC_003696-DMC_003700; DMC_003340-DMC_003355; DMC_003753-DMC_003764; DMC_003337-DMC_003339; DMC_003746-DMC_003750; DMC_003751-DMC_003752."  These comprise correspondence between counsel for DMC, Casey Lambright, and counsel for NBCU, Andrew J. Thomas. | Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 64 |
| #138. DMC_003696-DMC_003700; DMC_003340-DMC_003355; DMC_003753-DMC_003764; DMC_003337-DMC_003339; DMC_003746-DMC_003750; and DMC_003751-DMC_003752 comprise correspondence between counsel for DMC, Casey Lambright, and counsel for NBCU, Andrew J. Thomas. | Ex. 35 (Composite of Documents Cited in Response to RFP No. 64) |
| #139. On November 3, 2023, DMCT served its First Set of Requests for Admission to NBCU. | Ex. 37 (NBCU Responses to DMCT RFAs) |
| #140. DCMT's Requests for Admission Nos. 4 through 30 asked NBCU to admit that it licensed to an additional 27 entities. | Ex. 37 (NBCU Responses to DMCT RFAs) |

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") | |
| --- | --- |
| #141. In response to DMCT's First Set of Requests for Admission that NBCU licensed to additional entities, NBCU reviewed the entities and determined that it did not license any *Back to the Future* merchandise or commercial tie-ups which included the Time Machine Car to any of these entities from January 1, 2017 through October 2022. | Longworth Decl. ¶ 7; Ex. 37 (NBCU Responses to DMCT RFAs) at Nos. 4-30 |

## CONCLUSIONS OF LAW

1.     A breach of contract claim has four elements: (1) a legally enforceable contract between the parties; (2) the plaintiff's performance or excuse for non-performance; (3) the defendant's breach of that contract (e.g., by failing to perform or performing inadequately); and (4) damage to the plaintiff caused by the defendant's breach.  *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 n.33 (9th Cir. 2017).

2.     Insufficient evidence exists to support the first element of breach of contract because DMCT is not a party or a successor-in-interest to the 1989 Agreement.  *Energy 2001 v. Pac. Ins. Co. Ltd.*, 2010 WL 5393978, at *1 (E.D. Cal. Dec. 21, 2010).

3.     A person or entity that is not a party to a contract has no standing to sue under the contract.  *Energy 2001*, 2010 WL 5393978, at *1 (citing *Gantman v. United Pacific Insurance Co.*, 232 Cal.App.3d 1560, 1566 (1991)).

4.     The statute of limitations for breach of contract is four years.  Cal. Code Civ. Proc. § 337.

5.     A breach of contract claim accrues and the statute of limitations begins to run at the time of the breach "regardless of whether any damage is apparent or

whether the injured party is aware of his right to sue." *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D. Cal. 2006).

6.     Accrual may be delayed until the time "when the plaintiff discovers or could have discovered, through the exercise of reasonable diligence, all of the facts essential to his cause of action." *Perez-Encinas*, 468 F. Supp. 2d at 1134; *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 885 (N.D. Cal. 2018) (the rule only applies "where it is manifestly unjust" for a cause of action to accrue before plaintiff was aware.)

7.     By challenging NBCU's accounting practices under the 1989 Agreement and threatening litigation in June through December 2017, DCMT "had reason *to at least suspect*" that it had a claim against NBCU for breach of contract and DMCT's claim for breach of contract accrued no later than December 2017. *Wolf v. Travolta*, 167 F. Supp. 3d 1077, 1102 (C.D. Cal. 2016) (original emphasis).

8.     Because DMCT's breach of contract claim accrued no later than December 2017, DMCT is barred from asserting a breach of contract claim based on a failure to pay royalties allegedly due to DMCT before October 26, 2018.  Cal. Code Civ. Proc. § 337.

9.     Insufficient evidence exists to support the third element of breach of contract because DMCT has provided no evidence that NBCU breached the 1989 Agreement. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations."); *Gustafson v. SunTrust Mortg., Inc.*, 2017 WL 3575282, at *3 (C.D. Cal. July 10, 2017), *aff'd,* 752 F. App'x 495 (9th Cir. 2019) (defendant entitled to summary judgment where "Plaintiff had not come forward with any evidence of breach"); *Unicon Fin. Servs., Inc. v. InterCept*, 2006 WL 8431500, at *13 (C.D. Cal. Jan. 17, 2006), *aff'd sub nom. Unicon Fin. Servs., Inc. v. InterCept, Inc.*, 256 F. App'x 27 (9th Cir. 2007) (granting summary judgment on breach of contract claim where

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

evidence was "not significantly probative of the fact that royalties we owed" under the agreement but instead gave "rise to an exceedingly weak inference" of a breach.).

