**JENNER & BLOCK LLP**
Andrew J. Thomas (SBN 159533)
AJThomas@jenner.com
Todd C. Toral (SBN 197706)
TToral@jenner.com
Lauren M. Greene (SBN 271397)
LGreene@jenner.com
Rachael A. Goldman (SBN 335138)
RGoldman@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:  +1 213 239 5100
Facsimile:   +1 213 239 5199

Attorneys for Defendant
NBCUNIVERSAL MEDIA, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELOREAN MOTOR COMPANY, a Texas corporation,<br><br>Plaintiff,<br><br>vs.<br><br>NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company, and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 8:22-cv-02189-DOC-DFM<br>Honorable David O. Carter<br>Magistrate Judge Douglas F. McCormick<br><br>**DEFENDANT NBCUNIVERSAL MEDIA, LLC'S REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date:          February 12, 2024<br>Time:         8:30 am<br>Courtroom:   10A |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ...................................................................................................... 2

    A.    DMCT Is Not Entitled to Relief Under Rule 56(d). ............................ 2

    B.    DMCT Cannot Prevail on its Breach of Contract Claim. .................... 5

        1.    DMCT Has No Standing to Bring Claims Under the
            1989 Agreement.......................................................................... 6

            a.    DMCT's Prior Litigation with the DeLorean
                Estate Raises No Triable Issue of Fact............................ 6

            b.    DMCT's Chain of Title Evidence Relating to Its
                Trademark Ownership Voids the 1989 Agreement. ........ 7

            c.    NBCU Is Not Estopped from Challenging
                DMCT's Standing Under the 1989 Agreement. .............. 8

        2.    DMCT's Statute of Limitations Argument Is Baseless.............. 9

        3.    DMCT Has No Evidence of Any Breach of Contract by
            NBCU. ...................................................................................... 12

        4.    DMCT Fails to Identify Any Evidence of Damages................. 14

    C.    DMCT's Trademark and Trade Dress Infringement Claims Fail....... 14

        1.    DMCT Concedes That Its Infringement Claim Is
            Incompatible with Its Breach of Contract Claim...................... 14

        2.    DMCT Cannot Establish Trademark Infringement.................... 15

            a.    DMCT Does Not Dispute That NBCU Is the
                Senior User of the Time Machine Car. .......................... 15

            b.    DMCT Has Not Submitted Any Evidence of
                Consumer Confusion...................................................... 16

III.  CONCLUSION ............................................................................................... 19

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AirWair International Ltd. v. Schultz,*
  84 F. Supp. 3d 943 (N.D. Cal. 2015)......................................................9

*Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co.,*
  116 Cal. App. 4th 1375 (2004).............................................................9

*BBK Tobacco & Foods LLP v. Central Coast Agriculture Inc.,*
  615 F. Supp. 3d 982 (D. Ariz. 2022)....................................................17

*Boldface Licensing + Branding v. by Lee Tillett, Inc.,*
  940 F. Supp. 2d 1178 (C.D. Cal. 2013)................................................18

*Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.,*
  637 F.3d 1047 (9th Cir. 2011).............................................................13

*F.T.C. v. Publishing Clearing House, Inc.,*
  104 F.3d 1168 (9th Cir. 1997), *as amended* (Apr. 11, 1997)................16

*Gilliam v. Levine,*
  562 F. Supp. 3d 614 (C.D. Cal. 2021).................................................14

*Gold Club-SF, LLC v. Platinum SJ Enterprise,*
  2013 WL 5273070 (N.D. Cal. Sept. 18, 2013).......................................8

*Gray v. Khoo,*
  2022 WL 930760 (E.D. Cal. Mar. 29, 2022),
  *report and recommendation adopted,* 2022 WL 1215291 (E.D.
  Cal. Apr. 25, 2022) .............................................................................5

*Hulsey v. Oil & Gas Management Corp.,*
  2010 WL 11598043 (C.D. Cal. Aug. 23, 2010)..................................9, 12

*Jones v. Blanas,*
  393 F.3d 918 (9th Cir. 2004)................................................................5

*Karrer v. Best Buy Co.,*
  2012 WL 1957586 (C.D. Cal. May 24, 2012)........................................14

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

*Kremin v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003)................................................................. 8

*Lane v. Department of the Interior*,
   523 F.3d 1128 (9th Cir. 2008)................................................................. 2

*Longwell Textiles Ltd. v. Matrix International Textile Inc.*,
   2020 WL 5991615 (C.D. Cal. Sept. 4, 2020)..................................... 4, 5

*Lukovsky v. City & County of San Francisco*,
   535 F.3d 1044 (9th Cir. 2008)............................................................... 11

*Monster, Inc. v. Dolby Laboratories Licensing Corp.*,
   920 F. Supp. 2d 1066 (N.D. Cal. 2013) ................................................. 8

*In re Moon*,
   648 B.R. 73 (B.A.P. 9th Cir. 2023) ....................................................... 9

*Official Airline Guides, Inc. v. Goss*,
   6 F.3d 1385 (9th Cir. 1993) .................................................................. 18

*Perez-Encinas v. AmerUs Life Insurance Co.*,
   468 F. Supp. 2d 1127 (N.D. Cal. 2006) ................................................. 9

*Reeves v. General Nutrition Centers, Inc.*,
   2012 WL 13018362 (C.D. Cal. Apr. 2, 2012) ..................................... 18

*Reichert v. General Insurance Co.*,
   68 Cal.2d 822 (1968) ........................................................................... 14

*Romano v. Rockwell International, Inc.*,
   14 Cal.4th 479 (1996) ........................................................................... 11

