**JENNER & BLOCK LLP**
Andrew J. Thomas (SBN 159533)
AJThomas@jenner.com
Todd C. Toral (SBN 197706)
TToral@jenner.com
Lauren M. Greene (SBN 271397)
LGreene@jenner.com
Rachael A. Goldman (SBN 335138)
RGoldman@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone:  +1 213 239 5100
Facsimile:   +1 213 239 5199

Attorneys for Defendant
NBCUNIVERSAL MEDIA, LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELOREAN MOTOR COMPANY, a Texas corporation,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>NBCUNIVERSAL MEDIA, LLC, a Delaware limited liability company, and DOES 1 through 50, inclusive,<br><br>　　　　　　Defendants. | Case No.: 8:22-cv-02189-DOC-DFM<br><br>Hon. David O. Carter<br><br>**DEFENDANT NBCUNIVERSAL MEDIA, LLC'S RESPONSE TO PLAINTIFF DELOREAN MOTOR COMPANY'S STATEMENT OF GENUINE DISPUTES**<br><br>Date:　　　　Feb. 12, 2024<br>Time:　　　　8:30 am<br>Courtroom: 10A |

## NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES

Defendant NBCUniversal Media, LLC ("NBCU") submits the following Response to Plaintiff DeLorean Motor Company's ("DMCT") Statement of Genuine Disputes of Material Facts:

| SUF #/ Undisputed Fact | Plaintiff's Response |
| --- | --- |
| **NBCU's *Back to the Future* Film Franchise and the 1989 Agreement** | |
| #1. NBCU released the film *Back to the Future* in 1985. Monteiro Decl. ¶ 5; Ex. 70 (DMCT Response to Office Action) at p. 4; Ex. 73 (BTTF DVDs) | Not disputed. |
| #2. *Back to the Future* was the highest grossing film of 1985, earning approximately $384.6 million at the box office. Ex. 70 (DMCT Response to Office Action) at p. 4; FAC ¶ 9; Thomas Decl. ¶ 3; Ex. 38. | Not disputed. |
| #3. NBCU released two sequels to the 1985 film: *Back to the Future II* in 1989 and *Back to the Future III* 1990, which earned approximately $332.5 million and $245.1 million in box office revenue, respectively. Monteiro Decl. ¶ 5; Ex. 73 (BTTF DVDs); Thomas Decl. ¶ 3; Ex. 38. | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #4. All three *Back to the Future* ("BTTF") films feature a heavily modified DeLorean car as a time machine (the "Time Machine Car"), which is used by a high school student, Marty McFly, and an eccentric scientist, Dr. Emmett "Doc" Brown, to travel to different time periods in a fictional town. Thomas Decl. ¶¶ 2, 4; Ex. 70 (DMCT Response to Office Action) at p. 5; Ex. 73 (BTTF DVDs) | Not disputed except for the fact that "heavily modified" is a subjective characterization of the time machine in the films. The car in the films is unquestionably a DeLorean, with some modifications made by the character Dr. Emmett "Doc" Brown. Labeling the car a "Time Machine Car" does not change the fact that it *is a DeLorean* (as is identified as such by name in the films). |
| #5. The Time Machine Car includes many modifications that are not found in an actual DeLorean DMC-12 car, including external thrusters, lights, a "flux capacitor" that enables time travel, which is powered by a nuclear reactor that runs on plutonium, and a license plate that reads "OUTATIME." Thomas Decl. ¶¶ 2, 4; Ex. 70 (DMCT Response to Office Action) at Ex. C; Ex. 73 (BTTF DVDs) | Not disputed. |
| #6. Following the release of the BTTF films, NBCU created, among other things, an animated television series and novelizations and also continuously distributed the BTTF Films through home video and other media (including VHS, DVD, Blu-ray, premium cable, and streaming platforms). Monteiro Decl. ¶¶ 6-7 | Disputed, as all that NBC provides for this assertion are self-serving statements from its own witness that have no documentary support. |

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #6. NBCU's Response:<br><br>DMCT's response to SUF 6 does not create any factual dispute, as DMCT cites no evidence that contradicts the declaration of Christina Monteiro on which NBCU relies.  Christina Monteiro bases her statements on personal knowledge and her review of NBCU's internal business records and communications with which she is familiar. | |
| #7. Since the release of the first film in 1985, NBCU has continuously used the Time Machine Car in advertising and offering for sale merchandise, including apparel, art, books, games, media, novelties, collectibles, prop replicas, and toys.<br>Monteiro Decl. ¶ 7; Ex. 14 (Licensee List); Ex. 21 (BTTF Almanac); Exs. 8-13 (accounting statements) | Not disputed. |
| #8.  Since NBCU released the BTTF Films, NBCU has continuously monitored the market for infringing uses of its BTTF Film franchise and all elements incorporated therein.<br>Monteiro Decl. ¶ 8 | Disputed, as all that NBC provides for this assertion are self-serving statements from its own witness that have no documentary support. NBC discloses no information regarding how it "monitor[s] the market for infringing uses," including the procedures, technology, or parties involved. |
| #8. NBCU's Response:<br><br>DMCT's response to SUF 8 does not create any factual dispute, as DMCT cites no evidence that contradicts the declaration of Christina Monteiro on which NBCU relies.  Christina Monteiro bases her statements on personal knowledge and her review of NBCU's internal business records and communications with which she is familiar. | |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #9. When a potentially infringing use of the franchise comes to its attention, NBCU issues cease and desist notices or otherwise enforces its rights in the franchise and its elements. Monteiro Decl. ¶ 8 | Disputed, as all that NBC provides for this assertion are self-serving statements from its own witness that have no documentary support. NBC discloses no information regarding how it "monitor[s] the market for infringing uses," "issues cease and desist notices," or "enforces its rights." NBC fails to provide evidence of the including the procedures, technology, or parties involved when infringing activity supposedly "comes to its attention." |

#9. NBCU's Response:

DMCT's response to SUF 9 does not create any factual dispute, as DMCT cites no evidence that contradicts the declaration of Christina Monteiro on which NBCU relies. Christina Monteiro bases her statements on personal knowledge and her review of NBCU's internal business records and communications with which she is familiar.

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #10. In March 1989, John Z. DeLorean, on the one hand, and Amblin Entertainment, Inc. and Universal Pictures, a division of Universal City Studios, Inc. ("Universal"), on the other hand, entered into an agreement pursuant to which Mr. DeLorean granted Universal certain rights in and to the name and appearance of the DeLorean automobile (the "DeLorean Marks") for use in "merchandising and commercial tie-ups" in connection with the BTTF Films (the "1989 Agreement"). McQuown Decl. ¶ 5; Ex. 1 (1989 Agreement); ECF No. 10-1 | Undisputed that in March 1989, John Z. DeLorean, on the one hand, and Amblin Entertainment, Inc. and Universal Pictures, a division of Universal City Studios, Inc. ("Universal"), on the other hand, entered into an agreement pursuant to which Mr. DeLorean granted Universal certain rights in and to the name and appearance of the DeLorean automobile (the "DeLorean Marks"). Disputed as to NBC's reduction of the terms of the agreement. "[M]erchandising and commercial tie-ups" includes but is not limited to "the right to manufacture and sell or otherwise dispose of any articles of merchandising (such as toys, games, gadgets, novelties, books, apparel, foods and beverages or services using or based upon the Material," as defined in the agreement. ECF 40-1 at 2. In exchange for the rights granted to Universal, Universal agreed to pay Mr. DeLorean 5% of its net receipts from the sale of such merchandise and commercial tie-ups (comprising both goods and services). *Id.* |

| #10. NBCU's Response: |
|---|
| DMCT's response to SUF 10 does not create any factual dispute, as there is no dispute as to the terms of the 1989 Agreement.  Ex. 1, ECF 40-1. |

Case No. 8:22-cv-02189-DOC-DFM

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #11. In the 1989 Agreement, Mr. DeLorean represented and warranted that he was "the sole owner of the rights in the Material granted or agreed to be granted to [Universal and Amblin]" and that he had "the unrestricted right and power to grant the rights in the Material herein specified." Ex. 1 (1989 Agreement) at § 4; ECF No. 10-1 | Not disputed. |
| #12. In the 1989 Agreement, Universal agreed to pay Mr. DeLorean five percent (5%) of its net receipts from the sale of merchandise and commercial tie-ups in connection with the BTTF Films. (Ex. 1 (1989 Agreement) at § 3; ECF No. 10-1) | Undisputed that Universal agreed to pay Mr. DeLorean 5% of its net receipts from the sale of merchandise and commercial tie-ups in connection with the BTTF Films. However, NBC omits that merchandise and commercial tie-ups comprise both goods and services. ECF 40-1 at 2. |
| #12. NBCU's Response:  DMCT's response to SUF 12 does not create any factual dispute, as there is no dispute as to the terms of the 1989 Agreement. Ex. 1, ECF 40-1. | |
| #13. Under the 1989 Agreement, Universal owed revenue only for instances in which the DeLorean was a "key component" of the item – *i.e.*, "one or more elements of [the DeLorean automobile, the name 'DeLorean,' or the DMC logo] is primary or central to an item of merchandising or to a commercial tie-up." Ex. 1 (1989 Agreement) at § 3; ECF No. 10-1 | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #14. The 1989 Agreement also stated that "[a]s [John Z. DeLorean] is aware, [Universal and Amblin] used, is using and will use suitably modified DeLorean automobiles as a 'prop' (i.e., as a "time machine" belonging to the character 'Doc Brown') in the Pictures and in advertising and other forms of exploitation relating thereto. [John Z. DeLorean] acknowledges that [Universal and Amblin] did not and do[] not need [John Z. DeLorean's] consent to such uses of DeLorean automobiles." Ex. 1 (1989 Agreement) at "Preliminary Statements"; ECF No. 10-1 | Not disputed. |
| #15. After the parties executed the 1989 Agreement, NBCU began accounting to Mr. DeLorean. McQuown Decl. ¶ 6 | Disputed, as all that NBC provides for this assertion are self-serving statements from its own witness that have no documentary support. |
| #15. NBCU's Response: DMCT's response to SUF 15 does not create any factual dispute, as DMCT cites no evidence that contradicts the declaration of Scott McQuown on which NBCU relies. Scott McQuown bases his statements on personal knowledge and his review of NBCU's internal business records and communications with which he is familiar. | |
| **Original DeLorean Motor Company and DeLorean Motor Company (Texas)** | |
| #16. Original DMC declared bankruptcy in 1982. Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 4 | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #17. A company called Consolidated International acquired Original DMC's "remaining US inventory of cars, the entire parts inventory and [] engineering drawings and records" from the bankruptcy estate.<br>Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 5; Ex. 47 (Bill of Sale); Ex. 48 (Bankruptcy Application) | Not disputed. |
| #18. The sales agreement between Consolidated International and Old DMC did not include a transfer of trademark registrations or trademark rights.<br>Ex. 47 (Bill of Sale) | Disputed. Consolidated International acquired goodwill, trade names, and distribution rights, all of which necessarily include the acquisition of trademarks. Declaration of Marvin Katz ("Katz Dec.") ¶¶ 3–4. |

