UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| DELOREAN MOTOR COMPANY,<br><br>    Plaintiff,<br><br>    vs.<br><br>NBCUNIVERSAL MEDIA, LLC, et al.,<br><br>    Defendants. | Case No. 8:22-CV-02189-DOC (DFMx)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT NBCUNIVERSAL MEDIA, LLC'S MOTION FOR SUMMARY JUDGMENT [38]** |

Before the Court is Defendant NBCUniversal Media, LLC's ("Defendant" or "NBCU") Motion for Summary Judgment ("Mot." or "Motion") (Dkt. 38). The Plaintiff in this case is DeLorean Motor Company ("Plaintiff" or "DMCT"). The Court heard oral arguments on February 12, 2024. For the reasons described below, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion.

## I. BACKGROUND

In this case Plaintiff, automotive company DeLorean Motor Company, has sued Defendant, entertainment producer and distributor NBCUniversal Media, LLC, for breach of contract and an accounting, as well as trademark and trade dress infringement. Defendant seeks summary judgment on all matters in the case.

### A. Facts[1]

**1. NBCUniversal Media, LLC's *Back to the Future* Films and the 1989 Agreement**

In 1985, NBCU released the film *Back to the Future,* followed by sequels *Back to the Future II* in 1989 and *Back to the Future III* in 1990. Declaration of Christina Monteiro ("Monteiro Dec.") (Dkt. 38-6) ¶ 5. Each film features the main characters' use of a heavily modified DeLorean DMC-12 automobile as a time machine, which is used to travel to various points in both the past and present of a fictional town. Declaration of Andrew J. Thomas ("Thomas Dec.") (Dkt. 38-7) ¶ 2. The DeLorean DMC-12 featured in the films includes several notable exterior and interior modifications that distinguish it from an actual DeLorean DMC-12, including two external thrusters at the rear of the car, a complex arrangement of external wiring and tubes, exterior lighting, and a personalized license plate reading "OUTATIME", as well as interior modifications that include a fictional "flux capacitor" powered by an onboard, plutonium-fueled nuclear reactor. *Id.* ¶ 4. The films proved extremely successful for NBCU, spurring NBCU's continuous distribution of the films and use of the modified DeLorean DMC-12 since 1985 in various media, advertising, and the offering for sale of merchandise including

---

[1] Unless indicated otherwise, to the extent any of these facts are disputed, the Court concludes they are not material to the disposition of the Motion. Further, to the extent the Court relies on evidence to which the parties have objected, the Court has considered and overruled those objections. As to any remaining objections, the Court finds it unnecessary to rule on them because the Court does not rely on the disputed evidence.

apparel, art, books, games, media, novelties, collectibles, prop replicas, and toys. Monteiro Dec. ¶ 7.

In March of 1989, Amblin Entertainment, Inc. and Universal Pictures (a division of Universal City Studios, Inc., which is the predecessor-in-interest to Universal City Studios LLC, an indirect, wholly owned subsidiary of NBCU) entered into an agreement with John Z. DeLorean wherein Mr. DeLorean granted Universal rights in and to the name, logo, and appearance of the DeLorean automobile for use in "merchandising and commercial tie-up[s]" in connection with the *Back to the Future* film series (the "1989 Agreement"). Declaration of Scott McQuown ("McQuown Dec.") (Dkt. 38-3) ¶ 5; Appendix (Dkt. 40-1) Ex. 1 § 1, 2. In the 1989 Agreement, Mr. DeLorean represented and warranted that he was "the sole owner of the rights in the Material granted or agreed to be granted" and that he had "the unrestricted right and power to grant the rights in the Material herein specified." Appendix Ex. 1 § 4. The 1989 Agreement provides that revenues are only owed for instances of use in which the name, logo, or likeness of the DeLorean automobile is primary or central to an item of merchandising or a commercial tie-up. *Id.* § 3. The 1989 Agreement also stated that "[a]s [John Z. DeLorean] is aware, [Universal and Amblin] used, is using, and will use suitably modified DeLorean automobiles as a 'prop' . . . in the Pictures and in advertising and other forms of exploitation relating thereto. [John Z. DeLorean] acknowledges that [Universal and Amblin] did not and do[] not need [John Z. DeLorean's] consent to such uses of DeLorean automobiles." *Id.* at "Preliminary Statements".