10.    Insufficient evidence exists to support the fourth element of breach of contract because DMCT has provided no evidence that it was damaged by any supposed breach of the 1989 Agreement by NBCU.  *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 808 (9th Cir. 1988) (to survive summary judgment the plaintiff must adduce evidence from which "a jury could fairly estimate damages."); *accord Weinberg v. Whatcom County*, 241 F.3d 746, 751 (9th Cir. 2000) ("Because Weinberg failed to offer competent evidence of damages, dismissal on summary judgment was appropriate.").

11.    An accounting is an equitable remedy, not a cause of action. *PetConnect Rescue, Inc. v. Salinas*, 656 F. Supp. 3d 1131, 1148 n.3 (S.D. Cal. 2023); *see Nguyen v. JP Morgan Chase Bank*, 2012 WL 13019941, at *4 (C.D. Cal. Apr. 16, 2012) ("Courts in California generally classify an accounting as a remedy and not a cause of action.").

12.    Because DMCT cannot establish a claim for breach of contract, it cannot establish a claim for accounting.  *Gilliam v. Levine*, 562 F. Supp. 3d 614, 626 (C.D. Cal. 2021) (granting summary judgment on derivative claim for accounting where underlying claims failed); *see Janis v. California State Lottery Comm'n*, 68 Cal. App. 4th 824, 833-34 (1998).

13.    An infringement claim under the Lanham Act has two elements: (1) the plaintiff has "a valid, protectable trademark" and (2) the "defendant's use of the mark is likely to cause confusion."  *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018).

14.    An infringement claim under the Lanham Act has a four-year statute of limitations.  *Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 990 (9th Cir. 2009) (concluding in a trademark case that "the imputation

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

1   of the four-year limitations period from California trademark infringement law ...

2   was the correct period to use").

3        15.    The statute of limitations bars DMCT from asserting a claim under the

4   Lanham Act based on alleged infringement that occurred prior to October 26, 2018.

5   *Internet Specialties W*, 559 F.3d at 990.

6        16.    DCMT cannot establish an infringement claim under the Lanham Act

7   based on NBCU's alleged failure to pay royalties under the 1989 Agreement.  *See*

8   *MDY Industries, LLC v. Blizzard Entertainment,* 629 F.3d 928, 939 (9th Cir. 2010)

9   (When the owner of intellectual property licenses that property, it "ordinarily waives

10  the right to sue licensees" for infringement and "may only sue for breach of

11  contract."); *see also Audigier Brand Mgmt. v. Perez*, 2012 WL 5470888, at *7 (C.D.

12  Cal. Nov. 5, 2012) (citing *Segal v. Geisha NYC, LLC,* 517 F.3d 501, 506 (7th

13  Cir.2008)); *Fox v. iVillage*, 2005 WL 3157413, at *2 (N.D. Cal. Nov. 23, 2005).

14       17.    In the event this Court determines that DMCT is not a successor to the

15  1989 Agreement and does not have any right to receive contractual royalty payments

16  from NBCU, then DMCT's trademark claims fail for a separate and additional

17  reason:  DCMT cannot establish an infringement claim under the Lanham Act based

18  on NBCU's use of the Time Machine Car because NBCU is a senior user of the

19  Time Machine Car mark.  *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174

20  F.3d 1036, 1047 (9th Cir. 1999) ("The first to use a mark is deemed the 'senior'

21  user.").

22       18.    Elements from entertainment properties such as feature films,

23  television programs, and comic books may be protected under the Lanham Act.  *See,*

24  *e.g., Warner Bros. v. Gay Toys, Inc.,* 658 F.2d 76, 78 (2d Cir. 1981) (trademark

25  protection for the "General Lee" automobile from *The Dukes of Hazzard*); *Universal*

26  *City Studios, Inc. v. J.A.R. Sales, Inc.,* 1982 WL 1279, at *5 (C.D. Cal. Oct. 20, 1982)

27  (trademark protection for fictional characters from *E.T. The Extra-Terrestrial*);

28  *Conan Properties, Inc. v. Conans Pizza,* 752 F.2d 145, 147 (5th Cir. 1985)

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

(trademark protection for the fictional character Conan from *Conan The Barbarian*); *DC Comics v. Kryptonite Corp.,* 336 F. Supp. 2d 324, 332-33 (S.D.N.Y. 2004) (fictional element "Kryptonite" from Superman comics protected under trademark law); *DC Comics, Inc. v. Filmation Assocs.,* 486 F. Supp. 1273, 1277 (S.D.N.Y. 1980) (same); *DC Comics, Inc. v. Powers,* 465 F. Supp. 843 (S.D.N.Y. 1978) (upholding common law trademark rights in the fictional "Daily Planet" newspaper).