*Shaw v. Hahn*,
   56 F.3d 1128 (9th Cir. 1995) .................................................................. 7

*Solofill, LLC v. Rivera*,
   2018 WL 6038287 (C.D. Cal. Aug. 3, 2018) ....................................... 18

*Surfvivor Media, Inc. v. Survivor Productions*,
   406 F.3d 625 (9th Cir. 2005) ................................................................ 18

*TAP Manufacturing, LLC v. Signs*,
   2015 WL 12752874 (C.D. Cal. July 23, 2015) ...................................... 8

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION
FOR SUMMARY JUDGMENT**

*Teen Challenge International USA v. Elleson*,
   2006 WL 3388471 (D. Haw. Nov. 21, 2006) ..................................................... 16

*Vaca v. Wachovia Mortgage Corp.*,
   198 Cal. App. 4th 737 (2011) ........................................................................... 11

*Viacom International v. IJR Capital Investments, L.L.C.*,
   891 F.3d 178 (5th Cir. 2018) ............................................................................ 16

*Warner Bros. v. Gay Toys, Inc.*,
   658 F.2d 76 (2d Cir. 1981) ................................................................................ 16

*Whitehurst v. Kauffmann*,
   2017 WL 761254 (C.D. Cal. Jan. 4, 2017) ......................................................... 2

*Young v. Wideawake Death Row Entertainment LLC*,
   2011 WL 12565250 (C.D. Cal. Apr. 19, 2011) ................................................. 10

**Other Authorities**

Federal Rule of Civil Procedure 56(d) ........................................................ 1, 2, 4, 5

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION
FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff DMCT[1] spends the bulk of its Opposition arguing that the Court should deny (or at least delay consideration of) NBCU's Motion under Rule 56(d) because DMCT did not depose NBCU's witnesses before NBCU filed its Motion. Not only is DMCT's request procedurally defective, but any discovery delay in this action was DMCT's own fault and is also irrelevant because DMCT has not pointed to any missing evidence it needs to oppose NBCU's Motion.  In short, the argument is a red herring intended to distract this Court from the fact that DMCT has failed to create a disputed issue of fact as to any of NBCU's summary judgment arguments.

*First*, DMCT has failed to establish that it has standing under the 1989 Agreement.  DMCT concedes it was never assigned or transferred any contractual rights under the 1989 Agreement, instead relying on two federal court decisions from its prior litigation with the DeLorean Estate to argue that it is a successor.  But the court orders speak for themselves and therefore raise no triable issue of fact—the courts did not determine that DMCT was assigned any rights under the 1989 Agreement.  DMCT's only other evidence on this point is the Declaration of Marvin Katz, in which he claims to have acquired the DeLorean Marks in 1982, before John Z. DeLorean licensed those rights to NBCU.  But even if true, this would not establish that DMCT has any rights under the 1989 Agreement; it would serve only to void the 1989 Agreement for lack of consideration.

*Second*, DMCT has not presented *any* evidence challenging NBCU's accounting as to *a single piece of licensed merchandise* on or after October 26, 2018. Instead, DMCT complains that NBCU failed to account to DMCT for uses between 2021 and 2022, but DMCT filed its Complaint prematurely before the accounting was otherwise due.  DMCT further complains that NBCU failed to "consult" with DMCT about whether certain uses of the DeLorean Marks should have been reported to DMCT, but NBCU had no contractual obligation to do so.  DMCT also has failed

---

[1] Unless indicated otherwise, capitalized terms used herein shall have the same meaning as in NBCU's Motion.

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

to present any evidence of damages that it suffered as a result of any purported breach—an essential element of its breach of contract claim.

*Third*, DMCT's trade dress and trademark infringement claim fails for multiple reasons. To the extent DMCT has rights under the 1989 Agreement, it can only assert a trademark claim for uses of the DeLorean marks beyond the scope of the 1989 Agreement. But the only such use DMCT cites is the *Back to the Future* ride at the Universal Studios theme parks, the last of which had ceased operating by 2016—well outside the Lanham Act's four-year limitations period. Moreover, even if DMCT could assert a Lanham Act claim based on NBCU's *Back to the Future* merchandise, its "evidence" of consumer confusion actually shows that consumers *fully understand* the difference between NBCU and DMCT and were not confused at all about the source of the *Back to the Future* films and related merchandise.

For all of these reasons, this Court should grant NBCU's Motion.

## II.   ARGUMENT

### A.   DMCT Is Not Entitled to Relief Under Rule 56(d).

DMCT weaves a fanciful tale of discovery woe in which it was prevented from deposing NBCU witnesses until a few days before the filing deadline for its Opposition, and on that basis argues that the Court should deny (or at least delay consideration of) NBCU's Motion. This argument fails for at least three reasons.

*First*, DMCT's request is procedurally defective because DMCT has failed to bring a separate motion seeking relief under Rule 56(d) of the Federal Rules of Civil Procedure. *See Lane v. Department of the Interior*, 523 F.3d 1128, 1135 n.4 (9th Cir. 2008) ("References in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56([d])," and raising the request through opposition papers is "insufficient"); *Whitehurst v. Kauffmann*, 2017 WL 761254, at *4 (C.D. Cal. Jan. 4, 2017) (rejecting Rule 56(d) argument posed through opposition papers because a "Rule 56(d) request must be made in a separate motion or formal request"). This alone dooms DMCT's request.

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

*Second*, DMCT's recitation of the parties' discovery efforts in this action is inaccurate in every material respect.  For example, DMCT claims that "NBC knew (but did not disclose to DMC) that it intended to file the present MSJ," (ECF 46 at 5:5-6).  That is demonstrably false.  In fact, NBCU informed DMCT's counsel *multiple times* over the past year, beginning in March 2023, that NBCU planned to file the instant Motion.  *See, e.g.*, ECF 20, Joint Rule 26(f) Report (NBCU states that it intends to file a motion for summary judgment and proposes a detailed, bifurcated schedule); ECF 28, Joint Stipulation to Extend Case Schedule (parties state in their December 11, 2023 joint stipulation that "both Plaintiff and NBCU tentatively plan to file motions for summary judgment"); *see also* Supplemental Declaration of Andrew J. Thomas ("Thomas Supp. Decl."), ¶¶ 30, 32 (NBCU states it plans to file a motion for summary judgment in a "meet and confer" letter dated January 3, 2024, and during the "meet and confer" call with DMCT's counsel on January 5, 2024); ECF 46-1, Behle Decl., Ex. 4 (January 3, 2024 "meet and confer" letter).

DMCT also argues that NBCU intentionally "delayed producing its witnesses for deposition until after the MSJ was filed," (ECF 46 at 5:6-7), when in fact the delays were caused by DMCT's failure to engage with NBCU over documents that were needed for the depositions.  Specifically, in April 2023, the parties agreed that for purposes of streamlining discovery, DMCT would select a sampling of NBCU licensees who sold merchandise featuring the Time Machine Car, and NBCU would produce licensing agreements and financial reporting relating to those licensees.  Thomas Supp. Decl., ¶ 3.  Acting diligently, NBCU provided DMCT with the list of licensees on September 1, 2023.  *Id.*, ¶ 5.  Thereafter, NBCU repeatedly followed up with DMCT and asked that it make the selections from NBCU's list, but DMCT failed to make its selections until November 21, 2023.  *Id.*, ¶¶ 6, 8-9, 11.  As a result of DMCT's delay, the parties agreed to postpone the deposition of Scott McQuown,

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

which at that time was set for December 4, 2023,[2] *id*., ¶ 11, and continued to discuss scheduling deposition dates for both sides' witnesses. *Id*., ¶¶ 11-12, 14-15. Even though the parties were discussing potential deposition dates in good faith, DMCT filed a motion to compel on the last possible date to file discovery motions, without conferring with NBCU. *Id*., ¶ 25; ECF No. 30. DMCT withdrew its motion once deposition dates were confirmed, but misleadingly suggests that its motion "resulted" in the Magistrate Judge issuing a favorable discovery order for DMCT. ECF 46 at 4 n.2. In fact, the order simply granted DMCT's request to withdraw its motion. *See* ECF 32.

On December 27, 2023, the parties confirmed the mutually agreed upon deposition dates for NBCU's three witnesses. Thomas Suppl Decl., ¶ 26. DMCT served amended deposition notices, and all three witnesses appeared as scheduled. *Id*., ¶¶ 37, 39. DMCT never raised any concerns about, let alone formally objected to, the fact that the agreed-upon dates were after the deadline for filing summary judgment motions under the schedule set by this Court. *Id.* ¶ 26. In short, DMCT has no one to blame but itself for the timing of NBCU's witness depositions.

*Third*, DMCT has not identified *any* actual harm or prejudice it has suffered that would justify the Court granting relief under Rule 56(d). *See Longwell Textiles Ltd. v. Matrix Int'l Textile Inc.*, 2020 WL 5991615, at *2 (C.D. Cal. Sept. 4, 2020) (moving party must "identif[y] with the requisite specificity . . . the evidence that it believes will create a genuine issue of material fact"). DMCT has already obtained the specific discovery it claims it needs to oppose NBCU's Motion, *i.e.*, depositions of three NBCU witnesses.[3] DMCT does not identify any testimony from those

---

[2] Even though the parties had mutually agreed to postpone Mr. McQuown's deposition, DMCT took a non-appearance on the record. Thomas Supp. Decl., ¶ 16.

[3] Indeed, the only party prevented from taking a Rule 30(b)(6) witness deposition before a key filing deadline has been NBCU. Specifically, DMCT's own Rule 30(b)(6) witnesses failed to appear for their scheduled depositions on two separate occasions prior to the summary judgment filing deadline, thereby depriving NBCU of the ability to use *any* deposition testimony in support of its Motion. *See* Thomas Supp. Decl., ¶¶ 31, 35 & Exs. 84, 86.

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

depositions that it was unable to present in its Opposition; to the contrary, DMCT cites the transcripts throughout its brief. *See* ECF 46 at 14:28-15:13, 19:15-20. And NBCU does not oppose DMCT's use of those unsigned transcripts in connection with the Opposition.

DMCT also fails to identify any other evidence needed to oppose NBCU's Motion that it was not able to obtain through discovery. Thus, this situation is readily distinguishable from each of the cases relied on by DMCT, where relevant evidence remained to be discovered—particularly the cases involving confined *pro se* plaintiffs. For example, in *Jones v. Blanas*, the court determined that the plaintiff had served pending discovery requests and "acted diligently and reasonably in pursuing discovery," but was unable to complete discovery in accordance with the court's schedule given his limitations as an incarcerated *pro se* plaintiff. *See* 393 F.3d 918, 930 (9th Cir. 2004) (emphasis added). Similarly, in *Gray v. Khoo*, the court granted relief where an incarcerated *pro se* plaintiff "filed the motion for summary judgment prior to the taking of her deposition and prior to the completion of necessary discovery" that the defendant showed it needed to oppose the motion. *See* 2022 WL 930760, at *1 (E.D. Cal. Mar. 29, 2022), *report and rec. adopted,* 2022 WL 1215291 (E.D. Cal. Apr. 25, 2022). Likewise, in *Longwell Textiles*, the court was presented with evidence that a Rule 30(b)(6) witness deposition had been noticed but was not yet taken before the opposition filing deadline. 2020 WL 5991615 at *2. These scenarios are the exact opposite of this case, where discovery *has* been completed. Also, DMCT is a sophisticated party represented by counsel and therefore not subject to the discovery standard applicable to the confined *pro se* plaintiffs in *Jones* and *Gray*.

For all of the above reasons, DMCT's Rule 56(d) request should be denied.

## B. DMCT Cannot Prevail on its Breach of Contract Claim.

DMCT has not come forward with any evidence to establish a disputed factual issue that would preclude summary judgment on its breach of contract claim. The

1  undisputed evidence shows that DMCT has no standing under the 1989 Agreement,
2  and NBCU is not estopped from so arguing.  And even if DMCT has standing, it still
3  has no evidence that NBCU breached the agreement or that DMCT suffered damages
4  within the applicable four-year limitations period.

### 1.  DMCT Has No Standing to Bring Claims Under the 1989 Agreement.

7  DMCT now acknowledges that it was never actually assigned any contractual
8  rights under the 1989 Agreement by John DeLorean or the DeLorean Estate.  ECF
9  46 at 10:20-28.   Instead, DMCT argues, it must be treated as a de facto
10  successor/assignee for three reasons: (i) its prior litigation with the DeLorean Estate;
11  (ii) its supposed trademark ownership; and (iii) estoppel.  None of these arguments
12  is availing.

### a.  DMCT's Prior Litigation with the DeLorean Estate Raises No Triable Issue of Fact.

15  DMCT first relies on a series of court orders from its prior litigation with the
16  DeLorean Estate to argue that it is the successor under the 1989 Agreement.  ECF
17  46 at 8:18-11:25.  Because these are the same court orders attached to NBCU's
18  Motion, there is no disputed issue of fact on this point.  The only dispute is as to the
19  parties' respective interpretations of those orders.

20  On the one hand, NBCU asks this Court to read the plain language of the
21  orders and take them at face value—*i.e.*, when the Third Circuit (and previously the
22  District Court for the District of New Jersey) wrote "we do not have to determine
23  whether the Estate assigned its rights under the Universal Agreement to DMC
24  Texas," that is what they meant.  ECF 40-59 at p. 10.

25  On the other hand, DMCT asks the Court to make a series of inferences,
26  assumptions, and leaps of logic in order to conclude that the courts held that DMCT
27  "owns the rights at issue," and therefore DMCT is the successor to the 1989
28  Agreement.  ECF 46 at 8:17.  For example, DMCT correctly points out that the

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

"court found that the DeLorean Estate's challenge to DMC's receipt of royalties from NBC and DMC's assertion of trademark rights was within the scope of the 2015 Settlement Agreement." ECF 46 at 9:10-13. But then DMCT invites the Court to infer from this that "[l]ogically this means that DMC was entitled to receive royalties" from NBCU under the 1989 Agreement. *Id*. at 9:13-15. That would require an Olympian leap of logic. The District Court **only** determined that the Settlement Agreement barred the DeLorean Estate's claims because the 1989 Agreement fell within the scope of the Settlement Agreement and its covenant not to sue, and the District Court's order was simply affirmed by the Third Circuit. ECF 40-57 at 7. Neither the District Court nor the Third Circuit made any determination regarding which party owned what contractual rights or who was the successor under the 1989 Agreement. *See* ECFs 40-57, 40-59.

Specifically, the orders from the District Court and Third Circuit do not have any issue preclusion or collateral estoppel effect on this matter. For either doctrine to apply, the issue must have been "actually litigated and necessarily decided" in the previous litigation. *Shaw v. Hahn*, 56 F.3d 1128, 1131 (9th Cir. 1995). That is simply not the case here, as neither court determined that DMCT was a party to the 1989 Agreement. Moreover, DMCT concedes that NBCU was not a party to its litigation with the DeLorean Estate. *Id.*, 56 F.3d at 1131 (issue preclusion "cannot be applied against a litigant who was not a party to or in privity with a party to the prior proceeding.").

Accordingly, the decisions by the District Court and Third Circuit raise no triable issue of fact and, in any event, are irrelevant to this action.

#### b. DMCT's Chain of Title Evidence Relating to Its Trademark Ownership Voids the 1989 Agreement.

Next, DMCT argues that it must be treated as the de facto successor to the 1989 Agreement because it acquired rights in the DeLorean Marks through a series of transactions dating back to 1982. ECF 46 at 8:1-16, 13:6-23. But the evidence

that DMCT offers to support this trademark ownership theory—*i.e.*, the declaration of Marvin Katz—if accepted as true would actually void the 1989 Agreement.

Specifically, Mr. Katz asserts that he acquired the goodwill, trade names, and intangible assets from the bankruptcy of the original DeLorean Motor Company in 1982. ECF 46-3, ¶¶ 3-4. From 1982 through 1997, Mr. Katz supposedly transferred those assets among various entities that he owned, and then DMCT supposedly acquired the rights from one of Mr. Katz's entities in 1997. *Id.*, ¶¶ 3-6. If true, that would mean John Z. DeLorean had no trademark rights to the "Material" he licensed to Universal Pictures in the 1989 Agreement, which in turn would make that Agreement—the contract under which DMCT now seeks to get paid based on alleged breaches—void for lack of consideration. *See Kremin v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003) (affirming invalidation of contract for lack of consideration).

In short, if DMCT's argument on this point is accepted, then DMCT has argued itself out of court on its breach of contract claim.

### c. NBCU Is Not Estopped from Challenging DMCT's Standing Under the 1989 Agreement.

Finally, DMCT relies on the doctrine of "licensee estoppel" to argue that NBCU is estopped from challenging DMCT's standing under the 1989 Agreement. ECF 46 at 14-15. Not so. The "licensee estoppel" doctrine "holds that licensees are estopped from challenging the validity of the licensor's trademark based upon conduct that occurred during the life of its license." *Monster, Inc. v. Dolby Labs. Licensing Corp.*, 920 F. Supp. 2d 1066, 1076-77 (N.D. Cal. 2013). As such, the doctrine "depends on the existence of a license" between the parties. *Gold Club-SF, LLC v. Platinum SJ Enters.*, 2013 WL 5273070, at *10 (N.D. Cal. Sept. 18, 2013). For example, the doctrine precludes a licensee from arguing that the "licensor's mark is invalid because the licensor granted a naked license to the licensee." *TAP Mfg., LLC v. Signs*, 2015 WL 12752874, at *3 (C.D. Cal. July 23, 2015). But the doctrine

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

1    has no application here because NBCU is not challenging the validity of DMCT's

2    trademarks; rather, NBCU is contending that it does not have a licensing agreement

3    with DMCT because DMCT is not a party to the 1989 Agreement.

4         To the extent DMCT is arguing that NBCU is equitably estopped from

5    challenging DMCT's standing under the 1989 Agreement, equitable estoppel is also

6    inapplicable here.  Equitable estoppel applies only when a party's conduct misleads

7    another to believe that a right will not be enforced ***and causes him to act to his***

8    ***detriment in reliance*** upon this belief."  *AirWair Int'l Ltd. v. Schultz*, 84 F. Supp. 3d

9    943, 958 (N.D. Cal. 2015) (emphasis added); *In re Moon*, 648 B.R. 73, 89 (B.A.P.

10   9th Cir. 2023) ("If the party asserting the estoppel fails to show that he or she relied

11   on the opposing party's representation or conduct to his or her detriment, equitable

12   estoppel does not apply.").  Because NBCU made six royalty payments to DMCT,

13   (ECFs 47, 47-1–47-5), DMCT has not shown and cannot show that it relied ***to its***

14   ***detriment*** on any statement by NBCU.  Accordingly, estoppel is not applicable here.

15              **2.      DMCT's Statute of Limitations Argument Is Baseless.**

16        DMCT does not dispute that its breach of contract claim is subject to a four-

17   year statute of limitations or that it was on notice of potential breach of contract

18   claims against NBCU in 2017, such that the discovery rule is inapplicable.  Instead,

19   DMCT argues that the statute of limitations does not apply because NBCU issued a

20   "true-up" royalty report in 2017 and continued paying royalties through 2021.  This

21   argument displays a fundamental misunderstanding of how the statute of limitations

22   works in breach of contract cases.

23        Generally, a cause of action for breach of contract accrues at the time of the

24   breach.  *Perez-Encinas v. AmerUs Life Ins. Co.*, 468 F. Supp. 2d 1127, 1134 (N.D.

25   Cal. 2006).  Where, however, the contract includes "a continuing obligation to pay

26   periodically a portion of profits as royalties, each breach accrues when payment is

27   due [and] starts the clock anew for statute of limitations purposes."  *Hulsey v. Oil &*

28   *Gas Mgmt. Corp.*, 2010 WL 11598043, at *2 (C.D. Cal. Aug. 23, 2010); *Armstrong*

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION
FOR SUMMARY JUDGMENT**

*Petroleum Corp. v. Tri-Valley Oil & Gas Co.*, 116 Cal. App. 4th 1375, 1388 (2004) ("[W]here performance of contractual obligations is severed into intervals, as in installment contracts, the courts have found that an action attacking the performance for any particular interval must be brought within the period of limitations after the particular performance was due.").

Here, each accounting statement issued by NBCU triggered its own four-year limitations period running from the date it was issued. Any action for breach based on a specific statement must have been brought within four years of that statement. While two statements issued in 2017 covered the period from 1994 to 2016 as "true up" statements, any claim based on any supposed failure to properly account to DMCT in those statements accrued in June and August 2017 when they were issued. SUF 46-47, 51-52. It is undisputed that DMCT did not file its complaint until October 26, 2022. SUF 102. As such, DMCT is barred from asserting a breach of contract claim based on any accounting statement issued before October 26, 2018. *See Young v. Wideawake Death Row Entm't LLC*, 2011 WL 12565250, at *10 (C.D. Cal. Apr. 19, 2011) (finding that only claims "based on independent breaches that occurred within four years of the time plaintiff commenced this action" were not time barred).

Additionally, to the extent DMCT's breach of contract claim is based on NBCU's alleged failure to account to it for the use of the Time Machine in its theme park rides, those claims unquestionably are time-barred. ECF 46 at 18:22-23. On January 26, 2018, NBCU sent a letter to DMCT informing it that NBCU was not obligated to, nor was it going to, pay DMCT any portion of ticket receipts from theme parks that included a *Back to the Future* ride among numerous other attractions. ECF 40-5. Thus, any claim related to theme parks accrued no later than January 26, 2018 and is now time-barred. And DMCT cannot assert that any new theme park related claims arose *after* January 26, 2018, because DMCT concedes that the last *Back to the Future* theme park ride closed in 2016. ECF 10, ¶ 12.

Contrary to DMCT's argument, NBCU is not estopped from arguing that DMCT's claims are time-barred. To establish estoppel here, the plaintiff "must point to some fraudulent concealment, some active conduct by the defendant *above and beyond* the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008) (emphasis in original); *Vaca v. Wachovia Mortg. Corp.*, 198 Cal. App. 4th 737, 746 (2011) ("For a defendant to be equitably estopped from asserting a statute of limitations, the plaintiff must be directly prevented from filing a suit on time.") (citations omitted).

DMCT cannot point to any evidence that NBCU directly prevented DMCT from filing suit through any fraudulent concealment. Instead, the record shows that, as early as June 2017, DMCT believed NBCU was not properly accounting to it under the 1989 Agreement. ECF 40-2. And by December 2017, DMCT believed the parties were at an "impasse" that it threatened to "escalate." ECF 40-4. DMCT has not pointed to any statements made by NBCU that could have plausibly induced it not to file suit. Furthermore, DMCT could have requested a tolling agreement while NBCU addressed its inquiries, but it never did so.

Finally, DMCT's argument that it could delay the statute of limitations by electing not to treat NBCU's breaches as terminating the contract fails. The case relied on by DMCT, *Romano v. Rockwell Int'l, Inc.*, is inapposite here. In *Romano*, the court determined that the statute of limitations for the plaintiff's breach of contract claim ran from the date the defendant breached an employment contract, not from the date the defendant informed the plaintiff that it would breach the contract at a future date. 14 Cal. 4th 479, 491 (1996). The court held that the plaintiff could continue to accept the defendant's ongoing performance, *i.e.*, his continued employment, instead of treating the anticipatory breach as a breach of contract. The breach of contract alleged by DMCT is entirely different. Again, with contracts for the payment of royalties, each statement triggers its own statute of limitations such

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

that there is no ongoing performance owed with respect to statements after they have been issued. *See Hulsey*, 2010 WL 11598043 at *2. Accordingly, the statute of limitations bars DMCT from asserting breach of contract claims based on accounting statements issued prior to October 26, 2018.

### 3.    DMCT Has No Evidence of Any Breach of Contract by NBCU.

In its Opposition, DMCT identifies two purported breaches of contract, but it fails to set forth any evidence in support of its arguments.

*First*, DMCT claims that NBCU has not accounted to DMCT for uses between the third quarter of 2021 and the third quarter of 2022. ECF 46 at 18:1-16. But DMCT sued NBCU before its accounting statement covering that period was otherwise due to be issued to DMCT in the ordinary course of business. *See* Deposition of Scott McQuown ("McQuown Dep."), ECF 46-1 at Exhibit 8 at 53:24-54:24 (noting that there is "no express reporting cycle" in the 1989 Agreement, that NBCU's statement frequency was "semi-annual to annual," and that a "large component" of NBCU's reporting is done on an annual basis). Accordingly, those later payments cannot be the basis for the breach of contract claim asserted in the Complaint.

*Second*, DMCT complains that NBCU did not confer with it regarding which uses of the DeLorean Marks qualified for payment under the 1989 Agreement, *i.e.*, whether the use of the Time Machine Car was a "key component" of the merchandise or commercial tie-up. ECF 46 at 19:17-20. But there is no contractual term in the 1989 Agreement that requires NBCU to confer with DMCT to determine which uses qualify for payment. And DMCT does not identify a single instance where NBCU determined that the Time Machine Car was *not* a key component on an item of merchandise and thus did not qualify for royalty payments to DMCT, let alone an instance where NBCU's decision was objectively wrong or unreasonable.[4]

---

[4] To the contrary, the only evidence in the record shows that NBCU always "err[s] on the side of caution" in close calls regarding which uses qualify for payment and

DMCT's remaining assertions and questions relating to NBCU's purported underpayment of royalties continue to be speculative at best and therefore are insufficient to survive summary judgment. *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) (plaintiff must provide "non-speculative evidence of specific facts, not sweeping conclusory allegations").

For example, DMCT argues that NBCU's chart of licensing revenue for merchandise and commercial tie-ups "shows that DMC[T] has been significantly underpaid" (ECF 46 at 18:9-10), but DMCT does not identify any revenue it believes was underreported or not reported to DMCT. Similarly, DMCT attaches inadmissible screenshots of products allegedly licensed by NBCU, but it provides no evidence that NBCU in fact licensed the products in the images, received any revenue from such products, or failed to account to DMCT for such revenue. *See* Evidentiary Objections Nos. 17-20. As an example, Exhibits 1 and 2 to Stephen Wynne's declaration show three products—a PlayMobil toy, a Collectible Vehicle, and a crossbody bag—yet these unauthenticated images do not establish that any NBCU licensee sold any of these products on or after October 26, 2018, whether NBCU did license those products, or that NBCU failed to account to DMCT for the products.

Likewise, Exhibit 3 is an Amazon.com listing for a Mattel Hot Wheels car, but the only evidence in the record is that NBCU *does* account to DMCT for products licensed to Mattel. *See* ECFs 47-1, 47-3, 47-4, 47-5; ECF 46-3 at DMC_003698. There is no evidence whatsoever that NBCU failed to account for this product. Finally, the last exhibit attached to Mr. Wynne's declaration is another cut-off Amazon.com listing that appears to be offered by an unauthorized non-licensee. *See* Thomas Supp. Decl., ¶ 42 & Exs. 87-88. In all, these random images fall far short

---

makes the decision that is "more favorable to [DMCT]." Deposition of Rei Minasian ("R. Minasian Dep."), ECF 46-1 at Ex. 6 at 48:19-50:7.

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

of meeting DMCT's burden to produce admissible evidence that NBCU's breached the 1989 Agreement.

DMCT also points to the parties' June 2017 correspondence as additional evidence of breach, but as set forth in NBCU's Motion, NBCU corrected any accounting errors raised in 2017 and, in any event, these claims would be time-barred.  Likewise, any claims relating to products in the 2015 Almanac are time-barred and, in any event, DMCT has not identified any sales or license information in connection with the products in the Almanac.  ECF No. 46-6 DMCT's Statement of Genuine Disputes ("SGD") at SGD 78.

In short, DMCT has no evidence to show that on or after October 26, 2018, NBCU failed to properly account to it under the 1989 Agreement.  For that reason, DMCT's breach of contract claim cannot survive summary judgment.

### 4.    DMCT Fails to Identify Any Evidence of Damages.

DMCT also presents no evidence that it has suffered any actual damages—an essential element of its contract claim.  *Karrer v. Best Buy Co.*, 2012 WL 1957586, at *4 (C.D. Cal. May 24, 2012) ("damages are an essential element of a claim for breach of contract.") (citing *Reichert v. Gen. Ins. Co.,* 68 Cal.2d 822, 830 (1968)). DMCT does not offer *any* concrete information about damages in its brief or supporting declarations.  By itself, DMCT's failure to present evidence of damages is grounds for granting NBCU summary judgment on the breach of contract claim.[5]

### C.    DMCT's Trademark and Trade Dress Infringement Claims Fail.

### 1.    DMCT Concedes That Its Infringement Claim Is Incompatible with Its Breach of Contract Claim.

DMCT concedes that its breach of contract and trademark infringement claims are inconsistent, such that its trademark infringement claim can survive only

---

[5] DMCT concedes that its accounting claim is "predicated on" its breach of contract claim. (ECF 46 at 20:2-3.)  Accordingly. because DMCT's contract claim fails its accounting claim necessarily fails as well.  *See Gilliam v. Levine,* 562 F. Supp. 3d 614, 626 (C.D. Cal. 2021).

to the extent NBCU's use of the DeLorean Marks exceeded the scope of NBCU's license under the 1989 Agreement.  ECF 46 at 20:9-21:10.

Yet DMCT has not pointed to *any* specific use by NBCU during the four-year limitations period that would have exceeded the scope of its license after October 26, 2018.  The *only* use that DMCT points to as potentially exceeding the scope of the 1989 Agreement is NBCU's use of the Time Machine Car in a *Back to the Future* theme park ride, (*id*. at 20:21-21:3), but DMCT does not establish that any DeLorean Marks—such as the names "DeLorean" or "DMC," or the distinctive gull-wing doors of the DMC-12, were used in the theme park ride.  *See id.*  Moreover, any claim related to NBCU's BTTF theme park ride is plainly barred by the four-year limitations period given that (i) the last BTTF theme park ride closed in 2016, (ECF 10, ¶ 12) and (ii) DMCT was on notice of any claim relating to theme park uses beginning in January 2018.  ECF 40-5.

Thus, because DMCT cannot show that NBCU used any of the DeLorean Marks beyond the scope of its license under the 1989 Agreement on or after October 26, 2018, the Court must dismiss DMCT's trademark infringement claim if it determines that DMCT has standing to enforce the 1989 Agreement.

## 2. DMCT Cannot Establish Trademark Infringement.

Alternatively, assuming that the 1989 Agreement is void or DMCT does not have standing to enforce the 1989 Agreement, its trademark infringement claim against NBCU still fails as a matter of law because DMCT has not: (i) challenged NBCU's rights in its Time Machine Car; or (ii) created any disputed issue of fact relating to consumer confusion.

### a. DMCT Does Not Dispute That NBCU Is the Senior User of the Time Machine Car.

As set forth in its Motion, NBCU created the Time Machine Car in 1985 when it released the first BTTF Film and has continuously used the Time Machine Car in commerce since that date.  ECF 38-1 at 20:20-23:2; SGD 1-5, 7.  DMCT does not

dispute that NBCU created and used the Time Machine Car in commerce prior to DMCT's first use in commerce of the DMCT Marks in 1995 and 1996.  SGD 1-6.  Nor does DMCT dispute that NBCU has continuously used the Time Machine Car in commerce since 1985.  As a result, NBCU has common law trademark rights to its Time Machine Car mark under a line of authority that DMCT does not question.  *See*, *e.g.*, *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 187 (5th Cir. 2018); *Warner Bros. v. Gay Toys, Inc.*, 658 F.2d 76, 78 (2d Cir. 1981).

Instead, DMCT argues that NBCU cannot claim to be a senior user of the Time Machine Car because NBCU licensed the DeLorean Marks from DMCT in the 1989 Agreement.  ECF 46 at 22:1-10.  This is a non-sequitur: NBCU made clear in its Motion that this "priority" argument comes into play only if the Court were to determine that the DMCT could not enforce the 1989 Agreement.

### b.   DMCT Has Not Submitted Any Evidence of Consumer Confusion.

DMCT has failed to present any evidence creating a disputed issue of fact as to any of the *Sleekcraft* factors, and it therefore cannot establish a likelihood of consumer confusion.  For example, with respect to the strength of the DMCT Marks, DMCT relies on Stephen Wynne's self-serving, conclusory declaration that "there is no other car like the DeLorean automobile."  This boast is not sufficient to create a genuine issue of fact.  *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997), *as amended* (Apr. 11, 1997) ("A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact."); *Teen Challenge Int'l USA v. Elleson*, 2006 WL 3388471, at *8 (D. Haw. Nov. 21, 2006) (self-serving statements on trademark use insufficient to create an issue of material fact without any supporting evidence).

DMCT also relies on NBCU's list of its licensees in support of this *Sleekcraft* factor, but the list relates to NBCU's use of *its own Time Machine Car*.  ECF No. 46

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

at 23:13-16.  Thus, DMCT has simply confirmed NBCU's common law trademark rights in its Time Machine Car.

DMCT also states, without any documentary support, that NBCU uses and licenses DMCT's trademarks.  However, the record is clear that NBCU licenses uses of its Time Machine Car and that DMCT does not have any trademark registrations in Class 28, which applies to the toys, novelties, and other merchandise and commercial tie-ins that NBCU licenses.  *See* SGD 7, 35; ECFs 40-61–40-68.  DMCT even admits that it and NBCU "sell separate goods" (ECF No. 46 at 23:21), and there is no suggestion, let alone any evidence, that NBCU has ever licensed use of the "DeLorean" or "DMC" names *other than* in connection with *Back to the Future* merchandise or commercial tie-ups.

With respect to actual confusion, DMCT does not present any admissible evidence that would create a triable issue of fact.  DMCT's only evidence is the Declaration of James Espey—which states in a broad and conclusory fashion that DMCT has received "inquiries by members of the public which conflate" DMCT's Marks with the Time Machine Car.  But the declaration is inadmissible hearsay and therefore insufficient to establish actual confusion.   ECF 46-2 at ¶¶ 3-4; *see* Evidentiary Objections No. 1; *BBK Tobacco & Foods LLP v. Cent. Coast Agric. Inc.*, 615 F. Supp. 3d 982, 1020 (D. Ariz. 2022) (CEO's testimony regarding confused customers was "almost certainly inadmissible hearsay, as the out-of-court statements of BBK customers he references are being offered to prove that consumers were, in fact, confused").

DMCT also highlights five emails attached to Mr. Espey's declaration, but these emails do not show consumer confusion; quite the opposite, they show that consumers clearly understand the difference between NBCU's film rights and DMCT's rights in its own automobiles.  For example, in the first email a consumer acknowledges that the "standard Delorean [sic]" and the "Back to the Future model" are distinct items.  ECF 46-2 at Ex. 1.  In the second email, a consumer "assume[s]"

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION FOR SUMMARY JUDGMENT**

1    that DMCT owns the rights to the DeLorean vehicles but not the BTTF films. *Id.* at

2    Ex. 2.  In the third email, a toy and hobby company inquires about creating a toy

3    Time Machine Car and confirms that it "will of course also be contacting Universal

4    Pictures about the film rights." *Id.* at Ex. 3.  In the fourth email, a producer of a

5    mobile game confirms that it "presently ha[s] an agreement with Universal" to use

6    its cars in its mobile games. *Id.* at Ex. 4.  Similarly, in the fifth email, an individual

7    states that "[a]ll assets related to Back to the Future films have been cleared with

8    Universal Studios." *Id.* at Ex. 5.[6]

9         Finally, in support of the *Sleekcraft* factor of intent in selection of the mark,

10   DMCT relies on correspondence from 2017 where DMCT informed NBCU that it

11   supposedly had rights in the DeLorean Marks.  But these communications cannot

12   possibly show that NBCU had an "intent to deceive" the public when NBCU began

13   using the Time Machine Car in its *Back to the Future* films in 1985.  *See Boldface*

14   *Licensing + Branding v. by Lee Tillett, Inc.*, 940 F. Supp. 2d 1178, 1195 (C.D. Cal.

15   2013) ("intent factor generally carries minimal weight" except for where there is an

16   "intent to deceive" the public).

17        DMCT's failure to come forward with admissible evidence on the *Sleekcraft*

18   factors is fatal to its trademark and trade dress claims and constitutes grounds for the

19   Court to grant summary judgment.  *See Solofill, LLC v. Rivera*, 2018 WL 6038287,

20   at *11 (C.D. Cal. Aug. 3, 2018) (summary judgment appropriate where plaintiff

21   submits "no supporting evidence for a majority of the *Sleekcraft* factors");  *Reeves*

22   *v. Gen. Nutrition Centers, Inc.*, 2012 WL 13018362, at *10 (C.D. Cal. Apr. 2, 2012)

23   (granting summary judgment where "there is no material issue with respect to any

24

25   _____
     [6] Even if these emails did show that these customers were confused (which they do

26   not), five customer emails between 2014 and 2022 at most constitutes only "de
     minimus" evidence that is insufficient to establish actual confusion.  *Surfvivor*

27   *Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 633 (9th Cir. 2005) (affirming entry
     of summary judgment where there was "scant evidence of actual confusion in the

28   record"); *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1393 (9th Cir. 1993)
     ("de minimis evidence" was not "persuasive evidence of actual confusion").

of the facts underlying the *Sleekcraft* analysis" and the *Sleekcraft* factors "clearly demonstrate that [plaintiff] cannot establish a likelihood of confusion").

## III.   CONCLUSION

For the foregoing reasons, NBCU respectfully requests the Court grant its Motion for Summary Judgment in its entirety.

Dated:  January 29, 2024                    Jenner & Block LLP


By: _____
     Andrew J. Thomas
     Lauren M. Greene
     Rachael A. Goldman

     Attorneys for Defendant
     NBCUniversal Media, LLC

**REPLY MEMORANDUM IN FURTHER SUPPORT OF NBCUNIVERSAL'S MOTION
FOR SUMMARY JUDGMENT**