#18. NBCU's Response:

DMCT's response to SUF 18 does not create any factual dispute, as DMCT relies on a conclusory declaration that contradicts the documentary evidence of the sale that DMCT produced (Ex. 47); documentary evidence itself is superior and the best evidence of the contents of the document.  *See* Evidentiary Objections No. 7.  Additionally, the paragraphs of the Katz Declaration on which DMCT relies (¶¶ 3-4) do not create a factual dispute because they do not address the prior transaction between Original DMC and Consolidated International; instead, they address a later transaction between Consolidated International and Kapac Company.

| | |
|---|---|
| #19. According to DMCT, Marvin Katz, through his company Kapac Company, acquired the entire inventory from Consolidated International.<br>Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 5 | Not disputed that Kapac Company acquired the entire DeLorean inventory from Consolidated International. However, Kapac Company also acquired the goodwill, trade names, intangible assets, distribution rights, parts, tools, stock, molds, drawings and equipment of Old DMC. Katz Dec. ¶¶ 3–4. |

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #19. NBCU's Response:<br><br>DMCT's response to SUF 19 does not create any factual dispute, as DMCT cannot dispute that Consolidated International never acquired trademark rights from the bankruptcy of Original DMC, so it could not have later sold them to Kapac Company. *See* Ex. 47 (Bill of Sale), ECF 47-11. Additionally, with respect to the transaction between Kapac Company and Consolidated International, documentary evidence would be the best evidence of what inventory was transferred, but DMCT has never provided such evidence, and Marvin Katz does not attach any such documents to his declaration, which is conclusory on this point. *See* Evidentiary Objections No. 7. | |
| #20. According to DMCT Marvin Katz then transferred the inventory to Ayn, Inc., another company he owned.<br>Ex. 53 (Certification of Stephen Wynne) at ¶ 5 | Not disputed. |
| #21. The inventory offered for sale by Ayn, Inc. included "the total parts inventory, two White parts carousels, pallet racking, a Crown electric fork lift with charger, electronic scale, crating equipment including saws, air compressor, nail guns and packaging materials on hand, engineering drawings for the parts, engineering manuals, advertising literature and memorabilia[,]" as well as "molds and fixtures for the body shells" and "information as to the exact location of the left fender and other parts, steel sampling dies."<br>Ex. 39 (Ayn Flyer) | Not disputed that this was the *inventory* offered for sale by AYN Inc. However, AYN Inc. sold many other assets once owned by Old DMC. Katz Dec. ¶¶ 3–6. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #21. NBCU's Response:<br><br>DMCT's response to SUF 21 does not create any factual dispute, as any other assets once owned by Original DMC and sold by Ayn, Inc. are immaterial to SUF 21 and do not contradict the documentary evidence of the inventory offered for sale by Ayn or of the assets initially acquired by Consolidated International. *See* Ex. 39 (Ayn Flyer), ECF 40-40. | |
| #22. The list of assets offered for sale by Ayn, Inc. did not include any trademark registrations or trademark rights.<br>Ex. 39 (Ayn Flyer) | Not disputed. |
| #23. In or around April 1997, Ayn, Inc. sold to Dr. James R. Smith specified assets and "[Ayn's] entire Delorean auto parts business."<br>Ex. 49 (Contract of Sale) at § 1 | Not disputed that AYN Inc. sold the entire DeLorean auto parts business. Disputed as to what is omitted, as AYN Inc. sold all of its DeLorean-related assets to James Smith, including inventory, goodwill, trade names, intangible assets, distribution rights, parts, tools, stock, molds, drawings and equipment of Old DMC. Katz Dec. ¶¶ 3–6. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #23. NBCU's Response:<br><br>DMCT's response to SUF 23 does not create any factual dispute, as the declaration on which DMCT relies provides only conclusory allegations and does not dispute that the original transaction between Consolidated International and Original DMC – *i.e.*, the original transfer of assets that were ultimately sold to Ayn, Inc. – did not include trademark registrations or trademark rights, nor does it dispute that the Contract of Sale between Ayn, Inc. and James R. Smith also does not include trademark registrations or trademark rights.  *See* Ex. 47 (Bill of Sale), ECF 47-11; Ex. 49 (Contract of Sale), ECF 47-12.  Documentary evidence itself is superior and the best evidence of the contents of the document. *See* Evidentiary Objections Nos. 7-8.  Exhibit 47 is the Bill of Sale between the Original DMC, on one hand, and Consolidated International, Inc. and Group Investors Corporation, on the other hand, and the attached "Exhibit A" includes the specific assets sold, which indisputably do not include trademark registrations or trademark rights.<br><br>Furthermore, Exhibit 49 is the Contract of Sale between Ayn, Inc. and James Smith, which also does not include trademark registrations or trademark rights.  To the extent that additional documents exist with respect to the transaction between Kapac Company and Consolidated International, documentary evidence would be the best evidence of what inventory was transferred, but DMCT has never provided such evidence, and Marvin Katz does not attach any documents to his declaration. | |
| #24. The specified assets as set forth in the attached Property Schedule were: "Delorean Parts Inventory[;] White Parts Carousel[;] Crown Electric Forklift[;] Dewalt Radial Power Saw[;] 10" Table Saw[;] Infra Red Heaters[;] Conveyors[;] Packaging Supplies[;] Packing Equip.[;] Engineering Manuals[;] Pallet Racking[;] Computer, Monitor, Printer[;] Body Molds-Fiberglas[; and] Drilling Jigs[.]" Ex. 49 (Contract of Sale) at DMC_004510 | Not disputed that AYN Inc. sold some of these specific assets. Disputed as to what is omitted, as AYN Inc. sold all of its DeLorean-related assets to James Smith, including inventory, goodwill, trade names, intangible assets, distribution rights, parts, tools, stock, molds, drawings and equipment of Old DMC. Katz Dec. ¶¶ 3–6. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #24. NBCU's Response:<br><br>DMCT's response to SUF 24 does not create any factual dispute, as the declaration on which Plaintiff relies provides only conclusory allegations and does not dispute that the original transaction between Consolidated International and Original DMC – *i.e.*, the original transfer of assets that were ultimately sold to Ayn, Inc. – did not include trademark registrations or trademark rights, nor does it dispute that the Contract of Sale between Ayn, Inc. and James R. Smith also does not include trademark registrations or trademark rights, as Ayn had no such rights to transfer.  *See* Ex. 47 (Bill of Sale), ECF 47-11; Ex. 49 (Contract of Sale), ECF 47-12.  Documentary evidence itself is superior and the best evidence of the contents of the document.  *See* Evidentiary Objections Nos. 7-8.  Exhibit 47 is the Bill of Sale between the Original DMC, on one hand, and Consolidated International, Inc. and Group Investors Corporation, on the other hand, and the attached "Exhibit A" includes the specific assets sold, which indisputably do not include trademark registrations or trademark rights.<br><br>Furthermore, Exhibit 49 is the Contract of Sale between Ayn, Inc. and James Smith, which also does not include trademark registrations or trademark rights because Ayn, Inc. did not have such rights to transfer.  To the extent that additional documents exist with respect to the transaction between Kapac Company and Consolidated International, documentary evidence would be the best evidence of what inventory was transferred, but DMCT has never provided such evidence, and Marvin Katz does not attach any documents to his declaration. | |
| #25. The list of assets offered for sale by Ayn, Inc. did not include any trademark registrations or trademark rights.<br>Ex. 49 (Contract of Sale) at DMC_004510 | Not disputed that the "Property Schedule" in the Contract of Sale does not specifically list trademark registrations or trademark rights. ECF 43-13 at 14. However, AYN Inc. was selling its "entire Delorean auto parts business," which included inventory, goodwill, trade names, intangible assets, distribution rights, parts, tools, stock, molds, drawings and equipment of Old DMC. Katz Dec. ¶¶ 3–6. |

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #25. NBCU's Response:<br><br>DMCT's response to SUF 25 does not create any factual dispute, as the declaration on which DMCT relies provides only conclusory allegations and does not dispute that the original transaction between Consolidated International and Original DMC – *i.e.*, the original transfer of assets that were ultimately sold to Ayn, Inc. – did not include trademark registrations or trademark rights, nor does it dispute that the Contract of Sale between Ayn, Inc. and James R. Smith also does not include trademark registrations or trademark rights, as Ayn had no such rights to transfer.  *See* Ex. 47 (Bill of Sale), ECF 47-11; Ex. 49 (Contract of Sale), ECF 47-12.  Mr. Katz's statement in his Declaration statement about the "entire DeLorean auto parts business" is conclusory and does not provide any facts regarding whether the "business" was a going concern, the extent of its business activities or advertising, or the extent of its use of any "DeLorean" trademarks.<br><br>Documentary evidence itself is superior and the best evidence of the contents of the document.  *See* Evidentiary Objections No. 7-8.  Exhibit 47 is the Bill of Sale between the Original DMC, on one hand, and Consolidated International, Inc. and Group Investors Corporation, on the other hand, and the attached "Exhibit A" includes the specific assets sold, which indisputably does not include trademark registrations or trademark rights.<br><br>Furthermore, Exhibit 49 is the Contract of Sale between Ayn, Inc. and James Smith, which also does not include trademark registrations or trademark rights because Ayn, Inc. did not have such rights to transfer.  To the extent that additional documents exist with respect to the transaction between Kapac Company and Consolidated International, documentary evidence would be the best evidence of what inventory was transferred, but DMCT has never provided such evidence, and Marvin Katz does not attach any documents to his declaration. | |
| #26. Following the bankruptcy of Original DMC, Stephen Wynne began servicing and restoring DeLorean automobiles. Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 7 | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #27. Stephen Wynne did not have a connection to John Z. DeLorean or Original DMC.<br>Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 7 | Not disputed. |
| #28. In 1985, Mr. Wynne partnered with a DeLorean automobile owner and created a Southern California company called DeLorean One.<br>Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 7 | Not disputed. |
| #29. Around 1995, after the dissolution of the DeLorean One partnership, Mr. Wynne formed the current Plaintiff entity (DeLorean Motor Company Texas or "DMCT") in Houston and continued to engage in servicing and restoring DeLorean automobiles.<br>Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 8 | Not disputed that Mr. Wynne formed a new entity in Houston, Texas, after the dissolution of the DeLorean One business. However, the company that Mr. Wynne went on to form is the DeLorean Motor Company, a corporation based in Texas—the name of this corporation is not "DeLorean Motor Company Texas." ECF 40-46 at 4. Additionally, at the outset DMC's business included sales of used DeLorean automobiles, sales of DeLorean parts and accessories, and servicing and restoration of DeLorean automobiles.<br>Declaration of Stephen Wynne ("Wynne Dec.") ¶ 6. |
| #29. NBCU's Response:<br><br>DMCT's response to SUF 29 does not create any factual dispute, as the specific name of DeLorean Motor Company and a description of its business at the outset are immaterial in this context of trademark ownership and succession under the 1989 Agreement. | |

Case No. 8:22-cv-02189-DOC-DFM

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #30. Mr. Wynne has served as DMCT's Chief Executive Officer since the company's inception in 1995. <br> Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 8 | Not disputed. |
| #31. In 1997, DMCT purchased from either Kapac or Ayn, Inc. various assets of Original DMC, including "parts, tools, stock, molds, drawings, and equipment." <br> Ex. 53 (Certification of Stephen Wynne) at ¶ 6; Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 9 | Not disputed that DMC purchased those assets in 1997. However, DMC also purchased from AYN Inc. the inventory, goodwill, trade names, intangible assets, distribution rights of Old DMC. Katz Dec. ¶¶ 3–6; ECF 40-54 at 4. |

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #31. NBCU's Response:<br><br>DMCT's response to SUF 31 does not create any factual dispute, as the declaration on which Plaintiff relies provides only conclusory allegations and does not dispute that the original transaction between Consolidated International and Original DMC – *i.e.*, the original transfer of assets that were ultimately sold to Ayn, Inc. – did not include trademark registrations or trademark rights, nor does it dispute that the Contract of Sale between Ayn, Inc. and James R. Smith also does not include trademark registrations or trademark rights, as Ayn had no such rights to transfer.  *See* Ex. 47 (Bill of Sale), ECF 47-11; Ex. 49 (Contract of Sale), ECF 47-12.  Documentary evidence itself is superior and the best evidence of the contents of the document.  *See* Evidentiary Objections Nos. 7-8.  .Exhibit 47 is the Bill of Sale between the Original DMC, on one hand, and Consolidated International, Inc. and Group Investors Corporation, on the other hand, and the attached "Exhibit A" includes the specific assets sold, which indisputably do not include trademark registrations or trademark rights.<br><br>Furthermore, Exhibit 49 is the Contract of Sale between Ayn, Inc. and James Smith, which also does not include trademark registrations or trademark rights because Ayn, Inc. did not have such rights to transfer.  To the extent that additional documents exist with respect to the transaction between Kapac Company and Consolidated International, documentary evidence would be the best evidence of what inventory was transferred, but DMCT has never provided such evidence, and Marvin Katz does not attach any documents to his declaration. | |
| #32. DMCT continued to operate as a restoration, service, and parts supplier. Ex. 45 (Witness Statement of Stephen Wynne (UK)) at ¶ 12 | Not disputed that DMC continues these parts of its business. However, DMC sold new-build DeLorean automobiles. Wynne Dec. ¶ 8. |
| #32. NBCU's Response:<br><br>DMCT's response to SUF 32 does not create any factual dispute, as the fact that DMCT sold new-build DeLorean automobiles is immaterial in this context of trademark ownership and succession under the 1989 Agreement. | |

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #33. In 2004, DMCT and John Z. DeLorean entered into an agreement pertaining to copyrights in the Original DMC owners' manuals. Ex. 46 (2004 Agreement) at DMC_003401 | Not disputed. |
| #34. In the 2004 copyright agreement, DMCT agreed that "in August 1987, John Z. DeLorean acquired all rights to the DeLorean Motor Company intellectual property, names, corporate identification, copyrights, etc." Ex. 46 (2004 Agreement) at DMC_003401 | Disputed, as this was a warranty by Mr. DeLorean to DMC that he personally held all of the identified rights (note that trademarks is not listed). This warranty was given to make clear that Mr. DeLorean had the right to grant to DMC "the non-exclusive right to produce and modify the DeLorean Motor Company service publications and to distribute them." Wynne Dec. ¶ 10. The representation by Mr. DeLorean was a formality for purposes of the agreement. *Id.* |

#34. NBCU's Response:

DMCT's response to SUF 34 does not create any factual dispute, as DMCT relies on a conclusory declaration that contradicts the documentary evidence of the agreement (Ex. 46, ECF 40-47) on which NBCU relies; documentary evidence itself is superior and the best evidence of the contents of the document. *See* Evidentiary Objections No. 10. Additionally, the agreement itself states that "John Z. DeLorean acquired all rights to the DeLorean Motor Company intellectual property, names, corporate identification, copyrights, etc." The reference to "intellectual property, names, [and] corporate identification" can only logically refer to the "DeLorean" and "DMC" names.

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #35. Beginning in 2009, DMCT registered various trademarks with the United States Patent and Trademark Office, including various stylized versions of the words "DeLorean," "DMC," and "DeLorean Motor Company." Exs. 60-68 (Trademark Registrations for Reg Nos. 3,715,283; 3,914,710; 4,304,360; 4,895,663; 4,935,970; 5,371,356; 5,376,560; 5,382,005; 6,904,834) | Not disputed. |
| #36. Registration Nos. 3,715,283, 4,304,360, 4,895,663, and 4,935,970, issued in 2009, 2013, and 2016 for the DeLorean stylized and DMC stylized marks, listed a first use in commerce date in the year 1995. Exs. 60, 62, 63, 64 (Trademark Registrations for Reg Nos. 3,715,283, 4,304,360, 4,895,663, and 4,935,970) | Not disputed. |
| #37. Registration No. 3,9147,10, issued in 2011 for the DeLorean stylized mark, listed a first use in commerce date in the year 2009. Ex. 61 (Trademark Registration for Reg No. 3,914,710) | Not disputed. |
| #38. Registration Nos. 5,371,356, 5,376,560, and 5,382,005, issued in 2018 for the DeLorean Motor Company, DMC stylized, and DeLorean stylized marks, listed a first use in commerce date in the year 2012. Exs. 65-67 (Trademark Registrations for Reg Nos. 5,371,356, 5,376,560, and 5,382,005) | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #39. In September 2021, DMCT applied for a "DeLorean Car Design" Mark. Ex. 68 (Trademark Registrations for 6,904,834) | Not disputed. |
| #40. On January 25, 2022, the United States Patent and Trademark Office issued a non-final Office Action denying the application on the basis that the design was not sufficiently distinctive. Ex. 69 (January 25, 2022 Office Action) at p. 2 | Not disputed. |
| #41. DMCT filed a response in July 2022, arguing that the proposed trademark had acquired distinctiveness, citing evidence of BTTF's enduring popularity and "iconic" status and NBCU's widespread merchandising of the Time Machine Car. Ex. 70 (DMCT July 25, 2022 Response to Office Action) at p. 5 | Not disputed. |
| **NBCU's Royalty Payments to DMCT under the 1989 Agreement** | |
| #42. In January 2017, DMCT first reached out to NBCU to inquire about royalties under the 1989 Agreement. Ex. 40 (1/31/17 Email from M. Dresner) at DMC_000131 | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #43. In mid-February 2017, DMCT provided NBCU with, among other documents, a copy of a 2015 Settlement Agreement between DMCT and the Estate of John DeLorean and noted that "a summary of the court decision with the JZD estate establishes the fact that all rights of all trademark and merchandising images and likeness and logos pass from the John Z. DeLorean estate to the DeLorean Motor Company." Ex. 41 (2/16/17 Email from R. Dartt) at DMC_001103 | Not disputed. |
| #44. Relying on DMCT's representations, but subject to a reservation of rights, NBCU agreed to treat DMCT as the successor to the 1989 Agreement and sent DMCT its first accounting statement and payment in June 2017. Ex. 16 (3/18/20 Letter from A. Thomas) at DMC_003243; Ex. 15 (2/12/20 Email from A. Thomas) at DMC_003342; Ex. 42 (3/2/17 Email from R. Dartt); Ex. 8 (4/94 to 12/16 NBCU Accounting Statement) | Disputed, as there was no "reservation of rights" referenced in any the documents cited by NBC. Accordingly, NBC did not condition any of its royalty payments to DMC on a "reservation of rights." This is a fabrication added by NBC's lawyers. |
| #44. NBCU's Response:  DMCT's response to SUF 44 does not create any factual dispute, as various exhibits in the record include an express or implied reservation of rights. *See*, *e.g.*, Ex. 5, ECF 40-5 ("This letter is not intended as a complete recitation of all of Universal's rights, remedies, or defenses with regard to this matter, all of which are expressly reserved."); Ex. 7, ECF 40-7 (same); Ex. 16, ECF 47-7 (noting that NBCU would "resume making net receipts payments (to the extent due)"). | |

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #45. At various points, NBCU requested Plaintiff substantiate its contention that it had been assigned rights under the 1989 Agreement, but Plaintiff did not do so.<br>Ex. 5 (1/26/18 Letter from A. Hagen); Ex. 44 (2/12/20 A. Thomas Email to C. Lambright) at 003756-57 | Disputed. DMC did substantiate its trademark and intellectual property rights, as well as its rights as successor to Mr. DeLorean under the 1989 Agreement. *See* ECF 40-42 (February 16, 2017, email from DMC to NBC, forwarding, among other documents, the current status of DMC's trademarks and a copy of the settlement agreement with the DeLorean Estate); ECF 40-15 at 6–17 (January 28, 2020, letter from DMC to NBC, forwarded Third Circuit opinion affirming DMC's intellectual property rights). |

#45. NBCU's Response:

DMCT's response to SUF 45 does not create any factual dispute, as DMCT cites only to documents from the litigation between DMCT and the DeLorean Estate, to which NBCU has also cited, and which contain no document evidencing that DMCT is an assignee to the 1989 Agreement.  Finally, the documents from the litigation between DMCT and the DeLorean Estate are the best evidence of their contents, and there is no dispute as to what information they do or do not include.

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #46. In June 2017, NBCU sent DMCT an accounting statement that covered the period April 1, 1994 to December 31, 2016, in the amount of approximately $144,249.<br>Ex. 8 (4/94 to 12/16 NBCU Accounting Statement); Ex. 9 (4/94 to 12/16 NBCU Accounting Statement v.2) | Disputed as to the alleged accuracy and completeness of the accounting statement. DMC has on multiple occasions questioned the accuracy of the June 2017 statement and payment. DMC further informed NBC shortly after receiving the June 2017 statement that it was incomplete and did not account for all relevant revenue NBC collected and all royalties owed to DMC under the 1989 Agreement. ECF 40-2. DMC identified 20 licensees that NBC failed to report in the June 2017 statement. *Id.* Of the 20 unreported licensees, NBC only conceded and subsequently reported/paid royalties to DMC from 10 of those licensees. *See* ECF 43-2. |
| #46. NBCU's Response:<br><br>DMCT's response to SUF 46 does not create any factual dispute.  DMCT does not dispute that, in June 2017, NBCU sent an accounting statement to DMCT in the amount of approximately $144,249.  Ex. 8, ECF 47.  Furthermore, DMCT has not identified any evidence that the June 2017 accounting statement, as supplemented, is incorrect, and therefore DMCT's dispute is based only on speculation.  Additionally, it is undisputed that NBCU only reported to DMCT for 10 licensees from the list sent by DMCT because those were the only entities for which NBCU determined it licensed any rights under the 1989 Agreement. *See* Sohn Decl., ECF 38-5 at ¶ 8. | |
| #47. NBCU issued DMCT a check in the amount of $144,249, which DMCT deposited.<br>Sohn Decl. ¶ 6 | Not disputed. However, by depositing the check, DMC did not agree that the check was accurate, nor was this an accord and satisfaction. |

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #48. On June 16, 2017, DMCT sent NBCU a list of approximately 20 purported additional licensees and alleged that NBCU failed to report royalties to DMCT from revenue it received from these entities. Ex. 2 (6/16/17 Email from R. Dartt) | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| | |
|---|---|
| #49. In its June 16, 2017 correspondence, DMCT did not identify any information about these entities, including whether they were actually licensees of NBCU, what the alleged infringing items looked like, or when and where the items were sold.<br>Ex. 2 (6/16/17 Email from R. Dartt) | Disputed. This was part of DMC's request for additional information from NBC regarding revenue NBC received from the exploitation of DMC's trademarks.<br><br>As to these, entities, DMC explained: "[T]here are some additional companies whom we know actively solicit product. We presume that they are licensed by NBC Universal, with product design using our Trademark, that has not yet been included on the list that you sent. . . [¶¶] There are also some data points that we hope to further analyze. Lego, for example, has been a Back To The Future partner over the course of decades, producing not only traditional construction sets featuring the Trademark, but also videogames using the Trademark. The cumulative gross receipts from Lego, on the document sent to us, total $871,737. Assuming Lego operates on a five percent (5%) royalty rate, the business has generated $17 million since the Agreement was executed. That figure is much lower than our knowledge of Lego's business. [¶] Conclusively, the content variations since the three films were made have been voluminous; the animated series in particular. As this content was licensed or sold for many years, it was |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| | merchandise and services that featured our Trademark quite frequently." ECF 40-2 at 2–3. |

**#49. NBCU's Response:**

DMCT's response to SUF 49 does not create any factual dispute, as the parties do not disagree about the contents of the June 16, 2017 correspondence, and the document is the best evidence of its contents.  Furthermore, DMCT has not identified any evidence that the June 2017 accounting statement, as supplemented, is incorrect, and its dispute as to the identities of other purportedly unaccounted-for licensees or infringing items is based only on speculation. Indeed, the correspondence from DMCT in the exhibit on which DMCT relies (Ex. 2, ECF 40-2) expressly states that DMCT "***presume[s]*** that [the additional companies] are licensed by NBC Universal." (emphasis added).

| #50. NBCU reviewed DMCT's list and determined that 10 of the entities did not have a license with NBCU. Sohn Decl. ¶ 8 | Disputed, as all that NBC provides for this assertion are self-serving statements from its own witness that have no documentary support. |
|---|---|

**#50. NBCU's Response:**

DMCT's response to SUF 50 does not create any factual dispute, as DMCT cites no evidence that contradicts the declaration of Don Sohn on which NBCU relies. Don Sohn bases his statements on personal knowledge, as he personally conducted the review that DMCT challenges.  *See* Sohn Dep., ECF 46-1, Ex. 5 at 67:20-68:25.  DMCT provides no evidence that this review was inaccurate other than speculation.

| #51. In August 2017, NBCU revised its reporting to incorporate royalties relating to the remaining 10 entities and sent DMCT a supplemental accounting statement that covered the period December 31, 2016 to December 31, 2016, in the amount of approximately $27,363. Ex. 9 (4/94 to 12/16 NBCU Accounting Statement v.2); Sohn Decl. ¶ 8 | Not disputed that NBC provided an additional accounting statement and made a payment in the amount of approximately $27,363. Disputed that the additional accounting statement was or is accurate or complete. DMC has repeatedly questioned NBC about the accuracy of its accounting statements. *See* ECF 40-3, 40-4, & 40-15. |
|---|---|

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #51. NBCU's Response:<br><br>DMCT's response to SUF 51 does not create any factual dispute, as DMCT has not identified any evidence that the August 2017 supplemental accounting statement is incorrect.  DMCT also cites no evidence that contradicts the declaration of Don Sohn on which NBCU relies.  Don Sohn bases his statements on personal knowledge, as he personally conducted the review that DMCT challenges.  *See* Sohn Dep., ECF 46-1, Ex. 5 at 67:20-68:25.  DMCT provides no evidence that this review or the addition of 10 licensees was inaccurate other than speculation. | |
| #52. NBCU issued DMCT a check in the amount of $27,363, which DMCT deposited.<br>Sohn Decl. ¶ 8 | Not disputed. However, by depositing the check, DMC did not agree that the check was accurate, nor was this an accord and satisfaction. |
| #53. On September 25, 2017, DMCT again sent NBCU a list of approximately 35 purported additional licensees and alleged that NBCU failed to report royalties to DMCT from revenue it received from these entities.<br>Ex. 3 (9/25/17 Email from R. Dartt); Sohn Decl. ¶ 9 | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #54. In its September 25, 2017 correspondence, DMCT did not identify any information about these entities including whether they were actually licensees of NBCU, what the alleged infringing items looked like, or when and where the items were sold. Ex. 3 (9/25/17 Email from R. Dartt) | Disputed, as DMC would have no way to know whether the 35 "licensees" were actually licensees of NBC; only NBC would know that, which is why DMC was asking NBC for more information. In accounting statements provided by NBC, DMC "d[id] not find reference to the theme parks-- Universal Studios Florida, Hollywood and Japan." ECF 40-3 at 2. And DMC requested information regarding "[s]ome recognized NBC Universal licensees using the 'DeLorean'" trademarks. *Id.* |

#54. NBCU's Response:

DMCT's response to SUF 54 does not create any factual dispute, as the parties do not dispute the contents of the September 25, 2017 correspondence, and the document is the best evidence of its contents.  Ex. 3, ECF 40-3.  Furthermore, DCMT's dispute as to the identities of any purportedly unaccounted-for licensees or infringing items is based only on speculation.  Indeed, DMCT confirms this in its response that "***DMC would have no way to know*** whether the 35 'licensees' were actually licensees of NBC[.]" (emphasis added).

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #55. On December 1, 2017, DMCT wrote to NBCU stating that the parties were at an "impasse" and demanding that NBCU "provide a full and accurate" accounting by the end of the month or else DMCT would have to "escalate the matter." <br> Ex. 4 (12/1/17 Email from R. Dartt) | Disputed, as NBC misquotes the December 1, 2017, email. In that email, a representative of DMC wrote, in part: "We seem to be at a *temporary* impasse that is unexplainable and easily avoided. . . . [¶¶] In an effort to *avoid the necessity of escalating this matter*, I would implore you, one last time, to provide a full and accurate and complete proper accounting and payment before the end of this month (emphasis added)." ECF 40-4 at 2. |
| #55. NBCU's Response: <br><br> DMCT's response to SUF 55 does not create any factual dispute, as the parties do not dispute the contents of the December 1, 2017 communication, and the document is the best evidence of its contents.  Ex. 4, ECF 40-4. | |
| #56. On January 28, 2020, counsel for DMCT, Casey Lambright, sent a letter to Adam Hagen, in-house counsel for NBCU. <br> Ex. 44 (February 2020 Correspondence between A. Thomas and C. Lambright) at DMC_003344–45 | Not disputed. However, NBC fails to cite the actual letter which it marked as part of "Exhibit 25." *See* ECF 40-36 at 9–10. |
| #56. NBCU's Response: <br><br> The correct citation is Ex. 35, ECF 47-10 at DMC_003344-45. | |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #57. In the January 28, 2020 letter, Mr. Lambright stated that, "within twenty (20) days of the date of this letter, NBCU must provide copies of all licensing agreements concerning DMC's marks or images of the vehicle and a complete accounting related thereto." Ex. 44 (February 2020 Correspondence between A. Thomas and C. Lambright) at DMC_003345 | Not disputed. However, NBC fails to cite the actual letter which it marked as part of "Exhibit 25." *See* ECF 40-36 at 9–10. |
| **NBCU's Response:** The correct citation is Ex. 35, ECF 47-10 at DMC_003345. | |
| #58. In March 2020, NBCU sent DMCT an accounting statement that covered the period January 1, 2017 to September 30, 2018, in the amount of approximately $29,482. Ex. 16 (3/18/20 Letter from A. Thomas) at DMC_003245; Ex. 10 (1/17 to 9/18 NBCU Accounting Statement) | Not disputed that NBC provided the accounting statement and made a payment in the amount of approximately $29,482. Disputed that the accounting statement was and is accurate or complete. DMC has repeatedly questioned NBC about the accuracy of its accounting statements. *See* ECF 40-17 at 2–3; ECF 40-19 at 2–3. |
| **#58. NBCU's Response:** DMCT's response to SUF 58 does not create any factual dispute, as DMCT has not identified any evidence that the March 2020 accounting statement is incorrect. | |
| #59. The accounting statement NBCU sent in March 2020 included any entities that DMCT identified in September 2017 that were actually licensees of NBCU. McQuown Decl. ¶ 10 | Disputed, as all that NBC provides for this assertion are self-serving statements from its own witness that have no documentary support. |

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #59. NBCU's Response:<br><br>DMCT's response to SUF 59 does not create any factual dispute, as DMCT has not identified any evidence that the March 2020 accounting statement is incorrect.  Additionally, it is undisputed that in the March 2020 accounting statement, NBCU included any entities that DMCT identified in its September 2017 correspondence that were actually licensees of NBCU.  *See* McQuown Decl., ECF 38-3 at ¶ 10.  Scott McQuown's declaration, which addresses these facts, is based on his personal knowledge and his review of NBCU's internal business records and communications with which he is familiar. ||
| #60. NBCU issued DMCT a check in the amount of $29,482, which DMCT deposited.<br>McQuown Decl. ¶ 10 | Not disputed. However, by depositing the check, DMC did not agree that the check was accurate, nor was this an accord and satisfaction. |
| #61. In April 2020, NBCU sent DMCT an accounting statement that covered the period October 1, 2018 to December 31, 2019, in the amount of approximately $49,264.<br>Ex. 11 (10/18 to 12/19 NBCU Accounting Statement) | Not disputed that NBC provided the accounting statement and made a payment in the amount of approximately $49,264. Disputed that the accounting statement was or is accurate or complete. DMC has repeatedly questioned NBC about the accuracy of its accounting statements. *See* ECF 40-17 at 2–3; ECF 40-19 at 2–3. |
| #61. NBCU's Response:<br><br>DMCT's response to SUF 61 does not create any factual dispute, as DMCT has not identified any evidence that the April 2020 accounting statement is incorrect. ||
| #62. NBCU issued DMCT a check in the amount of $49,264, which DMCT deposited.<br>McQuown Decl. ¶ 11 | Not disputed. However, by depositing the check, DMC did not agree that the check was accurate, nor was this an accord and satisfaction. |

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #63. In November 2020, NBCU sent DMCT an accounting statement that covered the period January 1, 2020 to June 30, 2020, in the amount of approximately $20,587. <br> Ex. 12 (1/20 to 6/20 NBCU Accounting Statement) | Not disputed that NBC provided the accounting statement and made a payment in the amount of approximately $20,587. Disputed that the accounting statement was or is accurate or complete. DMC has repeatedly questioned NBC about the accuracy of its accounting statements. *See* ECF 40-19 at 2–3. |
| #63. NBCU's Response: <br><br> DMCT's response to SUF 63 does not create any factual dispute, as DMCT has not identified any evidence that the November 2020 accounting statement is incorrect.  Additionally, the letter cited by DMCT (Ex. 19, ECF 40-19) does not identify any inaccuracies in the November 2020 accounting statement. ||
| #64. NBCU issued DMCT a check in the amount of $20,587, which DMCT deposited. <br> McQuown Decl. ¶ 13 | Not disputed. However, by depositing the check, DMC did not agree that the check was accurate, nor was this an accord and satisfaction. |
| #65. In August 2021, NBCU sent DMCT an accounting statement that covered the period July 1, 2020 to December 31, 2020, in the amount of approximately $33,325. <br> Ex. 13 (7/20 to 12/20 NBCU Accounting Statement) | Not disputed that NBC provided the accounting statement and made a payment in the amount of approximately $33,325. Disputed that the accounting statement was or is accurate or complete. DMC has repeatedly questioned NBC about the accuracy of its accounting statements. *See* ECF 40-19 at 2–3. |
| #65. NBCU's Response: <br><br> DMCT's response to SUF 65 does not create any factual dispute, as DMCT has not identified any evidence that the August 2021 accounting statement is incorrect.  Additionally, the letter cited by DMCT (Ex. 19, ECF 40-19) does not identify any inaccuracies in the November 2020 accounting statement. ||

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #66. NBCU issued DMCT a check in the amount of $33,325, which DMCT deposited.<br>McQuown Decl. ¶ 14 | Not disputed. However, by depositing the check, DMC did not agree that the check was accurate, nor was this an accord and satisfaction. |
| #67. On August 6, 2021, Casey Lambright, counsel for DMCT, emailed Andrew J. Thomas, counsel for NBCU, requesting "word on the missing items [he had] repeatedly requested."<br>Ex. 18 (Emails between Lambright and Thomas) at 8/6/21 Correspondence from C. Lambright | Not disputed. |
| #68. In his August 6, 2021, Mr. Lambright did not identify the "missing" items he referenced.<br>Ex. 18 (Emails between Lambright and Thomas) at 8/6/21 Correspondence from C. Lambright | Not disputed that the August 6, 2021, email did not specifically identify missing items. However, DMC had identified numerous missing items in the past. ECF 40-3 & 40-4. |
| #68. NBCU's Response:<br><br>DMCT's response to SUF 68 does not create any factual dispute, as DMCT does not dispute the fact that Mr. Lambright's August 6, 2021 email did not identify any "missing" items.  Ex. 18, ECF 40-18.  It is immaterial whether DMCT had identified "numerous missing items in the past," as DMCT does not provide any evidence of "missing items" or inaccurate accounting during the four-year limitations period. ||
| #69. On August 13, 2021, Mr. Thomas emailed Mr. Lambright: "I am [] happy to look into anything you believe is missing. Can you be more specific about the missing items you refer to below?"<br>Ex. 18 (Emails between Lambright and Thomas) at 8/13/21 Email from A. Thomas | Not disputed. |

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #70. On August 13, 2021, Mr. Lambright emailed Mr. Thomas: "Did you ever figure out the missing documents and hole in the time line and when we will receive those?"<br>Ex. 18 (Emails between Lambright and Thomas) at 8/13/21 Email from C. Lambright | Not disputed. |
| #71. On September 7, 2021, Mr. Thomas emailed Mr. Lambright: "Can you please let me know more specifically what missing documents you are referring to in your email below?  As for the time line, I believe Universal has now accounted to you for all relevant time periods of BTTF merchandising activity covered by the 1989 Agreement."<br>Ex. 18 (Emails between Lambright and Thomas) at 9/7/21 Email from A. Thomas | Not disputed. |
| #72. Mr. Lambright did not respond to Mr. Thomas's September 7, 2021 email. (Thomas Decl. ¶ 14) | Not disputed. |
| #73. On October 14, 2021, DMCT's counsel, Roger Behle, sent a letter to NBCU's counsel demanding an accounting of NBCU's books and records pertaining to the 1989 Agreement and requesting that all materials be provided within 30 days.<br>Ex. 19 (10/14/21 Letter from R. Behle) | Not disputed. |

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #74. NBCU's counsel responded by asking for additional information about the identities of any licensees that DMCT contended had been omitted from NBCU's accounting, the type of merchandise involved, and the dates such merchandise was sold. Thomas Decl. ¶ 15 | Not disputed. |
| #75. On February 14, 2022, DMCT sent NBCU a document entitled "*Back To The Future Almanac: Official Collector's Guide*." Ex. 20 (2/14/22 Email from R. Chase); Ex. 21 (BTTF Almanac) | Not disputed. |
| #76. The "*Back To The Future Almanac: Official Collector's Guide*" was published in 2015. Ex. 21 (BTTF Almanac) | Not disputed. |
| #77. The "*Back To The Future Almanac: Official Collector's Guide*" purportedly covers BTTF merchandise and memorabilia created during the period between 1985 and 2015. Ex. 21 (BTTF Almanac) | Not disputed. |
| #78. "*Back To The Future Almanac: Official Collector's Guide*" included several hundred images of BTTF products and promotional materials from the period 1985-2015 but did not provide sales or licensing information. Ex. 21 (BTTF Almanac) | Not disputed. |
| #79. In conjunction with sending the Almanac, DMCT included a list of merchandise and memorabilia items, which included descriptions such as "BTTF Song Book" and "BTTF Cap." Ex. 22 (BTTF Almanac Merchandise List) | Not disputed that "BTTF Song Book" and "BTTF Cap" were among the items listed. However, the list contained hundreds of items of merchandise. ECF 40-23. |

Case No. 8:22-cv-02189-DOC-DFM

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #80. In its February 14, 2022 communication, DMCT did not identify the identities of any NBCU licensees who sold the products, the dates on which any of the identified products were sold, what the products looked like, or whether they had been previously accounted for by NBCU to DMCT. <br> Ex. 20 (2/14/22 Email from R. Chase); Ex. 21 (BTTF Almanac Merchandise List). | Disputed, as DMC would have no way to know whether any of the "licensees" were actually licensed by NBC; only NBC would know that. DMC provided photos showing what the products looked like (the Almanac had pictures of the products), where to find them online, and the names of the companies selling the products. ECF 40-21, 40-22, & 40-23. |

#80. NBCU's Response:

DMCT's response to SUF 80 does not create any factual dispute, as the parties do not disagree about the contents of the February 14, 2022 correspondence, and the document is the best evidence of its contents.   Ex. 20, ECF 40-20. Furthermore, DMCT has not identified any evidence that any accounting statement within the four-year limitations period is incorrect.   DMCT's speculation as to the identities of other purportedly unaccounted-for licensees or infringing items cannot create a triable issue of fact.  Indeed, DMCT confirms there is no factual basis for its response by stating that it "would have no way to know whether any of the 'licensees' were actually licensed by NBC[.]".

| DMCT's Prior Litigation with the Estate of John Z. DeLorean (the "DeLorean Estate") | |
|---|---|
| #81. In 2014, Sally DeLorean, as the administratrix for the DeLorean Estate, filed suit against DMCT in the District of New Jersey alleging that DMCT's use of the DMCT Marks unlawfully infringed the DeLorean Estate's rights in Mr. DeLorean's identity, the DeLorean Marks, and the DeLorean automobiles' trade dress. <br> Ex. 50 (2014 DNJ Complaint) | Not disputed. |

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #82. On September 23, 2015, DMCT and the DeLorean Estate executed a settlement agreement (the "Settlement Agreement"). Ex. 43 (Rule 11 Settlement Agreement) | Not disputed. |
| #83. In the Settlement Agreement, the DeLorean Estate acknowledged DMCT's trademark rights based on its registrations and covenanted not to file any further litigation against DMCT. Ex. 43 (Rule 11 Settlement Agreement) | Disputed, as this is a general characterization of the Settlement Agreement's terms that leaves out important contractual language. The agreement was not limited to DMC's trademark rights based on its registrations. DMC also owned common law trademark rights through use of certain DELOREAN marks in interstate commerce. Through the Settlement Agreement, the DeLorean Estate "acknowledge[d] DMC Texas' trademarks and right to use the DeLorean automobile brand, and associated products and services." ECF 40-44 at 2–3. Thus, DMC's right to receive royalties from NBC was (as a result of DMC's ownership of the foregoing rights) was included as part of the Settlement Agreement. |
| #83. NBCU's Response:<br><br>DMCT's response to SUF 83 does not create any factual dispute, as the parties do not disagree on the terms of the Settlement Agreement.  Ex. 43, ECF 40-44. The Settlement Agreement is the best evidence of its contents, and there is no dispute as to what information it does or does not include. | |
| #84. The Settlement Agreement did not refer to the 1989 Agreement. Ex. 43 (Rule 11 Settlement Agreement) | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #85. The Settlement Agreement did not state that any rights under the 1989 Agreement were transferred or assigned to either DMCT or the DeLorean Estate.<br>Ex. 43 (Rule 11 Settlement Agreement) | Not disputed that the Settlement Agreement did not expressly reference a transfer or assignment of the 1989 Agreement. However, disputed that DMC's right to receive royalties from NBC was not included as part of the Settlement Agreement. |

#85. NBCU's Response:

DMCT's response to SUF 85 does not create any factual dispute, as the parties do not disagree on the terms of the Settlement Agreement. Ex. 43, ECF 40-44. The Settlement Agreement is the best evidence of its contents, and there is no dispute as to what information it does or does not include.

| | |
|---|---|
| #86. In February 2018, a representative of the DeLorean Estate contacted NBCU and claimed that the Estate, not DMCT, was entitled to receive royalties under the 1989 Agreement.<br>Ex. 6 (2/13/18 Letter from R. Scott Thompson, counsel for DeLorean Estate); McQuown Decl. ¶ 9. | Not disputed. |
| #87. NBCU suspended its payment of royalties to DMCT under the 1989 Agreement and requested that the DeLorean Estate and DMCT determine who was entitled to payment from NBCU before NBCU resumed its reporting.<br>Ex. 7 (4/18/18 Letter from A. Hagen); Ex. 73 (1/8/19 Email from N. Ross of NBCU) | Not disputed. |

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #88. In April 2018, the DeLorean Estate filed a complaint against DMCT seeking a declaratory judgment that the Settlement Agreement did not transfer any rights to the 1989 Agreement to DMCT and that DMCT had to pay the monies it had received from NBCU to the DeLorean Estate.<br>Ex. 51 (2018 DNJ Complaint) | Not disputed. |
| #89. In its Motion to Dismiss filed May 23, 2018, DMCT asserted that the 2015 Settlement Agreement "does not transfer or purport to transfer any rights."<br>Ex. 52 (2018 DNJ DMCT Motion to Dismiss) at p. 5, n.10 | Disputed, as this is a partial quote. The footnote cited by NBC states in full: "Note: the Settlement Agreement does not transfer or purport to transfer any rights— rather, *it acknowledges the existence of rights already in place*." ECF 40-53 at 50 (emphasis added). |
| #89. NBCU's Response:<br><br>DMCT's response to SUF 89 does not create any factual dispute, as there is no disagreement as to the contents of DMCT's May 23, 2018 Motion to Dismiss. Ex. 52, ECF 40-53.  DMCT's May 23, 2018 Motion to Dismiss is the best evidence of its contents, and there is no dispute as to what information it does or does not include. | |
| #90. In its Motion to Dismiss filed May 23, 2018, DCMT also claimed that it was the "unquestionable" "successor" under the 1989 Agreement.<br>Ex. 52 (2018 DNJ DMCT Motion to Dismiss) at p. 8 | Not disputed. |

Case No. 8:22-cv-02189-DOC-DFM

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #91. DMCT supported its claim in its Motion to Dismiss filed May 23, 2018 that it was the successor under the 1989 Agreement by pointing to 2008 and 2009 trademark registrations that were expressly based on alleged trademark uses starting in the mid-1990s.<br>Ex. 52 (2018 DNJ DMCT Motion to Dismiss) at p. 8 | Disputed. Page 8 of DMC's motion to dismiss, cited by NBC for its purported "fact," does not reference DMC's trademarks. Instead, the relevant section of the motion states: "The clear terms and intent of the Settlement Agreement *was to acknowledge the ownership of all 'worldwide' rights to the automobile brand and the DeLorean Marks in DMC*, as well as the ability for DMC to exclusively use and employ all rights stemming from DMC, without limitation, forever. *DMC is the unquestionable 'successor[] and assign[]' as contemplated by the Universal Contract*." ECF 40-53 at 53 (emphasis added). |

| #91. NBCU's Response: |
|---|
| DMCT's response to SUF 91 does not create any factual dispute, as there is no disagreement as to the contents of DMCT's May 23, 2018 Motion to Dismiss. Ex. 52, ECF 40-53.  DMCT's May 23, 2018 Motion to Dismiss is the best evidence of its contents, and there is no dispute as to what information it does or does not include. |

| #92. In its Reply filed July 30, 2018, DMCT asserted that because John Z. DeLorean had no intellectual property rights at the time the Agreement was executed, "the Universal Pictures contract [was] invalid."<br>Ex. 54 (2018 DNJ DMCT Reply ISO MTD) at pp. 11-12 | Disputed. DMC made an estoppel argument against the DeLorean Estate in its Reply and asserted that, *as to the DeLorean Estate*, the 1989 Agreement was invalid. ECF 40-55 at 15–16. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #92. NBCU's Response:<br><br>DMCT's response to SUF 92 does not create any factual dispute, as there is no disagreement as to the contents of DMCT's July 30, 2018 Reply in Further Support of its Motion to Dismiss.  Ex. 54, ECF 40-55.  DMCT's July 30, 2018 Reply in Further Support of its Motion to Dismiss is the best evidence of its contents, and there is no dispute as to what information it does or does not include. | |
| #93. The District Court concluded that the Settlement Agreement barred the DeLorean Estate from suing DMCT. Ex. 56 (2018 DNJ Opinion) | Not disputed. |
| #94. The District Court held that the 1989 Agreement fell within the scope of claims the parties were not permitted to litigate under the Settlement Agreement.<br>Ex. 56 (2018 DNJ Opinion) at p. 7 | Disputed. The District Court held that, per the Settlement Agreement, the DeLorean Estate was barred from disputing DMC's rights, including DMC's right to receive revenue from NBC under the 1989 Agreement as the owner of the DELOREAN trademarks and other rights. ECF 40-57 at 8–10. |
| #94. NBCU's Response:<br><br>DMCT's response to SUF 94 does not create any factual dispute, as there is no disagreement as to the contents of the District of New Jersey's Opinion.  Ex. 56, ECF 40-57.  The District of New Jersey's Opinion is the best evidence of its contents, and there is no dispute as to what information it does or does not include. | |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #95. The District Court did not purport to decide the issue of whether DMCT was in fact a successor-in-interest to the 1989 Agreement. Ex. 56 (2018 DNJ Opinion) at p. 9 | Disputed. This is NBC's subjective characterization of the District Court opinion. In addressing DMC's motion to dismiss, the court examined "whether the materials licensed in the Universal Agreement [i.e., the 1989 Agreement] were included in the Settlement Agreement." ECF 40-57 at 6. |
| #95. NBCU's Response:<br><br>DMCT's response to SUF 95 does not create any factual dispute, as there is no disagreement as to the contents of the District of New Jersey's Opinion.  Ex. 56, ECF 40-57.  The District of New Jersey's Opinion is the best evidence of its contents, and there is no dispute as to what information it does or does not include. | |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #96. The District Court stated in its order: "Even if Plaintiff is correct that Defendant was not 'assigned' the Universal Agreement and Plaintiff retained some rights in same, . . . the Court agrees with Defendant that Plaintiffs attempt to enforce the Universal Agreement would violate the Settlement Agreement . . . because the subject matter of the Universal Agreement is covered and barred by the Settlement Agreement." Ex. 56 (2018 DNJ Opinion) at p. 9, n.2 | Disputed, as NBC fails to include all relevant language from this quote. The District Court stated: "Even if Plaintiff is correct that Defendant was not 'assigned' the Universal Agreement and Plaintiff retained some rights in same, (ECF No. 8 at 13 15), the Court agrees with Defendant that Plaintiff's attempt to enforce the Universal Agreement would violate the Settlement Agreement, (ECF No. 12 at 9), because the subject matter of the Universal Agreement is covered and barred by the Settlement Agreement. Based on this conclusion, Mr. DeLorean's Estate is no longer the 'the sole owner of the rights in the Material granted or agreed to be granted to [Universal] hereunder,' as Mr. DeLorean initially warranted in the Universal Agreement." ECF 40-57 at 10. |

#96. NBCU's Response:

DMCT's response to SUF 96 does not create any factual dispute, as there is no disagreement as to the contents of the District of New Jersey's Opinion. Ex. 56, ECF 40-57. The District of New Jersey's Opinion is the best evidence of its contents, and there is no dispute as to what information it does or does not include. Furthermore, the language which DMCT quotes ("Mr. DeLorean's Estate is no longer the 'the sole owner of the rights in the Material granted or agreed to be granted to [Universal] hereunder[.]'") does not make DMCT a party to the 1989 Agreement.

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #97. The DeLorean Estate appealed the District Court's ruling to the United States Court of Appeals for the Third Circuit.<br>Ex. 58 (Third Circuit Opinion) at p. 2 | Not disputed. |
| #98. In its appellate brief, DMCT argued that the 1989 Agreement was "void and unenforceable[.]"<br>Ex. 57 (2019 DMCT Appellee Brief) at pp. 15, 25 | Disputed, as this is a misrepresentation of DMC's arguments before the Third Circuit. The DeLorean Estate argued that it retained intellectual property rights and the right to royalties under the 1989 Agreement. In response, DMC explained that, assuming this premise was true and the DeLorean Estate retained the asserted rights, then that would be inconsistent with the 1989 Agreement, rendering that agreement void *as to the DeLorean Estate*. ECF 40-58 at 32. DMC made this argument based on an assumed hypothetical, which was that the Estate retained the rights it asserted it held. |
| #98. NBCU's Response:<br><br>DMCT's response to SUF 98 does not create any factual dispute, as there is no disagreement as to the contents of DMCT's appellate brief.  Ex. 57, ECF 40-58.  DMCT's 2019 appellate brief is the best evidence of its contents, and there is no dispute as to what information it does or does not include. ||
| #99. In its appellate brief, DMCT also asserted that it was *not* DMCT's position that the Settlement Agreement transferred or assigned any contract rights under the 1989 Agreement.<br>Ex. 57 (2019 DMCT Appellee Brief) at p. 22 | Not disputed. However, DMC's position at the Third Circuit Court of Appeals remained the same; i.e., that the Settlement Agreement acknowledged the existence of rights already in place. ECF 40-53 at 50. |

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #99. NBCU's Response:<br><br>DMCT's response to SUF 99 does not create any factual dispute, as there is no disagreement as to the terms of the Settlement Agreement. Ex. 43, ECF 40-44. The mere fact that the Settlement Agreement acknowledged the existence of trademark rights already in place does not mean that the Settlement Agreement made DMCT a party to the 1989 Agreement. Finally, DMCT's 2019 appellate brief is the best evidence of its contents, and there is no dispute as to what information it does or does not include. | |
| #100. The Third Circuit concluded that "the Settlement Agreement barred the Estate from suing DMC Texas for the conduct it engaged in here." Ex. 58 (Third Circuit Opinion) at p. 7 | Not disputed. |
| #101. The Third Circuit did not adjudicate whether DMCT was a successor-in-interest to the 1989 Agreement. Ex. 58 (Third Circuit Opinion) | Disputed. The Third Circuit did not determine, nor did it need to determine, whether there was an assignment of contractual rights by the Estate to DMC. Instead, the Third Circuit expressly found that DMC's "dealings with Universal fall within its 'worldwide rights . . . to use, register, and enforce' [its] marks in connection with its business or brand." ECF 40-59 at 9. |
| #101. NBCU's Response:<br><br>DMCT's response to SUF 101 does not create any factual dispute, as there is no dispute as to the contents of the Third Circuit's Opinion. Ex. 58, ECF 40-59. The Third Circuit's Opinion is the best evidence of its contents, and there is no dispute as to what information it does or does not include. | |
| Procedural History in this Action | |
| #102. On October 26, 2022, DMCT filed its Complaint in the Orange County Superior Court. Ex. 75 (DMCT OCSC Complaint) | Not disputed. |

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #103. The Complaint alleged claims for breach of contract, trademark and trade dress infringement, and an accounting. Ex. 75 (DMCT OCSC Complaint) ¶ 21, pp. 8-11 | Not disputed. |
| #104. On December 22, 2022, DMCT filed its First Amended Complaint ("FAC"). Ex. 76 (DMCT First Amended Complaint, ECF No. 10, 10-1) | Not disputed. |
| #105. On February 16, 2023, the parties entered into a stipulation regarding the scope of Plaintiff's Lanham Act claim. Ex. 77 (Joint Stipulation Clarifying Scope of Lanham Act Claim, ECF No. 17) | Not disputed. |
| #106. In their February 16, 2023 Stipulation, the parties stipulated that DMCT's Lanham Act claim was not based, in whole or in part, on the appearance of a DeLorean car in the BTTF films, in the film *Ready Player One*, or in any works protected by the First Amendment, as well as the advertising of such works. Ex. 77 (Joint Stipulation Clarifying Scope of Lanham Act Claim, ECF No. 17) at p. 2 | Not disputed. |
| #107. On March 17, 2023, DMCT served its Initial Disclosures. Ex. 24 (DMCT Initial Disclosures) | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #108. In its Initial Disclosures, under the "Damages" section, DMCT stated: "Plaintiff claims compensatory damages, incidental and consequential damages, and disgorgement of profits Defendant obtained through the infringement of Plaintiff's trademarks and trade dress.  DMCT did not amend or supplement its Initial Disclosures. Ex. 24 (DMCT Initial Disclosures) | Not disputed. |
| #109. NBCU's Interrogatory No. 10 asked DMCT to identify each instance in which it contended that NBCU committed a breach of the 1989 Agreement. Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 10 | Not disputed. |
| #110. On June 28, 2023, DMCT objected to Interrogatory No. 10 that the Interrogatory was "premature given that the Propounding Party has not yet produced Documents evidencing contracts or licenses entered into by NBCU concerning products or services covered by the 1989 Agreement, or full accounting records, and thus, other than the specific facts alleged in the operative complaint (which are incorporated herein by reference), and absent such Documents and information, the Responding Party is unable to identify each and every instance in which NBCU breached the 1989 Agreement."  DMCT did not amend or supplement its response. Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 10 | Not disputed. |

Case No. 8:22-cv-02189-DOC-DFM
**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #111. NBCU's Interrogatory No. 11 asked DMCT to "[i]dentify each and every instance in which you contend that NBCU used any of the DeLorean Marks in a manner that exceeded the scope of the 1989 Agreement." Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 11 | Not disputed. |
| #112. DMCT objected to Interrogatory No. 11 that the Interrogatory was "premature given that the Propounding Party has not yet produced Documents evidencing business transactions, contracts or licenses entered into by NBCU concerning the DeLorean Marks, or full accounting records, and thus, other than the specific facts alleged in the operative complaint (which are incorporated herein by reference), and absent such Documents and information, the Responding Party is unable to identify each and every instance in which NBCU used the DeLorean Marks in a manner exceeding the scope of the 1989 Agreement."  DMCT did not amend or supplement its response. Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 11 | Not disputed. |
| #113. NBCU's Interrogatory No. 12 asked DMCT to "[i]dentify each and every instance in which you contend that NBCU used any of the DeLorean Marks in a manner that constituted a violation of the Lanham Act." Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 12 | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #114. DMCT objected to Interrogatory No. 12 that the Interrogatory was "premature given that the Propounding Party has not yet produced Documents evidencing business transactions, contracts or licenses entered into by NBCU concerning the DeLorean Marks, or full accounting records, and thus, other than the specific facts alleged in the operative complaint (which are incorporated herein by reference), and absent such Documents and information, the Responding Party is unable to identify each and every instance in which NBCU used the DeLorean Marks in a manner that constituted(es) a violation of the Lanham Act."  DMCT did not amend or supplement its response. Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 12 | Not disputed. |
| #115. NBCU's Interrogatory No. 18 asked DMCT to "[i]dentify and describe in detail each and every instance in which any Person has, by word or action, suggested a belief or questioned whether any product or service depicting the Time Machine Car is or was affiliated with, sponsored by, or endorsed by You." Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 18 | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #116. DMCT responded to Interrogatory No. 18 that "on nearly a daily basis, the Responding Party, its staff or one of its customers receives a comment from a member of the public concerning the 'Time Machine Car' – such as, 'Where is the Flux Capacitor on this thing?' or 'Where is the Mr. Fusion?' or 'What happens when you hit 88 MPH in this car?' and many, many others." DMCT did not amend or supplement its response.<br>Ex. 27 (DMCT Responses to NBCU Interrogatories) at No. 18 | Not disputed. |
| #117. On July 21, 2023, NBCU served DMCT with its Second Set of Requests for Production.<br>Ex. 28 (DMCT Amended Responses to NBCU RFPs) | Not disputed. |
| #118. NBCU's Request for Production No. 51 asked for "[a]ll Documents that comprise, refer to, relate to, or otherwise reflect that NBCU was a party to any agreement, including any litigation settlement agreement, entered into between You and the DeLorean Estate, as You indicated exist by responding 'deny' to NBCU's RFA No. 8."<br>Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 51 | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #119. DMCT responded to Request for Production No. 51 that "Responding Party will produce all non-privileged documents within its possession, custody or control that are responsive to this request, bearing the Bates Number DMC_004462-004558." Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 51 | Not disputed. |
| #120. The documents encompassed by DMC_004462-004558 do not include any agreement between DMCT and the DeLorean Estate to which NBCU is a party. Ex. 29 (Composite of Documents Cited in Response to RFP No. 51) | Disputed. This is NBC's own subjective characterization of the documents. The documents encompassed by DMC_004462-004558 include the rulings by the District Court for the District of New Jersey and Third Circuit Court of Appeals regarding the lawsuit brought by the DeLorean Estate against DMC. ECF 40-30 at 2–38. As explained above and in DMC's Opposition to the MSJ, those rulings addressed a challenge to DMC's right to receive royalties under the 1989 Agreement. |

#120. NBCU's Response:

DMCT's response to SUF 120 does not create any factual dispute, as there is no disagreement as to the documents that DMCT produced in response to RFP No. 51. Ex. 29, ECF 47-8. None of the documents produced by DMCT include any agreement between DMCT and the DeLorean Estate to which NBCU is a party. The documents produced by DMCT in response to RFP No. 51 are the best evidence of their contents, and there is no dispute as to what information they do or do not include.

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #121. NBCU's Request for Production No. 52 asked for "[a]ll Documents that comprise, refer to, relate to, or otherwise reflect that You have executed any assignment or other Document that states that DMC Texas is or was the successor-in-interest to JZD under the 1989 Agreement[.]" Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 52 | Not disputed. |
| #122. After amending its responses, DMCT responded to NBCU's Request for Production No. 52 on November 3, 2023 that "Responding Party will produce all non-privileged documents within its possession, custody or control to that are responsive to this request, bearing the Bates Number DMC_004462-DMC_004558; DMC_003978-DMC_003995." Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 52 | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #123. The documents encompassed by DMC_004462-DMC_004558 and DMC_003978-DMC_003995 do not include any documents which state that DMCT is an assignee or successor-in-interest to John Z. DeLorean under the 1989 Agreement.<br>Ex. 30 (Composite of Documents Cited in Response to RFP No. 52) | Disputed. This is NBC's own subjective characterization of the documents. The documents produced include the rulings by the District Court for the District of New Jersey and Third Circuit Court of Appeals regarding DMC's rights; the April 30, 1997, contract of sale by which DMC acquired, among other things, all the inventory, goodwill, trade names, intangible property, and equipment of Old DMC; the Settlement Agreement between the DeLorean Estate and DMC; federal court filings by DMC with documentary support of its trademarks and related rights; among other documents. ECF 40-30 & 40-31. |

#123. NBCU's Response:

DMCT's response to SUF 123 does not create any factual dispute, as there is no dispute as to the documents that DMCT produced in response to RFP No. 52. Ex. 30, ECF 47-9.  The documents produced by DMCT do not include any documents which state that DMCT is an assignee or successor-in-interest to John Z. DeLorean under the 1989 Agreement.  The documents produced by DMCT in response to RFP No. 52 are the best evidence of their contents, and there is no dispute as to what information they do or do not include.

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #124. NBCU's Request for Production No. 56 asked for "Documents sufficient to identify each and every item You are aware of that was not accounted for in the statement You received from NBCU for the period December 31, 2016 to December 31, 2016, as You indicated exist by responding 'deny' to NBCU's RFA No. 15."<br>Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 56 | Not disputed. |
| #125. After amending its responses, DMCT responded to NBCU's Request for Production No. 56 on November 3, 2023 that "Responding Party will produce all non-privileged documents within its possession, custody or control that are responsive to this request, bearing the Bates Number DMC_003800-DMC_003827; DMC_003772-DMC_003799; DMC_003735-DMC_003736; DMC_002329-DMC_002330; DMC_003770-DMC_003771; DMC_000303-DMC_000305; DMC_004060-DMC_004062."<br>Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 56 | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #126. The documents encompassed by DMC_003800-DMC_003827; DMC_003772-DMC_003799; DMC_003735-DMC_003736; DMC_002329-DMC_002330; DMC_003770-DMC_003771; DMC_000303-DMC_000305; and DMC_004060-DMC_004062 consist of email correspondence between DMCT president Roger Dartt and NBCU in 2017. Ex. 31 (Composite of Documents Cited in Response to RFP No. 56) | Not disputed. |
| #127. NBCU's Request for Production No. 58 asked for "Documents sufficient to identify each and every item You are aware of that was not accounted for in the statement You received from NBCU for the period January 1, 2017 to September 30, 2018, as You indicated exist by responding 'deny' to NBCU's RFA No. 18." Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 58 | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #128. After amending its responses, DMCT responded to NBCU's Request for Production No. 58 on November 3, 2023 that "Responding Party will produce all non-privileged documents within its possession, custody or control that are responsive to this request, bearing the Bates Number DMC_001505-DMC_001506; DMC_000285-DMC_000285; DMC_004028-DMC_004034; DMC_004292-DMC_004299; DMC_004005-DMC_004013; DMC_002326-DMC_002328." Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 58 | Not disputed. |
| #129. The documents encompassed by DMC_001505-DMC_001506; DMC_000285-DMC_000285; DMC_004028-DMC_004034; DMC_004292-DMC_004299; DMC_004005-DMC_004013; and DMC_002326-DMC_002328 consist of email correspondence between DMC's president Roger Dartt and NBCU in 2017 and 2018. Ex. 32 (Composite of Documents Cited in Response to RFP No. 58) | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #130. NBCU's Request for Production No. 60 asked for "Documents sufficient to identify each and every item You are aware of that was not accounted for in the statement You received from NBCU for the period October 1, 2018 to December 31, 2019, as You indicated exist by responding 'deny' to NBCU's RFA No. 21."<br>Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 60 | Not disputed. |
| #131. After amending its responses, DMCT responded to NBCU's Request for Production No. 60 on November 3, 2023 that "Responding Party will produce all non-privileged documents within its possession, custody or control that are responsive to this request, bearing the Bates Number DMC_004234-DMC_004242; DMC_003671-DMC_003679; DMC_003574-DMC_003583."<br>Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 60 | Not disputed. |
| #132. The documents encompassed by DMC_004234-DMC_004242; DMC_003671-DMC_003679; and DMC_003574-DMC_003583 consist of email correspondence between DMC's president Roger Dartt and NBCU between 2017 and early 2019.<br>Ex. 33 (Composite of Documents Cited in Response to RFP No. 60) | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #133. NBCU's Request for Production No. 62 asked for "Documents sufficient to identify each and every item You are aware of that was not accounted for in the statement You received from NBCU for the period January 1, 2020 to June 30, 2020, as You indicated exist by responding 'deny' to NBCU's RFA No. 24." Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 62 | Not disputed. |
| #134. After amending its responses, DMCT responded to NBCU's Request for Production No. 62 on November 3, 2023 that "Responding Party will produce all non-privileged documents within its possession, custody or control that are responsive to this request, bearing the Bates Number DMC_004378-DMC_004381." Ex. 28 (DMCT Amended Responses to RFPs) at No. 62 | Not disputed. |
| #135. DMC_004378-DMC_004381 comprise correspondence between counsel for DMCT, Casey Lambright, and counsel for NBCU, Andrew J. Thomas. Ex. 34 (Composite of Documents Cited in Response to RFP No. 62) | Not disputed. |

Case No. 8:22-cv-02189-DOC-DFM

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #136. NBCU's Request for Production No. 64 asked for "Documents sufficient to identify each and every item You are aware of that was not accounted for in the statement You received from NBCU for the period July 1, 2020 to December 31, 2020, as You indicated exist by responding 'deny' to NBCU's RFA No. 27." <br> Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 64 | Not disputed. |
| #137. After amending its responses, DMCT responded to NBCU's Request for Production No. 64 on November 3, 2023 that "Responding Party will produce all non-privileged documents within its possession, custody or control that are responsive to this request, bearing the Bates Number DMC_003696-DMC_003700; DMC_003340-DMC_003355; DMC_003753-DMC_003764; DMC_003337-DMC_003339; DMC_003746-DMC_003750; DMC_003751-DMC_003752."  These comprise correspondence between counsel for DMC, Casey Lambright, and counsel for NBCU, Andrew J. Thomas. <br> Ex. 28 (DMCT Amended Responses to NBCU RFPs) at No. 64 | Not disputed. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|
| #138. DMC_003696-DMC_003700; DMC_003340-DMC_003355; DMC_003753-DMC_003764; DMC_003337-DMC_003339; DMC_003746-DMC_003750; and DMC_003751-DMC_003752 comprise correspondence between counsel for DMC, Casey Lambright, and counsel for NBCU, Andrew J. Thomas. Ex. 35 (Composite of Documents Cited in Response to RFP No. 64) | Not disputed. |
| #139. On November 3, 2023, DMCT served its First Set of Requests for Admission to NBCU. Ex. 37 (NBCU Responses to DMCT RFAs) | Not disputed. |
| #140. DCMT's Requests for Admission Nos. 4 through 30 asked NBCU to admit that it licensed to an additional 27 entities. Ex. 37 (NBCU Responses to DMCT RFAs) | Not disputed. |
| #141. In response to DMCT's First Set of Requests for Admission that NBCU licensed to additional entities, NBCU reviewed the entities and determined that it did not license any *Back to the Future* merchandise or commercial tie-ups which included the Time Machine Car to any of these entities from January 1, 2017 through October 2022. Longworth Decl. ¶ 7; Ex. 37 (NBCU Responses to DMCT RFAs) at Nos. 4-30 | Not disputed that NBC claimed to have conducted a "review." Disputed that NBC actually performed the alleged review and made any determination, as there is no documentary evidence or deposition testimony supporting such allegation. |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | Plaintiff's Response |
|---|---|

**#141. NBCU's Response:**

DMCT's response to SUF 141 does not create any factual dispute, as DMCT cites no evidence that contradicts the declaration of Anika Longworth on which NBCU relies.  Anika Longworth bases her statements on personal knowledge and her review of NBCU's internal business records and communications with which she is familiar, as she personally conducted the review that DMCT challenges.  Longworth Decl., ECF 38-4 at ¶¶ 1, 6-7.  DMCT provides no evidence that this review was inaccurate or incomplete other than speculation.

## NBCU'S RESPONSE TO DMCT'S UNCONTROVERTED MATERIAL FACTS

| SUF #/ Undisputed Fact | NBCU's Response |
|---|---|
| #142. NBC has refused and continues to refuse to disclose to DMC how much of its DELOREAN-related revenue was disqualified by NBC for reporting and payment to DMC.  Behle Dec. ¶ 12, Ex. 6 (Minasian Deposition at 37:6–39:11). | Irrelevant.  NBCU has no obligation under the terms of the 1989 Agreement to disclose to DMCT how it determines which DeLorean-related products qualify for royalty payments to DMCT.  *See* Ex. 1 (1989 Agreement) (ECF No. 40-1). |
| #143. NBC has refused to solicit input from DMC as to whether revenue generated by particular DELOREAN-related products should be, or should not be, reportable and payable to DMC as royalties, even though NBC claimed it wanted to be "fair" to DMC.  Behle Dec. ¶ 12, Ex. 6 (Minasian Deposition at 47:2–49:6). | Irrelevant.  NBCU has no obligation under the terms of the 1989 Agreement to solicit input from DMCT as to which products qualify for royalty payments to DMCT under the 1989 Agreement.  *See* Ex. 1 (1989 Agreement) (ECF No. 40-1).

Undisputed as to the fact that NBCU has endeavored to be fair to DMCT. |
| #144. NBC's royalty payments to DMC were based on the terms of the 1989 Agreement.  Behle Dec. ¶ 11, Ex. 5 | Undisputed that DMCT represented to NBCU that DMCT was entitled to royalties under the |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | NBCU's Response |
|---|---|
| (Sohn Deposition at 46:7–22, 48:10–17). | 1989 Agreement, and therefore that NBCU calculated royalty payments to DMCT based on the terms of the 1989 Agreement.  Ex. 40 (ECF No. 40-41) at DMC_000131; Ex. 41 (ECF No. 40-42) at DMC_001103. |
| #145. In the deposition of Don Sohn—who is one of NBC's vice-presidents—Mr Sohn testified that he had to review the 1989 Agreement in order for NBC to account to and pay royalties to DMC.  Behle Dec. ¶ 11, Ex. 5 (Sohn Deposition at 31:15–33:15). | Undisputed that DMCT represented to NBCU that DMCT was entitled to royalties under the 1989 Agreement, and therefore that NBCU calculated royalty payments based on the terms of the 1989 Agreement.  Ex. 40 (ECF No. 40-41) at DMC_000131; Ex. 41 (ECF No. 40-42) at DMC_001103.  Based on DMCT's representation, undisputed that Mr. Sohn, Vice President of Theatrical Reporting for NBCUniversal Studio Group at NBCU, reviewed the 1989 Agreement in order to report to DMCT. |
| #146. NBC, alone, has decided to disqualify some revenue from the sale of products that include DELOREAN marks or trade dress because NBC believes the use of those marks and trade dress was not "key" or "primary."  Behle Dec. ¶ 11, Ex. 5 (Sohn Deposition at 38:10–41:3); Behle Dec. ¶ 12, Ex. 6 (Minasian Deposition at 29:14–31:15). | Irrelevant and immaterial.  NBCU has no obligation under the terms of the 1989 Agreement to obtain DMCT's input on decisions regarding which products qualify for royalty payments to DMCT under the 1989 Agreement.  *See* Ex. 1 (1989 Agreement) (ECF No. 40-1). |
| #147. DMC served deposition notices for NBC's Rule 30(b)(6) corporate designees on October 5, 2023.  ECF 30-1 at 3; Behle Dec. ¶ 2. | Undisputed. |

| SUF #/ Undisputed Fact | NBCU's Response |
|---|---|
| #148. On December 26, 2024, DMC filed a motion to compel the depositions for NBC's Rule 30(b)(6) designees.  ECF 30; Behle Dec. ¶ 5. | Undisputed. |
| #149. DMC's motion to compel was withdrawn once NBC finally confirmed dates for the 30(b)(6) depositions.  ECF 31. | Undisputed as to the fact that DMCT withdrew its motion to compel.  The characterization that NBCU "finally" confirmed dates is argumentative and inaccurate; NBCU offered deposition dates before the discovery cutoff date, but DMCT decided to postpone depositions until after it had reviewed the documents it requested in late November 2023.  Supplemental Declaration of Andrew J. Thomas ("Thomas Supp. Decl.") ¶ 11.  DMCT's characterization does not, however, create a genuine issue of material fact for purposes of the summary judgment motion. |
| #150. DMC's counsel took the deposition of Scott McQuown as an individual and 30(b)(6) witness on January 17, 2024.  Behle Dec. ¶ 9. | Undisputed. |
| #151. DMC's counsel took the individual and 30(b)(6) depositions of Don Sohn and Rei Minasian the on January 18, 2024.  Behle Dec. ¶ 9. | Undisputed that DMCT took the depositions of Don Sohn (in his individual capacity) and Rei Minasian (in her individual capacity) on January 18, 2024.

Disputed as to the fact that DMCT took Mr. Sohn's and Ms. Minasian's depositions in their capacities as corporate representatives under Rule 30(b)(6).  Neither Mr. Sohn nor |

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**

| SUF #/ Undisputed Fact | NBCU's Response |
|---|---|
|  | Ms. Minasian were designated as 30(b)(6) deponents, nor were their depositions noticed in that capacity.  Sohn Dep., ECF 46-1, Ex. 5 at 16:10-22; Minasian Dep., ECF 46-1, Ex. 6 at 24:24-25:8. This inaccuracy in DMCT's statement does not create a genuine issue of material fact for purposes of the summary judgment motion. |

Dated:  January 29, 2024

Jenner & Block LLP

By: _____
Andrew J. Thomas
Lauren M. Greene
Rachael A. Goldman

Attorneys for Defendant
NBCUniversal Media, LLC

**NBCU'S RESPONSE TO PLAINTIFF'S STATEMENT OF GENUINE DISPUTES**