**2. The DeLorean Motor Company**

The original DeLorean Motor Company was founded in 1975 by John Z. DeLorean and produced only one model of car: the DeLorean DMC-12. Mot. at 4. After declaring bankruptcy in 1982, certain assets of the original DeLorean Motor Company were purchased by a liquidation company named Consolidated International, which acquired the DeLorean Motor Company's "remaining US inventory of cars, the entire parts inventory and [] engineering drawings and records." *Id.* While the sales agreement between Consolidated International and DeLorean Motor Company did not explicitly include a transfer of trademark registrations or

rights, Plaintiff alleges that Consolidated International additionally acquired goodwill, trade names, and distribution rights from DeLorean Motor Company, which included the acquisition of trademarks. *Id.*; *but see* Declaration of Marvin Katz ("Katz Dec.") (Dkt. 46-3) ¶¶ 3–4. All the DeLorean Motor Company inventory and assets were then purchased from Consolidated International by Marvin Katz, through his Kapac Company, which later transferred the inventory to another company owned by Katz, AYN, Inc. Mot. at 4. In December of 1996, AYN, Inc. offered a detailed list of former DeLorean Motor Company inventory and assets for sale, which did not include any trademark registrations or rights. *Id.* at 4, 5.

      Plaintiff DeLorean Motor Company was formed by Stephen Wynne in Houston, Texas in 1995 to provide automobile service and restoration services, as well as selling used vehicles, parts, and accessories. Appendix (Dkt. 40-46) Ex. 45 ¶ 8. Mr. Wynne had no connection to John Z. DeLorean or the original DeLorean Motor Company. *Id.* ¶ 7. In 1997, Plaintiff purchased the original DeLorean Motor Company assets from AYN, Inc., including "parts, tools, stock, molds, drawings, and equipment," which plaintiff alleges also included the inventory, goodwill, trade names, intangible assets, and distribution rights of the original DeLorean Motor Company. *Id.* ¶ 9; Appendix (Dkt. 40-54) Ex. 53 at ¶ 6; Katz Dec. ¶¶ 3–6. In 2004, Plaintiff and John Z. DeLorean entered into an agreement allowing Plaintiff "the non-exclusive right to produce and modify the DeLorean Motor Company service publications and to distribute them," which referred to the owners' manuals for the original DeLorean Motor Company vehicles. Appendix (Dkt. 40-47) Ex. 46; Declaration of Stephen Wynne ("Wynne Dec.") (Dkt. 46-4) ¶ 10. In this agreement, Mr. DeLorean stated that "in August 1987, John Z. DeLorean acquired all rights to the DeLorean Motor Company intellectual property, names, corporate identification, copyrights, etc." Ex. 46. Since 2009, Plaintiff has registered numerous trademarks with the United States Patent and Trademark Office ("USPTO") involving stylized versions of the DeLorean Motor Company name and initials, with the earliest first claimed use in commerce date being 1995 ("Plaintiff's Marks"). Mot. at 5.

### 3. Payments Under the 1989 Agreement & Plaintiff's Litigation with the DeLorean Estate

John Z. DeLorean passed away in 2005. In 2014, the estate of John Z. DeLorean ("DeLorean Estate") filed suit against Plaintiff in the District of New Jersey alleging that Plaintiff's Marks infringed upon the DeLorean Estate's rights. Mot. at 7–8. Plaintiff and the DeLorean Estate subsequently executed a settlement agreement in 2015 in which the DeLorean Estate acknowledged Plaintiff's trademark rights. Defendant claims these rights were limited to being based upon Plaintiff's registration of Plaintiff's Marks. Plaintiff, meanwhile, claims the agreement also referred to common law trademark rights such that the DeLorean Estate acknowledged Plaintiff's trademarks and right to use the DeLorean automobile brand, along with associated products and services. Appendix (Dkt. 40-44) Ex. 43 § 3. The settlement agreement, however, does not refer to the 1989 Agreement or state that any rights under the 1989 Agreement were assigned or transferred. *Id.*

In January 2017, Plaintiff contacted Defendant inquiring about royalties under the 1989 Agreement. Appendix (Dkt. 40-41) Ex. 40. In February of 2017, Plaintiff provided Defendant with a copy of the 2015 settlement agreement between Plaintiff and the DeLorean Estate, noting that "a summary of the court decision with the [DeLorean Estate] establishes the fact that all rights of all trademark and merchandising images and likeness and logos pass from the [DeLorean Estate] to [Plaintiff]." Appendix (Dkt. 40-42) Ex. 41. Defendant then sent Plaintiff its first accounting statement and payment in June 2017 covering the period from April 1, 1994, to December 31, 2016, the completeness and accuracy of which Plaintiff disputes. Mot. at 6. Defendant continued to provide accountings and payments to Plaintiff until August of 2021, though Plaintiff disputes the accuracy of the accounting and amounts paid by Defendant during this time. *Id.* In February 2018 the DeLorean Estate contacted Defendant contending that the DeLorean Estate, not Plaintiff, was entitled to receive the royalties from the 1989 Agreement. *Id.* at 8. Defendant subsequently paused payments and requested that the DeLorean Estate and Plaintiff determine who was entitled to the royalty payments before Defendant resumed its reporting. *Id.*

The DeLorean Estate filed a complaint against Plaintiff in April 2018, seeking a declaratory judgment that the 2015 settlement agreement did not transfer any rights to the 1989 Agreement to Plaintiff and that Plaintiff had to pay the monies it received from Defendant to the DeLorean Estate. *Id*. The District Court held that, per the 2015 settlement agreement, the DeLorean Estate was barred from pursuing its claim, a decision upheld by the Third Circuit in December 2019. Appendix (Dkt. 40-15) Ex. 15 at 17. The Third Circuit further stated that because the 2015 settlement agreement barred the DeLorean Estate from pursuing its action against Plaintiff, the court did not determine whether the DeLorean Estate assigned its rights under the 1989 Agreement to Plaintiff. *Id*. Defendant subsequently resumed providing accountings and making payments to Plaintiff in March 2020, the accuracy of which Plaintiff continued to dispute until filing the present action. Mot. at 7–9.

**B. Procedural History**

Plaintiff DeLorean Motor Company filed this lawsuit in the Orange County Superior Court on October 26, 2022, against Defendant NBCUniversal Media, LLC. Mot. at 9. Defendant subsequently removed the case to this Court on December 5, 2022. *Id*. Counsel for both parties met and conferred on December 21, 2022, regarding a contemplated motion for judgment on the pleadings and an anti-SLAPP motion under California Code of Civil Procedure § 425.16, and Plaintiff filed its First Amended Complaint the following day. *Id*. The parties entered a stipulation on February 16, 2023, agreeing that Plaintiff's Lanham Act claim was not based, in whole or in part, on the appearance of a DeLorean car in the *Back to the Future* films, the film *Ready Player One*, or in any works protected by the First Amendment, as well as the advertising of such works. *Id*. Defendant then answered Plaintiff's First Amended Complaint on February 20, 2023. *Id*.

Defendant subsequently filed this Motion for Summary Judgment on January 12, 2024. Plaintiff filed its Opposition to Summary Judgment ("Opp'n") (Dkt. 46) on January 22, 2024. Defendant replied ("Reply") on January 29, 2024 (Dkt. 49).

## II. LEGAL STANDARD

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is to be granted cautiously, with due respect for a party's right to have its factually grounded claims and defenses tried to a jury. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1992); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1161 (9th Cir. 1992). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Celotex*, 477 U.S. at 323. When the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out that the non-moving party has failed to present any genuine issue of material fact as to an essential element of its case. *See Musick v. Burke*, 913 F.2d 1390, 1394 (9th Cir. 1990).

Once the moving party meets its burden, the burden shifts to the opposing party to set out specific material facts showing a genuine issue for trial. *See Liberty Lobby*, 477 U.S. at 248–49. A "material fact" is one which "might affect the outcome of the suit under the governing law . . . ." *Id.* at 248. A party cannot create a genuine issue of material fact simply by making assertions in its legal papers. *S.A. Empresa de Viacao Aerea Rio Grandense v. Walter Kidde & Co., Inc.*, 690 F.2d 1235, 1238 (9th Cir. 1982). Rather, there must be specific, admissible, evidence identifying the basis for the dispute. *See id.* The Court need not "comb the record" looking for other evidence; it is only required to consider evidence set forth in the moving and opposing papers and the portions of the record cited therein. Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). The Supreme Court has held that "[t]he mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for [the opposing party]." *Liberty Lobby*, 477 U.S. at 252.

## III.  DISCUSSION

Defendant seeks summary judgment on three issues:

1) That Plaintiff's first claim for breach of contract fails as a matter of law on the grounds that the undisputed facts establish that Plaintiff is not a party or a successor-in-interest to the 1989 Agreement, there is no evidence that Defendant breached the 1989 Agreement, and that there is no evidence that Plaintiff suffered damages as the result of any breach of the 1989 Agreement;

2) That Plaintiff's second claim for an accounting fails as a matter of law on the grounds that an accounting is not a cause of action and Plaintiff's underlying claim for breach of contract fails as a matter of law; and

3) That Plaintiff's third claim for trademark and trade dress infringement fails as a matter of law on the grounds that the undisputed facts establish that Plaintiff's claim is based solely on an alleged failure to pay royalties under a license, Defendant is a senior user of the allegedly infringing mark, and there is no evidence that supports a finding of likelihood of confusion or that supports a finding that Defendant exceeded the scope of any license agreement.

*See generally* Mot. The Court considers each argument in turn.

### A.  Rule 56(d)

Plaintiff asks the Court to deny the motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(d) on the grounds that "Defendant delayed producing any witnesses for deposition until after it filed the MSJ." Opp'n at 4.

Per Federal Rule of Civil Procedure 56(d), if the party opposing a motion for summary judgment shows by affidavit or declaration that it cannot present facts needed to justify its opposition, the court may (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Fed. R. Civ. P. 56(d).

The Court finds relief under Rule 56(d) inappropriate here. While the parties dispute the cause of the discovery delays, Plaintiff fails to demonstrate that "identif[y] with the requisite specificity . . . the evidence that it believes will create a genuine issue of material fact." *Longwell Textiles Ltd. v. Matrix Int'l Textile Inc.*, 2020 WL 5991615, at *2 (C.D. Cal. Sept. 4, 2020). Plaintiff points primarily to the fact that depositions of NBCU witnesses were delayed until shortly before its opposition deadline but cites to transcripts of these depositions throughout its opposition brief. *See, e.g.*, Opp'n at 14, 19. Plaintiff also fails to point to any additional evidence it hopes to obtain through discovery that it so far has been unable to do so. Thus, the Court finds Plaintiff has not demonstrated it suffered harm sufficient to justify Rule 56(d) relief.

### B. Whether NBCUniversal Media, LLC is liable for breach of contract

NBCU moves for summary judgment that Plaintiff's breach of contract claim fails because they cannot establish key elements of this claim. Mot. at 10. The Court concludes that Plaintiff does not have standing to enforce the 1989 Agreement and grants NBCU's motion as to Plaintiff's breach of contract claim.

To establish a breach of contract the plaintiff must establish: (1) a legally enforceable contract between the parties; (2) plaintiff's performance or excuse for non-performance; (3) defendant's breach of that contract; and (4) damage to the plaintiff caused by the defendant's breach. *Hickcox-Huffman v. US Airways, Inc.*, 855 F.3d 1057, 1062 n.33 (9th Cir. 2017).

Plaintiff DMCT alleges that it "stands in the shoes of Mr. DeLorean" in relation to the 1989 Agreement. FAC ¶ 26. It asserts that in violation of the 1989 Agreement, Defendant has failed to fully pay DMCT the amount it is owed per the agreement (five percent (5%) of its net receipts from such merchandising and commercial tie-ups. *Id.* ¶ 27. NBCU responds that Plaintiff's breach of contract claim fails on two grounds. First, that DMCT does not have standing to assert a breach of the 1989 Agreement because it is not a successor or assignee under the Agreement. Mot. at 10. Second, that DMCT has failed to present any admissible evidence to show that NBCU breached the 1989 Agreement or that DMCT was damaged by any supposed breach during the applicable four-year limitations period prior to the filing of the Complaint. *Id.*

### 1. Whether DMCT has standing to assert a breach of the 1989 Agreement

Under California law, generally "only a party to the contract may sue for breach of the agreement's terms." *Emerald Bay Community Ass'n v. Golden Eagle Ins. Corp.*, 130 Cal. App. 4th 1078, 1092 (2005); *Energy 2001 v. Pac. Ins. Co.*, 2010 WL 5393978, at *1 (E.D. Cal. Dec. 21, 2010) ("A person or entity that is not a party to a contract 'has no standing to enforce the contract.'") (quoting *Gantman v. United Pacific Insurance Co.*, 232 Cal. App.3d 1560, 1566 (6th Dist. 1991)).

The 1989 Agreement provides that it shall "bind and inure" to Mr. DeLorean's "heirs, legal representatives, successors and assigns." Statement of Undisputed Facts ("SUF") (Dkt. 51) #10. Plaintiff does not meaningfully dispute that there exists no assignment agreement or other document between DMCT and Mr. DeLorean that purports to assign DMCT any rights under the 1989 Agreement. Appendix (Dkt. 40-44) Ex. 43 § 3; SUF #120-123. Instead, Plaintiff points to numerous other documents that it contends confer it rights under the Agreement, including:

> "the rulings by the District Court for the District of New Jersey and Third Circuit Court of Appeals regarding DMC's rights; the April 30, 1997, contract of sale by which DMC acquired, among other things, all the inventory, goodwill, trade names, intangible property, and equipment of Old DMC; the Settlement Agreement between the DeLorean Estate and DMC; federal court filings by DMC with documentary support of its trademarks and related rights; among other documents."

SUF #123.

None of these documents, however, demonstrate that Plaintiff is a successor or assignee to the 1989 Agreement itself. Neither the District Court nor the Third Circuit held that Plaintiff was a successor or assignee of rights under the 1989 Agreement. Indeed, the Third Circuit expressly stated that it did not "determine whether the Estate assigned its rights under the Universal Agreement to DMC Texas." SUF # 101. Neither ruling establishes that Plaintiff has standing to sue under the Agreement. Additionally, the Settlement Agreement between DMCT and the DeLorean Estate does not refer to or mention the 1989 Agreement or any assignment of rights thereunder. SUF # 84-85. Plaintiff concedes that the Settlement Agreement did not "transfer or purport to transfer any rights" from the DeLorean Estate to DMCT. SUF # 89. Thus, the Settlement Agreement does not grant DMCT standing to enforce the 1989 Agreement.

Thus, the Court GRANTS Defendant's motion for summary judgment on Plaintiff's breach of contract claim.

### C. Whether DMCT can establish a claim for accounting

"Courts in California generally classify an accounting as a remedy and not a cause of action." *Nguyen v. JP Morgan Chase Bank*, 2012 WL 13019941, at *4 (C.D. Cal. Apr. 16, 2012). As DMCT concedes, "its accounting claim is predicated on its breach of contract claim." Opp'n at 20. Because DMCT has failed to demonstrate it has standing to bring a breach of contract claim under the 1989 Agreement, it cannot establish a claim for accounting. *See Gilliam v. Levine*, 562 F. Supp. 3d 614, 626 (C.D. Cal. 2021) (granting summary judgment on derivative claim for accounting where underlying claims failed); *see also Janis v. California StateLottery Comm'n*, 68 Cal. App. 4th 824, 833-34 (1998) (holding that cause of action for an accounting must fail where underlying claims fail because "[a] right to an accounting is derivative; it must be based on other claims"). Thus, the Court GRANTS summary judgment in favor of Defendant on Plaintiff's accounting claim.

### D. Whether DMCT has a valid trademark infringement claim

NBCU argues that Plaintiff's trademark infringement claim is incompatible with its breach of contract claim. Mot. at 19. As the Court finds Plaintiff does not have standing to bring a breach of contract claim under the 1989 Agreement, it does not address here whether these claims are incompatible. In the alternative, NBCU argues that DMCT's trademark infringement claim fails because DMCT has not challenged NBCU's rights in its Time Machine Car or created any disputed issue of fact relating to customer confusion. Reply at 15.

To prevail on a trademark infringement claim, Plaintiff must show that they have a valid, enforceable mark entitled to protection and that Defendant's use of the mark creates a likelihood of confusion. *See Brookfield Comms., Inc. v. West Coast Ent. Corp.*, 174 F.3d 1036, 1046 (9th Cir. 1999). This Court addresses each point in turn.

#### 1. Plaintiff has shown they have a valid, enforceable trademark

DMCT has provided evidence that it has numerous DeLorean-related trademarks registered on the principal register. Appendix Ex. 60–68. Federally registered trademarks are

entitled to a presumption of validity and enforceability. 15 U.S.C. § 1115. Further, the undisputed evidence shows that NBCU accepted its role as a licensee of DMCT's marks by making numerous royalty payments to DMCT over several years. SUF #46, 47, 51, 52, 58, 60–66. NBCU does not dispute its role as a licensee of the DeLorean marks. SUF #10. The 1989 Agreement itself indicates NBCU's recognition that it did not and does not own any of the DeLorean-related trademarks associated with the Time Machine Car as well as that NBCU did not possess any of the related rights to those marks. SUF #10–14.

In trademark law, "[t]he first to use a mark is deemed the 'senior' user." *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1047 (9th Cir. 1999). Elements from entertainment properties that play a central role in the franchise are eligible for trademark protection. *See, e.g., Warner Bros. v. Gay Toys, Inc.*, 658 F.2d 76 (2d Cir. 1981) (determining that Warner Brothers owned trademark rights in the "General Lee" automobile, a modified 1969 Dodge Charger from *The Dukes of Hazzard* television show); *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178 (5th Cir. 2018) (determining that the "Krusty Krab" restaurant from the *SpongeBob SquarePants* television show was entitled to trademark protection). Given that the Time Machine Car plays a central role in NBCU's *Back to the Future* films, and it is clearly much more than simply a DeLorean DMC-12 automobile, NBCU likely has common law trademark rights relating to the use of the Time Machine Car. As a licensee, however, NBCU's use of the DeLorean marks on the Time Machine Car does not necessarily indicate that it is a senior user of those marks, even if it is the senior user of the Time Machine Car as a whole. Courts in the Ninth Circuit have found that "while a licensee's use of a mark might contribute to the mark's commercial meaning and build up goodwill, that meaning and goodwill all accrue to the mark's owner, not to the licensee." *City-Core Hosp., LLC v. Palmer*, No. 17-cv-05544-CRB, 218 U.S. Dist. LEXIS 6140, *5 (N.D. Cal. Jan. 12, 2018). The Court finds there is a genuine dispute of fact as to whether NBCU is a senior user, and so finds summary judgment on the issue inappropriate here.

## 2. The likelihood of confusion is disputed

In determining likelihood of confusion, the Ninth Circuit "employ[s] an eight-factor test," commonly known as the *Sleekcraft* factors. *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008). The *Sleekcraft* factors are: (1) the strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *Id.* (citing *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979)). The standard applied is whether "a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d 1190, 1209 (9th Cir. 2012).

Some factors in this eight-factor test are more important than others. *Brookfield*, 174 F.3d 1036, 1054 (9th Cir. 1999). As such, "it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of factors." *Id.* "The ultimate question of likelihood of confusion is predominantly factual in nature, as is each factor within the *Sleekcraft* likelihood of confusion test." *Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140 (9th Cir. 2002). However, because the likelihood of confusion determination is based on a non-exhaustive, multi-factor, and fact-intensive inquiry, the Ninth Circuit has "cautioned against granting summary judgment in these cases." *Synoptek, LLC v. Synaptek Corp.*, 309 F. Supp. 3d 825, 836 (C.D. Cal. 2018).

NBCU and DMCT dispute the weight and nature of the evidence pertaining to a number of these factors, in particular: the strength of DMCT's marks; the similarity of the marks along with the proximity of the goods sold; and the evidence of actual consumer confusion regarding the usage and source of the marks used by NBCU and DMCT.

Regarding the strength of DMCT's marks, DMCT claims that the "DMC" and "DeLorean" marks, as well as the DMC-12 automobile itself, are recognizable marks well known to the public. Opp. at 23. DMCT also points to the revenues generated by NBCU's continued usage of the DeLorean-related marks as further evidence of the commercial strength

of DMCT's marks. *Id.* In response, NBCU argues that its marketing and licensing activities show the strength of the Time Machine Car, unrelated to the DMCT trademarks. Reply at 16. As to the similarity of the marks and the proximity of the goods, NBCU claims that what it grants for licenses is the Time Machine Car, and that there is no overlap of goods sold between it and DMCT. *Id.* at 17. However, DMCT claims that in doing so, NBCU also uses DMCT's trademarks, and that the DeLorean branding in products sold and licensed by NBCU is thus quite similar to DMCT's own. Opp. at 23. Further, while both parties concede that they sell separate goods, DMCT contends that proximity exists because both DMCT and NBCU offer license services for DeLorean-related trademarks. *Id.* DMCT also claims there have been numerous instances of actual consumer confusion regarding the licensing of these trademarks, as well as in customers approaching DMCT to purchase DeLorean automobiles in the style of the Time Machine Car. *Id.* at 24. NBCU contends that these instances do not show confusion, but rather that consumers understand the difference between rights in the film and the Time Machine Car and the rights of the DeLorean-related trademarks. Reply at 17.

The Court finds Plaintiff's arguments more convincing at this stage. Plaintiff has provided sufficient evidence of the strength of its marks, the similarity and proximity of those marks with those licensed by NBCU, and instances of actual consumer confusion to demonstrate a genuine dispute of fact exists as to whether there is a likelihood of confusion under the *Sleekcraft* factors. Given the fact-intensive nature of the likelihood of confusion inquiry, the Court finds it would be inappropriate to grant summary judgment for NBCU on this issue.

Thus, the Court DENIES Defendant's motion for summary judgment on Plaintiff's trademark infringement claim.

## IV. DISPOSITION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion for Summary Judgment.

DATED: February 22, 2024

_[signature: David O. Carter]_

DAVID O. CARTER
UNITED STATES DISTRICT JUDGE