19.     In the event this Court determines that DMCT is not a successor to the 1989 Agreement and does not have any right to receive contractual royalty payments from NBCU, then NBCU has common law trademark rights in its Time Machine Car because it plays a critical role in NBCU's BTTF Film franchise and NBCU has consistently exploited the Time Machine Car mark in commerce since the release of *Back to the Future* in 1985. *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 187 (5th Cir. 2018) ("When an element plays a more central role in a franchise, trademark protection is ordinarily granted."); *see e.g., Warner Bros,* 658 F.2d at 78 (trademark protection for the "General Lee" automobile from *The Dukes of Hazzard*); *J.A.R. Sales, Inc.,* 1982 WL 1279, at *5 (trademark protection for fictional characters from *E.T. The Extra-Terrestrial*); *Conan Properties, Inc.,* 752 F.2d at 147 (trademark protection for the fictional character Conan from *Conan The Barbarian*); *Kryptonite Corp.,* 336 F. Supp. 2d at 332-33 (fictional element "Kryptonite" from Superman comics protected under trademark law); *Filmation Assocs.,* 486 F. Supp. at 1277 (same); *Powers,* 465 F. Supp. at 843 (upholding common law trademark rights in the fictional "Daily Planet" newspaper).

20.     In analyzing the element of likelihood of confusion for a claim under the Lanham Act, courts in the Ninth Circuits analyze the following *Sleekcraft* factors: "(1) the strength of the mark; (2) the proximity of the goods; (3) the similarity of the marks; (4) evidence of actual confusion; (5) the marketing channels used; (6) the type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) the likelihood of

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

expansion of the product lines." *Gordon*, 909 F.3d at 264 n.6. (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)).

21.     Insufficient evidence exists to support the element of likelihood of confusion because DMCT has no evidence of actual confusion or any consumer survey showing actual confusion. *See Multi Time Mach., Inc. v. Amazon.com, Inc.*, 804 F.3d 930 (9th Cir. 2015) (company president's testimony describing supposed confusion was "too speculative to show actual confusion"); *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 843 (9th Cir. 2002) (upholding summary judgment and discounting "several dozen inquiries over the years about whether the parties were related" because they were "too ambiguous"); *BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, 615 F. Supp. 3d 982, 1020 (D. Ariz. 2022) (summary judgment appropriate where deposition testimony insufficient to show actual confusion).

22.     The *Sleekcraft* factor relating to the type of goods and degree of consumer care weighs in NBCU's favor because DMCT's and NBCU's distinct customer bases exercise care and precision in their purchases of DMCT's expensive physical cars and NBCU BTTF Films memorabilia. *Multi Time*, 804 F.3d at 937 (high degree of customer care for watches that "sell for several hundred dollars").

23.     The *Sleekcraft* factor relating to the intent to deceive favors NBCU because there is no evidence that NBCU had an intent to deceive the public as to the source of NBCU's products. *Boldface Licensing %8F Branding v. By Lee Tillett, Inc.*, 940 F. Supp. 2d 1178, 1195 (C.D. Cal. 2013).

24.     DMCT cannot establish the element of likelihood of confusion because DMCT has no evidence to show, and no reasonable jury could find, that the balance of the *Sleekcraft* factors weighs in its favor. *Golden Eye Media USA, Inc. v. Trolley Bags UK Ltd.*, 525 F. Supp. 3d 1145, 1231 (S.D. Cal. 2021), *aff'd sub nom. Golden Eye Media USA, Inc. v. Evo Lifestyle Prod. Ltd.*, 2022 WL 2232517 (Fed. Cir. June 22, 2022) ("[I]n the absence of evidence on [the *Sleekcraft* factors], the Court concludes that there are no genuine issues of material fact, and the *Sleekcraft* factors

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**

weigh in favor of a finding that there was no likelihood of confusion."); *Solofill, LLC v. Rivera*, 2018 WL 6038287, at *11 (C.D. Cal. Aug. 3, 2018) ("[W]ith no supporting evidence for a majority of the *Sleekcraft* factors . . . no reasonable jury could find that Defendants have infringed Plaintiff's registered trademarks.").

Dated:  January 12, 2024                    Jenner & Block LLP

By: _____
Andrew J. Thomas
Lauren M. Greene
Rachael A. Goldman

Attorneys for Defendant
NBCUniversal Media LLC

**STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW**